Brian Spears
300 Forni Road
Placerville, Ca. 95667

FILED
JAN 20 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ______
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brian Spears,<br>~~Bruce Benton,~~<br>~~Richard Anderson,~~<br>~~Timothy Suddeth,~~ et. Al. (Class Action)<br>VS.<br>County of El dorado Sheriff's Department,<br>El Dorado County Correctional Facility,<br>Et. Al. | Case No.: 2:15-cv-0165 AC (PC)<br>**COMPLAINT** |

## INTRODUCTION

The petitioners were inmates at the El Dorado County Jail between the dates of January 2011 and November 2014. Petitioners have been the subject of several civil rights violations at the hands of the El Dorado County Jail and the El Dorado County Sheriff's Department including failure to protect, failure to provide proper medical treatment, inhumane and prejudicial treatment.

Petitioners were housed in the protective custody unit (C-pod) and have been singled out with practices that are prejudicial, and life threatening.

## ISSUE #1

One particular event occurred on April 28, 2014. As inmate Charles Greeson was returning to C-pod from medical and just

steps away from the pod door, the door to Dorm 1 and the yard area (which all share a common hall area, in which the walls are glass, @ 45 feet long) were "accidently" opened along with C-pod's door which resulted in not only the severe beating of Charles Greeson but also the attack on several other (mostly elderly) inmates housed in C-pod. This was not an isolated incident (Please see attached letter entitled Hate Crimes … attachment#1). The inmates that were attacked were later charged with mutual combat and just days later subject to a degrading and intimidating pod search in retaliation for filing grievances about the event. Just days after that, when Charles Greeson and others from C-pod were on their way to the yard (just the 45 foot walk but towards Dorm 1), the inmates in Dorm 1 made hand motions and signs towards Greeson and the other inmates (Only a few inmates from C-pod went to yard that evening because the rest were afraid of being attacked again). Greeson made hand signs back out of anger. Once the C-pod group was safely at yard, the tower officer (John Doe 1) spoke over the speaker and asked Greeson why was he giving derogatory hand signs towards Dorm 1. Inmate Greeson explained that those were the inmates that had attacked him and they were now taunting him so he responded. The officer then spoke stating to inmate Greeson that he should not do that because "you wouldn't want another door to accidently open again." This was said in a threatening way. It was later mentioned that this officer was one of the same officers working the control tower the night of the attack. Even after the event that April 28th 2014 and similar ones that occurred prior, the accidental door pops continued. Several inmates were placed in similar situation but were able to avoid physical contact. The facility spent a lot of money updating their current system to supposedly alleviate the problem, but

that did not stop the human effect. The officers (Doe's) still have issues with incorrectly or accidently popping the wrong doors to this day, placing protective custody inmates in harm's way. The latest event occurred on 11-5-14. Five C-pod inmates were returning from church. As they were in the common hall area a Dorm 1 inmate was "accidentally" released from the visiting booth. This inmate ran after the C-pod inmates just as they were arriving at C-pod's door which was popped open at that point. The last C-pod inmate coming in (Albert Ramos), a sixty plus year old with vision only in one eye, was punched in the back and was in the process of getting grabbed by the Dorm 1 inmate (an inmate in his early twenties), when other C-pod inmates (Spears, Silva, Hatfield, and others) approached the door and intimidated the attacker allowing inmate Ramos a chance to enter the pod. The attacker remained at the door holding it open and threatening to enter to continue his attack as the C-pod inmates whom had approached the door continued to block the attacking inmates entrance. As the officers (Doe's) finally arrived the attacker let the door go and hit the ground. The officers entered C-pod with teaser guns with lazar sites on, shouting and pointing their guns at the C-pod inmates telling them all to get down on the floor immediately. This forced one elderly C-pod inmate (Baldwin) with severe heart problems to crawl to the floor in pain within his chest causing him to seek medical attention once he was allowed to get up off the floor. This event caused C-pod inmate Ramos and Diaz to be sent to another facility in Lake Tahoe, as they feared for their safety as inmate Diaz requested a transfer because he no longer felt safe at this facility. Another C-pod inmate (Johnson) also requested to be transported for similar reasons. Johnson was transported on 11-18-14. Inmates Diaz and Ramos were transported on 11-11-

14.(see attached statements concerning the event, attachments). There have been dozens of documented cases of the doors being accidently popped open between the incident on 4-28-14 and the one on 11-5-14. Additionally, a segregated inmate located in B-Pod was attacked on or about 11-19-14. Inmate Steven Shaw was being housed in B-pod but was segregated because he was considered protective custody. Inmate Shaw had requested on several occasions to be moved to C-Pod (protective custody) for his safety. The classification officer (doe) had stated that he would be moved. B-Pod at that time housed the most dangerous active gang members in the entire jail. It is unknown why Inmate Shaw was placed in B-Pod as there was room available in C-Pod at the time of his housing. When Inmate Shaw was let out for his walk alone dayroom time, there was an inmate hiding in the shower area and viscously attack Inmate Shaw, literally punching him in the face, throwing him to the ground and stomping on him, causing injuries. This went on for several minutes before officers arrived to stop the assault. Inmate Shaw was then moved to C-pod (see Shaw's Declaration). These events show a total disregard for the safety of the protective custody inmates, and a pattern of behavior of the jail and some of its officers (Doe's).

**ISSUE #2**

During the same time period as mentioned in the introduction. Several inmates have had their medical needs ignored. It is common practice of the medical staff to ignore, put off, or under-treat certain inmate's medical needs.

Inmate Richard Anderson, whose hand was re-fractured during the incident of April 28th 2014 (see Richard Anderson's attachments), has placed several medical requests for assistance which

originally were all but ignored. Inmate Anderson along with Inmate Bruce Benton (see Bruce Benton's attachments), who was also injured during the incident of April 28th 2014, have filed numerous grievances and complaints to try and obtain proper medical treatment (see attached grievance and requests). Inmate Brian Spears has been having issues with medical treatment for a period longer than two years (see attached grievances and requests). Even though the medical treatment has gotten better since the new Lieutenant became aware of the issues, it was a long time coming. Inmates have had to go with little or no medical treatment for years. It had been mentioned that the jail medical is based on a self insurance policy and therefore cuts as many corners as they possibly can, even going as far as to ignore outside doctors prescriptions and treatment plans. Inmates have had to deal with unnecessary pain and suffering for long periods of time just to save the county money. In most cases, the policy is to request the inmate to deal with it when they are released. But more and more inmates stays are getting longer making it impossible, if not dangerous, to wait until they are released or transported to prison. Robert Gay, a mid sixties C-pod inmate fell as he was climbing off his top bunk for meal call and hit his chest against the sink and severely injured himself. This was on a Sunday in mid 2014. Inmate Gay immediately requested medical attention. He was sent to the nurse, but nothing was done as he was told he would be placed on medical call the next day. By the next day Inmate Gay was bruised and having a hard time breathing. He was unable to walk without severe pain and help. He again seen the nurse no x-rays were done and no real medical attention was given. Inmate Gay was told he would see a doctor on Thursday. This was on a Tuesday (or Monday). Inmate Gay remained on his bunk in severe

pain. Unable to accomplish the simplest of moves. On that Wednesday at 5am Inmate Gay was told to roll up his property as he was being sent to prison. Inmate Gay barely able to walk or breathe was loaded in a van and shipped off to prison. This inmate had been in need of medical attention for several days as he had bruised or crack ribs, but was denied the attention as this county jail shifted the responsibility on to the prison system so the county would not have to bare the expense. This policy has affected hundreds of inmates over the years and is a clear violation of civil rights.

**ISSUE #3**

During a time period of approximately a year from early to mid 2013 to early to mid 2014 the food that were given to inmates became increasingly inedible and unhealthy and was against all Title 15 policy. A lot of morning meals consisted of old and outdated food; from spoiled milk to pancakes that were so hard they could have been used as a weapon, to waffles that were not only freezer burned but were so old they were no longer edible. Lunch mainly consisted of out dated bologna that was mainly salt and fat. There was a period of 11 days straight where all that was given was bologna violating several codes in the Title 15. During this time period there were well over a hundred grievances filed about the food, considering that this facility's average inmate population is less than 300 over half the population complained. These are just the complaints we were aware of. It got so bad at one point that D-pod protested by throwing all the bologna at the window facing the front door. It was causing undue stress within the jail population which threatens the safety and security of the facility. A representative from our pod (C-pod) named Joseph Nissensohn

(Nissensohn had been housed at this facility for nearly 5 years) was called into the new Lieutenants' office along with the current cook (Doe) to discuss the issue. The Lieutenant stated that she had become aware of the issue and the food would get better. The Lieutenant also asked Inmate Nissensohn if he enjoyed the eggs and potatoes that were served that morning. Inmate Nissensohn stated "you're joking right, we haven't had eggs in two years". The Lieutenant looked over at the cook and then excused Inmate Nissensohn who was sent back to his cell. It was later discovered that the cook had over spent the budget and there were no funds available to properly feed the inmates. We had also seen an article in the local paper (The Mountain Democrat) stating that a culinary class had been started at the Placerville jail and that gourmet food was being served at the jail as was being done at the other location in Lake Tahoe. This was far from accurate. Several inmates who were being housed at both location at different times (including Inmate Nissensohn) noticed that the food at the Lake Tahoe location was totally different than the food at the Placerville location even though they were both considered to be El Dorado County jails. Eventually the food did get better as promised by the Lieutenant but for nearly a year the inmates endured food that was not fit for human consumption. Inmates that had money to buy canteen went that route, but inmates who had little or no money (the majority) were forced to eat food that was hazardous to their health. Inmates started having health issues usually related to weight gain. During that time period the overall weight of inmates increased due to the consumption of fatty salty foods. Inmate (Brian Spears) after maintaining his weight while incarcerated for nearly a year, have seen his weight increase 35 lbs during the time period of the unhealthy food, even though he

started eating less. Other inmates gained a lot more. Inmate William Muller gained what appeared to be nearly 60 lbs along with inmate Timothy Suddeth during this same time period. Both are now struggling with their weight at this point and Inmate Suddeth had been here 3 years prior to the food problem with no weight issues. It appeared to have a larger effect on inmates over the age of 50. The cook was eventually fired.

**ISSUE #4**

This issue concerns the intentional sleep deprivation that this facilty has chosen to place upon the inmates, violating the civil rights of all inmates at this facility. Approximately six months prior to this filing the El Dorado County Jail instituted a policy that increased the amount of times that an inmate is forced to go without a healthy amount of uninterrupted sleep, causing sleep deprivation along the lines of torture. Definitely cruel and unusual punishment. Inmates were already subject to several mandatory times when they must be up and awake. With the instituting of the new count policy there is no time period that the inmates can have more than a guaranteed 2-3 hours of uninterrupted sleep. The current policy calls for the lights to be on 24 hrs a day only dimming from 11 pm until 5 am. During all other times the light is on full power just inches away from the inmates head. If this was the only issue it would not be such a problem allowing inmates to sleep 6 hours. But what occurs during those times is inhumane. Usually after the lights go out around 11 pm, approximately 30 minutes to an hour an officer making his rounds will grab each door and rattle it verifying it is closed and locked. These solid metal doors make a sound similar to a small car crash when this happens and rattles the entire cell waking the inmate out of a dead sleep. Approximately two hours after that, bulk mail is delivered to

the cells. It is either slid under the door, or the door has to be opened and the mail placed inside the cell, again waking the inmate up even if the mail is being delivered to a cell other than his. About an hour after that regular and legal mail is delivered to the cells with the same process. About an hour or so after that the lights come on (@5 am) and a loud voice comes over the cell speakers announcing pill call or med call (the call for morning medication distribution). This is done in every cell whether or not the inmate takes medications. Also every cell door is unlocked making a loud clanking noise and then relocked at the end of med call again making a loud clanking noise. This noise is more than loud enough in itself to awaken someone whom is sound asleep. On some occasions, the speaker call for meds is done up to three times at time increments of five to ten minutes apart, re awakening the non-med receiving inmates each time. Then the main pod door loudly opens and then slams shut upon the arrival and exit of the nurse distributing the meds, again waking non-med inmates. About an hour after that (@6 am) a very loud announcement comes over the loud speaker announcing "count time" in which all inmates must get up and walk to their cell door window and wait to show their wrist bands. This announcement could come multiply times over a twenty minute span again depriving the inmates more sleep. Then again approximately fifteen to thirty minutes later inmates are awoken again for breakfast, which is mandatory. All inmates must be up and dressed and come out for all meals. Then usually between 8am and 9am over the cell loud speaker is the call for cell inspection in which every inmate must be wake and standing, holding his door open. Now during this entire time (11 pm to 6 am) the officers enter and exit the pod about every hour during their pod inspections, at which time the main pod door is opened

twice, once upon entering and once upon leaving. When this door is opened the lock pops loud enough to wake the average sleeper, but when it is allowed to slam shut (which happens the majority of the times) it can awake even a deep sleeper as it not only makes a loud noise but it also vibrates the cell doors, again the equivalent of a small car wreck. These rounds happen twenty-four hours a day, approximately every hour. In addition, throughout the day, the loudspeaker announcements continue, announcing in every cell. Everything from personal visits, personal medical calls, personal court calls, cell inspections, etc. Most of these announcements could be announced in the cell of the inmate affected but instead are usually announced in every cell at once.

Over periods of time this sleep deprivation is causing inmates to have ill effects. Some have claimed everything from headaches to memory loss and memory lapses. There has been recent scientific research (2014) linking sleep deprivation to early aging of the brain. It is also linked to heart conditions, as some inmates have. Their personal doctors recommended a minimum of eight hours uninterrupted sleep to allow their heart to recoup from the days normal stress. This was mentioned to the jail's medical staff in which the response was "you can always get a couple of hours here and there to get your eight hours in" contradicting the term uninterrupted.

Courts have previously recognized that sleep constitutes a basic human need and conditions that prevent sleep violate an inmate's constitutional rights (see Harper, 174 F.3d at 720; Chavarria v. Stacks, 102 Fed.Appx 433, 436 (5th Cir.2004).

**ISSUE #5**

This issue concerns the prejudicial treatment of the inmates that are housed in the protective custody pod (C-pod). Because the majority of the inmates housed in this area are charged or convicted of sex crimes they have been singled out and treated differently than the average inmate, including the inmates housed in protective custody for gang drop-outs currently known as the new D-pod (the old D-pod use to house the more hard core inmates but they were moved to B-pod after several attacks on C-pod inmates). C-pod inmates are subject to treatment that violates the Title 15 requirements of equal and fair treatment of all inmates. This has been the issue of several C-pod inmate grievances. Even though some of these are hard to prove this complaint will try to concentrate on the most obvious ones. Starting with the way canteen is passed out. Canteen is usually ordered on a Saturday and delivered on Tuesday and Wednesday. With the delivery schedule being rotated to which pod goes first. Every pod on the bottom floor receives their canteen on at least every other Tuesday (on regular delivery days, sometimes it comes late which changes the first day of delivery) with the exception of C-pod. C-pod would usually receive it on a Tuesday once every 4-5 weeks. But even this has gotten worse. As of 11-3-14 it has been over 12 weeks since C-pod has received their canteen on the first day it is passed out. Sometimes C-pod is the only pod left without canteen even after it had been over two days since the start of it being passed out. It is becoming common where canteen can start to be passed out on Tuesday but C-pod will receive it as late as Thursday. There is no other pod that is subject to this routine.

Another issue is the distribution of yard times. Each pod is required to receive 3 hours a week as stated in the Title 15. C-pod days are Monday, Wednesday, and Friday along with pods B, D,

and Dorms 1 and 2 all receiving 1 hour per day, with makeup days being leftover times and Sunday. These times are to be equally split. But usually when there is a problem, or extra time, C-pod is usually left out of the rotation. It has been several occasion where every other scheduled pod or dorm will get their time and C-pod comes up short, but on the makeup days the other pods or dorms will receive extra time while C-pod is overlooked even though they have not received the basic required time. This has happened on numerous occasions, too many to just have been accidental or coincidental. Some of these have been documented on several grievances, which usually end up with some type of retaliation being placed on C-pod. These all could be brought out in discovery. Another issue is the distribution of the meals. C-pod and D-pod are usually the last to receive their meals. Since all food trays are put on a cart at the same time and then distributed, the later it is received the less the meals retains its heat which ends up with the last receiving the meal getting a meal that is no longer hot or even warm at times. This has been a constant issue and has been grieved on several occasions.

Another issue is the cleaning supplies that are given to every pod just after breakfast to give the inmates a chance to clean their area. This usually consists of a broom, a dust broom, a mop and bucket, a dustpan, two spray bottles of cleaning solution, a garbage bag, and two cleaning rags. All which is usually picked up after approximately thirty minutes of use. All major material is usually labeled with the pod's number that it goes to. C-pods supplies are always the ones that are broken or in bad shape or unusable. Usually if another pod has a broken item it is switched with C-pod before they are distributed. The main issue involves a true safety and health concern. There have

been several documented cases over the years of urine being in the mop water and spray bottles delivered to C-pod. The most recent at the time of writing were on 10-23-14, 10-26-14 and on 11-23-14. Each time it was reported to roving officer or the tower. On 11-23-14 it was reported to Officer Handy. Through discovery, it will show of numerous complaints on this issue. There are non-inmate witnesses to this fact that came be subpoenaed.

**Exhaustion of Remedies**

Although some inmates have been able to exhaust their administrative remedies, it is not always possible. The administration at the jail has a policy for not allowing inmates to exhaust their remedies. This is done by lost grievances or appealed grievances that just go around in circles within the different departments or by misleading the inmate to thinking he has done what is required of an exhaustion according to the inmate manual that is given to every inmate. It has been dozens of occasions that inmates thought they had exhausted their remedies, just to find out they had been misled. There are cases where the inmates have asked, after several months of appealing an issue that went nowhere, "is this the exhaustion of my remedies?", but get no answer to that question. There is even one occasion where the inmate was told that they were not going to be allowed to exhaust their remedies. All these can be proven on discovery as these were done in writing and will be on file.

**Conclusion**

There is no doubt as to the fact that there are numerous Civil Rights Violations occurring within the El Dorado County Correction Facility under the color of law. The question becomes how much is provable. Through vigorous discovery efforts and the

testimony of available witnesses, it can be proven that these violations are fact and a continued threat to any person who passes through this system. There is an abundance of available witnesses to these acts including inmates, current and former free staff, and current and former officers. Some fear retaliation but have stated that if this case moves forward they would be willing to make statements and testify if it becomes viably necessary. They are currently concerned because people's lives, careers, futures, and safety are at stake.

Supplements

As more and more information comes in, supplements will be sent in to hopefully help in this effort.

Signing Page

Bruce Benton — Date: 12-16-14

Timothy Suddeth — Date: 12-16-14

Brian Spears — Date: 12-16-14

Richard Anderson — Date: ______

To: The Clerk 12-15-14

From: Petitioners

Re: Class Action 1983 Filing –Copies needed

We are asking if it is possible for your office to make copies of this filing and mail them to the petitioners at the addresses below. Because of new jail policy, inmates are not allowed to make copies of papers that have other inmate's names on them, whether they are legal or not, whether they are declarations of support or not. We believe this policy is not legal but at this time, there is not much we can do about it. This policy came about once the jail administrators became aware of this pending class action.

We appreciate any help you are able to give us.

Mail copies to:

1) Brian Spears
300 Forni Road
Placerville, Ca. 95667

2) Timothy Suddeth
300 Forni Road
Placerville, Ca. 95667

3) Bruce Benton CDC#E73235
c/o Duel Vocational Institute
P.O. Box 600
Tracy, Ca. 95378-0600

4) Richard Anderson
300 Forni Road
Placerville, Ca. 95667

Sincerely,

Brian Spears

Timothy Suddett

Richard Anderson

Bruce Benton

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Brian Spears, et. Al. Class Action
(Name of Plaintiff)

300 Forni Rd
(Address of Plaintiff)

Placerville, Ca. 95667

(Case Number)

vs.

COMPLAINT

County of El Dorado Sherriffs office
El Dorado County Correctional Facility
et. Al.
(Names of Defendants)

I. Previous Lawsuits:

A. Have you brought any other lawsuits while a prisoner: ☒ Yes ☐ No

B. If your answer to A is yes, how many?: 1 Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

1. Parties to this previous lawsuit:

Plaintiff Brian Spears

Defendants Adam Weiner et. Al.

2. Court (if Federal Court, give name of District; if State Court, give name of County)

Eastern District of California

3. Docket Number 2:14-cv-00950

4. Name of judge to whom case was assigned ______

5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)

pending

6. Approximate date of filing lawsuit April 2014

7. Approximate date of disposition pending

II. Exhaustion of Administrative Remedies

A. Is there a grievance procedure available at your institution? ☒ Yes ☐ No

B. Have you filed a grievance concerning the facts relating to this complaint? ☒ Yes ☐ No

If your answer is no, explain why not ______

C. Is the grievance process completed? ☒ Yes ☐ No

III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A. Defendant Sheriffs Dept / Jail is employed as Municipality at ______

B. Additional defendants see Additional defendants list Attached

IV. Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

See Attached Complaint

V. Relief.

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

See Attached Statement of Relief

Signed this 10 day of December, 2014.

(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

12-10-14
(Date)

(Signature of Plaintiff)

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Timothy Suddeth, et. Al, Class Action
(Name of Plaintiff)
300 Forni Rd
(Address of Plaintiff)
Placeville, Ca. 95667
et. Al*
vs.

(Case Number)

COMPLAINT

County of El Dorado Sherriffs Department
El Dorado County Correctional Facility
et Al*
(Names of Defendants)

I. Previous Lawsuits:

A. Have you brought any other lawsuits while a prisoner: ☒ Yes ☐ No

B. If your answer to A is yes, how many?: 1 Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

1. Parties to this previous lawsuit:

Plaintiff Timothy Suddeth

Defendants Adam Weiner et Al

2. Court (if Federal Court, give name of District; if State Court, give name of County)

Eastern District of California

3. Docket Number 2:14-CV-902-AC

4. Name of judge to whom case was assigned Alison Claire

5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)

pending

6. Approximate date of filing lawsuit April 2014

7. Approximate date of disposition pending

II. Exhaustion of Administrative Remedies

A. Is there a grievance procedure available at your institution? ☒ Yes ☐ No

B. Have you filed a grievance concerning the facts relating to this complaint? ☒ Yes ☐ No

If your answer is no, explain why not __________

C. Is the grievance process completed? ☒ Yes ☐ No

III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A. Defendant Sherriffs Dept / Jail is employed as Municipality at El Dorado County

B. Additional defendants See additional defendants list Attached

IV. Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

See Attached Complaint

V. Relief.

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

See attached Statement of Relief

Signed this 16 day of December, 2014.

(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

12-10-14
(Date)

(Signature of Plaintiff)

# LIST OF ATTACHMENTS

COMPLAINT

POINTS AND AUTHORITIES

MOTION FOR APPOINTMENT OF COUNSEL

IN FORMA PAUPERIS APPLICATIONS FOR

- BRUCE BENTON
- BRIAN SPEARS
- RICHARD ANDERSON
- *TIMOTHY SUDDETH IS A CIVIL COMMITMENT NO APPLICATION NEEDED

GENERAL ATTACHMENTS #1-5

DECLARATIONS #1- 25

ANDERSON ATTACHMENTS #1-45

BENTON ATTACHMENTS #1-18

SILVA ATTACHMENTS #1-4

SPEARS ATTACHMENTS #1-8

DIAGRAMS #1-2

Brian Spears
300 Forni Road
Placerville, Ca. 95667

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brian Spears,<br>Bruce Benton,<br>Richard Anderson,<br>Timothy Suddeth, et. Al. (Class Action)<br>VS.<br>County of El dorado Sheriff's Department,<br>El Dorado County Correctional Facility,<br>Et. Al. | Case No.:<br><br>**Points and Authorities** |

To start a section 1983 claim for a constitutional violation based on inadequate medical care, we the plaintiffs must allege, "acts on omissions sufficiently harmful to prove evidence of indifference to serious medical needs." ESTELL V. GAMBLE, 429 U.S. 97, 106, 99 S. Ct. 285, 50 L. ED. 2d. 251 (1976)

A pretrial detainee's claim for unconstitutional conditions of confinement arises from the Fourteenth Amendment Due Process Clause rather than from the Eight Amendment prohibition against cruel and unusual punishment. Bell v. Wolfish 441 U.S. 520, 535, 1979, 99 S. Ct. 1861, 60 L. ED. 2d (447). Nevertheless, the same standards are applied, requiring proof that the defendants acted with deliberate indifference, Frost v. Agnos 152 F.3d. 1124, 1128 (9th Cir. 1998).

To prevail plaintiffs must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 297-99, 111 S. Ct. 2321, 115 L. ED. 2d. 271 (1991).

McKinney v. Anderson 959 F.2d. 853, 854 (9th Cir. (1992). A serious medical need is one that significantly affects an individual's daily activities, an injury or condition a reasonable doctor or patient would find worthy of comment or treatment, or the existence of chronic and substantial pain. McCuckin v. Smith 974 F.2d. 1050, 1059-60 (9th Cir. 1992), overruled on other grounds by UMX Techs v. Miller, 104 F.2d. 1133, 1136 (9th Cir. 1997) (en banc).

Deliberate Indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. Hutchirson v. United States, 838 F.2d. 390, 394 (9th Cir. 1988).

To act with deliberate Indifference, a prison official must both be aware of facts, from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennen. 511 U.S. 835, 837, 114 S. Ct. 1970, 128 L. ED. 2d. 811, (1994). Thus, a defendant is liable if he knows that plaintiffs faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it , Id at 817, it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm Id at 842. A physician need not fail to treat an inmate altogether in order to violate that inmates Eighth Amendment Rights. Ortiz v. City of Imperial, 884 F.2d. 1312, 1314 (9th Cir. 1989).

A failure too competently treat a serious medical condition, even if some treatment is prescribed may constitute

deliberate indifference in a particular case. However, it is important to differentiate common law negligence claims of malpractice from claims predicted on violations of the Eighth Amendment prohibition of cruel and unusual punishment, In asserting the latter, mere “indifference” “negligence”, or “medical malpractice” will not support this cause of action, BROUGHTION V. CUTTER LABORATORIES, 622 F.2d 458,460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105.06). A delay in medical care must have caused harm O’Loughlin v. Poe, 920 F.2d 614,617 (9th Cir. 1990).

LEGAL STANDARD FAILURE TO PROTECT

A municipality such as a county is a “person” under section 1983.

A municipality maybe liable under section 1983 for monetary, declaratory or injunctive relief where the constitutional deprivation was caused by the implementation or execution of “a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body’s officers” Monell, 436 U.S. at 690, see Bd. Of the county commissioners of Bryan county v. Brown, 520 U.S. 397, 403-04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)

Plaintiff alleges the defendant El Dorado County is responsible for the condition of the jail and the operating and polices of the doors with in the facility, and is responsible for the safety of its occupants inside of the facility, and those it trains to operate the facility.

Plaintiff seeks an injunctive relief and monetary damages. To establish municipal liability, plaintiffs must show (1) We were deprived of a constitutional right.(2) The county had a

policy, practice or custom. (3) The policy, practice, or custom amounted to deliberate indifference to one or more of the plaintiffs' constitutional rights. (4) The policy, practice, or custom was the "moving force behind the constitutional violation." Van Ort v. Estate of Stanewich 92 F.3d 831, 835 (9th Cir. 1996).

We believe that all plaintiffs were at the time pretrial detainees and not convicted prisoners (one a civil-commitment) at the time of the incidents, the applicable standard is by the way at the Due Process Clause of the fourteenth Amendment rather than the Eighth Amendment. "Due Process requires that a pretrial detainee not be punished. Bell v. Wolfish, 441 U.S. 520, 535 n. 16, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). A sentence inmate, on the other hand, may be punished. Although that punishment may not be "cruel and unusual" under the Eighth Amendment nevertheless, as the rights of pretrial detainees under the Fourteenth Amendment "are comparable" to prisoners" Eighth Amendment Rights, the same standards are applied Frost v. Agnos, 152 F. 3d 1124, 1128 (9th Cir. 1998) citing Redman v. County of San Diego 942 F.2d. 1435, 1441 (9th Cir. 1991). This is not a case involving the application of force to quell a disturbance in which case a cruel and sadistic standard would apply. Wilson v. Seiter 501 U.S. 294, 299, 111 S. Ct. 2321, 115 L. Ed. 2d 27, (1991)

Rather the issue here is one of failure to protect (where purposeful or otherwise), which would be governed by Farmerv. Boennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d. 811 (1994). Deliberate indifference is the appropriate standard to be applied here. A prison official's deliberate indifference to

a substantial risk of harm to an inmate violates the Eight Amendment.

Farmer v. Brennan, 511 U.S. at 828. To succeed on a claim of deliberate indifference to the threat of serious harm or injury by another prisoner, plaintiff must demonstrate that the deprivation of his rights was "objectively sufficiently serious" Id at 834. When the claim is predicated upon the failure to protect, the deprivation is deemed to sufficiently serious if there was a substantial risk that the prisoner would suffer serious harm plaintiff must also demonstrate that the defendant knew of and disregarded an excessive risk to his safety! "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference" Id at 837.

We the plaintiffs alleges that El Dorado County Jail had a policy of totally separating G.P. inmates from P.C. Inmates except at the following times being handcuff and shackled being taken to transport van and being in court sitting next to G.P. due to convenience in such close proximity is arguably unconstitutional, more example of policy, practices or customs. (1) G.P. from P.C. is policy, practice, or custom. (2) Popping one door is policy, practice or custom (3) Radio ahead to next tower for clearance, is policy, practice, or custom (5) G.P. Inmates are "mandated" to assault P.C. inmates, this is a policy, practice or custom (6) Putting sex offenders in C-Pod is policy, practice, custom (7) Putting other P.C.s in D.Pod-"Drop outs" is policy, practice, custom (8) P.C. mainly C.Pod always getting attacked never any G.P. groups against other G.P. groups or (gang disruptive group) this seems to be a policy a practice and custom (9) Defendants are aware of the constant and long standing threat of violence posed by G.P. to P.C. inmates (10)

Defendants know the risk of harm created if the two mixed (11) Defendants know of the "Rule" mandating that G.P. attack P.C. inmates, its long standing, well grounded and established throughout all correctional institutions in California including El Dorado County Jail.

For these reasons, we the plaintiffs believe we have stated a color of law Fourteenth Amendment Claim against El Dorado County Jail and other listed including John Doe's 1-50 for a failure to protect claim

The facts and statements speak for themselves. Our allegations regarding defendants policy of mixing G.P. and P.C. inmates are more than "naked Assertion labels and conclusions or a formula recitation of the elements of a cause of action" Bell Atlantic Corp. v. Tuombly, 550 U. S. 544, 555-57, 127 S. Ct. 1955, 167 L. Ed. 2d. 929 (2007) Failure to protect plaintiffs resulted in injuries sustained by certain plaintiffs to be named in medical claim.

# ADDITIONAL PETITIONERS LIST

## PETITIONERS

ALL INMATES THAT WERE AFFECTED BY THE EVENTS DURING THE TIMES STATED, THE TIME BEFORE STATED TIMES, AND THE TIME FOLLOWING THE STATED TIMES.

All that are eligible under the laws of

CLASS ACTION

# ADDITIONAL DEFENDANTS LIST

DEFENDANTS

EL DORADO COUNTY CALIFORNIA
CORRECTION OFFICERS ( DOES 1-20)
CORRECTIONAL FACILITY STAFF (DOES 21-35)
THE EL DORADO COUNTY SHERRIFF
CORRECTIONAL ADMINISTRATION STAFF (DOES 35-50)

All of the above in their official and individual capacities

# RIGHTS THAT WERE VIOLATED

Due process Clause under 14th Amendment

8th Amendment Right – freedom from inhumane conditions of imprisonment

And others

-Acted in concert
-Deliberate indifference
-Unusual punishment
-Failure to train properly
-Failure to protect
-etc.

# SECTION V RELIEF

The petitioner's are asking that the practices mentioned in this cause be stopped **Immediately**.

The petitioner's are asking that better safety policies be put in place to protect protective custody inmates. And that proper training be done to ensure the safety of those inmates.

The Petitioner's are asking that better trained and more sensitive medical staff be placed within the county jail and a form of overseeing be emplaced so a quicker response to a complaint by an inmate can be handled.

The Petitioner's are asking that a policy be instituted to maintain a consistent level of food and that menus be placed in every pod as required by the title 15.

The Petitioner's are asking that a better policy be emplaced that would allow the inmates a true minimum of six hours of uninterrupted sleep.

The Petitioner's are asking that a better policy and overseeing of the equal treatment of all inmates regardless of race, what their charges are or were they are housed be emplaced.

The Petitioner's are asking that a clear and precise policy be instated allowing the inmates a clear path to the exhaustion of their administrative remedies. And a clear acknowledgement when their remedies have not been exhausted.

The Petitioner's are asking that damages be paid to the inmates based on a tiered scale determined by the amount of effect on the inmate.

The Petitioner's are asking that fair amount be set for compensation for their pain and suffering.

The Petitioner's are asking that the Defendants acknowledge the fact that these events have traumatized and emotionally devastated petitioners.

**General Attachment #1**

6-15-14

To whom it may concern

We are looking for representation on this issue. Even after the events listed in the attached letter, additional events have happened regarding the popping of door locks. Internal Affairs have already started their investigation and injuries have been documented and associated with the event on 4-28-14.

There are several other well documented issues and situations (including the fact that at least three law suits that we know of have been filed this year alone involving the El Dorado County Jail and similar civil rights issues) that will not only make this case very easy to pursue but will open the doors to several other viable situations. Someone needs to stop this county from violating the civil rights of their inmates. It has become so common place that is the normal mode of operations for this county.

We look forward to hearing from you.

Sincerely,

Brian Spears

Bruce Benton

300 Forni Rd. Placerville, Ca. 95667

General Attachment #2 pg 1 of 2

5-1-14

Hate Crimes abundant inside El Dorado County Jail

Inmates whom are suppose to be in protective custody are constantly getting attacked, one ending with the inmate committing suicide because he was afraid of the continued abuse he might face once he was sent to prison, another mentally challenged inmate operating with the mind of a child had his teeth punched out. Even though these inmates are segregated and the only way other inmates can get access to these inmates is through an error on behalf of the correctional officers, these errors appear to be happening quite often, six that I know of in just the last two years. The system is kind of ran as a small traffic control system. But if this was the airline industry it would be the equivalent of 6 major airline crashes over a two year period. This just would not be acceptable. But since most of these inmates being attacked are charged with sex crimes or are just housed in the POD that usually houses such inmates no one seems to care about the abuses that are a daily threat to these inmates. The majority of these inmates are only charged with a crime and have not been convicted of anything. This is a clear violation of their human rights and a constant threat to their safety.

Joey Linson (see Linson v. El Dorado County Sherriff's Detention Div.) was charged with a sex crime and on his way back to C-pod (the pod that houses inmates charged with such crimes) as he awaited for his pod door to be opened by remote instead the D-pod door was "accidently" opened and an inmate ran out of D-pod (D-pod houses some of the more dangerous inmates) and attacked Joey whom defended himself. Joey ended up defending himself very well and got the best of the other inmate but was later charged with mutual combat.

Ali (Muhammad) Robinson an African American inmate whom had just recently had heart surgery and was house in A-pod which is a segregation housing unit were only one inmate is allowed out at a time was attacked by another inmate Nick Coyle ( a known Sacramento Skinhead) whose door was "accidently" opened during Ali's day room time. Nick Coyle attempted to murder Ali by trying to throw him off the tier. This entire event was based entirely on racism.

John Perera was also another inmate that was charge with a sex crime and was returning to C-pod but again instead of C-pod door being opened, D-pod was opened "accidently" and he was attacked by several of these dangerous inmates, all he could do was curl up in a ball and take the beating until the officers finally arrived. John never adjusted to the damage and ended up committing suicide.

Raul Moreno and Joshua Kuntz were leaving C-pod on their way to church and when their door to c-pod was opened they exited the pod and within seconds D-pod door was opened "accidently" and several inmates again ran out and attacked Raul. Raul is a mentally challenged inmate operating at the level of a child with no knowledge as how to defend himself so he just stood there as he was beaten and his teeth were knocked out. He never even rose a hand in defense. Joshua Kuntz had to defended himself against several inmates until officers arrived.

It only gets worse. Just recently on the evening of 4-28-14 as inmate Charles Greeson was returning to C-Pod from medical and just steps away from his pod, the door to Dorm 1 and the door to the yard area were "accidently" opened along with C-Pods door. As Charles, approximately 50 years old, hurried to his pod door a dozen or so inmates in their, 20' and 30's, from the yard and Dorm 1 ran after him, reaching him as he grabbed for the door. He was able to defend himself from the first attacker but the and on slot of the other inmates over powered him and took him to the ground, and commenced to beating and kicking him viciously. As the door to C-pod was still open several inmates from Dorm 1 and the yard attempted to enter and pull other inmates out whom successfully defended themselves. A friend of Charles, an inmate named Jason Bonderer after seeing his friend beaten repeatedly, push his way out the door to try and prevent what he called in his own words "my friend from being

killed" He was able to defer some of the attention away from Charles saving Charles from even more physical damage but the attacking inmates turned on Jason and began attacking him and Charles. All this happened while the fight at the door to C-pod continued. With some C-pod inmates in their 50's and 60's having to fight off Dorm 1 inmates in their 20's and 30's. Even though the correctional officers booth is only just a few feet away it took approximately 5 minutes before help arrived and order was restored, leaving Charles and Jason severely beaten and bruised and several other C-Pod inmates with bumps and bruises including Bruce Benton whom the intruders tried to pull out the door in which Bruce ended up with loose teeth and Timothy Süddeth a sixty plus year old whom tried to maintain the doorway to prevent more intruders from entering and assisted Bruce against the attempts to pull him out the door. Jason is knowingly housed in C-pod solely because of his homosexuality making this a true hate crime, as the intruders shouted out prejudicial statements like "Kill the fags and cho mos"(cho mos meaning child molesters).

Even worse, the next day Charles, Jason, Bruce and others in C-pod were charged with fighting other inmates (punishment for being attacked). The day after that, the entire jail including C-pod was subjected to a raid by the jail staff. Instructed by officers in riot gear and weapons in hand to sit on the ground and face the wall while vicious dogs were growling and barking just a couple of feet away behind their backs. Already traumatized C-pod now had to fear an attack by dogs they could only hear and feel just a few feet behind them as they were told not to look. Is this how victims of crimes are treated by the El Dorado County Correctional system? Because what had happened just a couple of days before was a hate crime. Older inmates were attacked by younger ones solely because of their charges or their sexual preferences. Remember most have not been convicted of anything. As some inmates are housed in C-pod simply because of their sexual preferences or limited mental ability, not because of a sex crime. Either way the attack on them is a crime punishable by imprisonment. Several of the inmates that were attacked have notified their court appointed attorneys.

This letter is being generated to try and bring some light to what is going on inside of the El Dorado County Jail. Even though some of the inmates in C-pod and the other pods will only be here for a short period of time, they are being subjected to prejudices and other punishment that will affect them for a life time. It is actually changing their personalities and their outlook on life and society as a whole. And I'm not just talking about the ones being attacked but also the ones doing the attacking or others that are just witnesses. This is just inhumane treatment of human beings. They are being treated worse than animals. These are peoples son's, brothers, fathers, friends and loved ones. They are human beings that are being taught hate and violence and then being released back into the local society. They are being taught these things are ok and you can get away with them. This is not only illegal but is it truly what the local society wants to happen. Just imagine yourself or your loved one being in this jail for a traffic infraction or other minor mishap and being subjected to being forced or threaten to participate or witness events like these.

Hopefully someone will be able to take this information and help stop some of the prejudice and racial injustices that are going on inside of the El Dorado County Jail.
(spelling of names are approximate, situations are known facts based on interviews and eyewitness accounts)

Sincerely, Concerned inmates

Brian Spears Bruce Benton

Ps (attacking inmates were written up and found guilty through internal process or so we were told, but later found out that nothing was done as some received jobs shortly after the attack. Also it was explained that the DA would not pick up this cases)

# General Attachment #3

August 3, 2014

It must have been 2008 or 2009 there was a gentleman here named Mike Stevens and he got let out to go to yard and there was a general population guy trying to get into Dorm 1 and they started fighting, there was also another Incident between a man named Sonny John and a man from D-pod, the man from D-pod attacked Sonny John and there was a physical confrontation, these are 2 instances that I witnessed myself.

Shawn McGuire #101006

August 3, 2014

To whom it may concern

I am doing time in the El Dorado county jail. I believe that things here are unconstitutional. 1. is the lighting situation. The lighting stays on from 0500 hours to 2300 hours at full wattage. That's six hours of dim lighting, at 20 foot-candles (215.2 lux). 2 is the fact that we are woke up at 0500 for pill call rather we take pills or not. At 0600, we are again woke up for count. At 0630 we are again woke up for breakfast. At 0730 we are again up for cell inspection, daily. From 0500 the lights are back on at full wattage. We are being woke up every hour during the night, due to officers yanking on our doors, to check to see if there locked. I believe the lighting here is cruel and unusual punishment, also due to the fact that we are unable to get sleep in this county jail. If there is anything that might be able to help out our situation, please help.

Two more thing is our commissary. I don't even know if there is anything that can be done. When we order our commissary, the El Dorado County Jail takes the money off of our books without us signing our receipts before receiving our commissary. If some gets released or transfers before the receive their commissary, they are out their money.

While in the El Dorado County Jail, we are charge for many thing, one of the most outlandish, is their hair cuts. Inmates are charge 13 dollars to get a hair cut.

Please if there is anything that can be done please help.

Richard Anderson-126026 – C-7

300 Forni Road

Placerville, Ca. 95667

General Attachment #5

# Too few zzz's at night can put you in peril

**Karen Weintraub**
Special for USA TODAY

We all know what it's like to get a lousy or short night of sleep: Tempers shorten, snacks become more tempting, attention gets harder to sustain.

Researchers are just beginning to understand the long-term consequences of a lifetime of those rough mornings — and it doesn't look good. Poor sleep is linked to heart disease, diabetes, obesity, depression and Alzheimer's.

Roughly 40% of American adults and 70% of teens say they don't get enough sleep. America's sleep problems are the focus of *Sleepless in America*, airing Sunday on the National Geographic Channel. It was produced by the channel in collaboration with the National Institutes of Health, the American Academy of Sleep Medicine and other groups.

Scientists don't understand exactly why we sleep, but every creature does it, so "that tells you there's something really profoundly necessary" about it, Francis Collins, director of the National Institutes of Health, said at the premiere of the show this month.

A growing body of research suggests that during sleep, the brain flushes out harmful chemicals such as the beta amyloid that builds up in Alzheimer's.

"The brain requires a kind of cleanup process that we're beginning to glimpse," Collins said. "Without taking out the trash, you're going to find that the next day your brain is not functioning at its best."



MATTJEACOCK-MJ PHOTOGRAPHY

Usually the cost of lost sleep is slow and silent. Not in transportation, where a few seconds nodding off can end lives, said Mark Rosekind, a National Transportation Safety Board member and psychologist who studies the consequences of exhaustion.

At the premiere, Rosekind challenged scientists to develop a "fatiguealyzer" to detect exhaustion, in much the same way that a breathalyzer detects alcohol.

"If we want to thrive," he said, "we have to start valuing sleep."

# Declaration

I Timothy Suddeth do hereby declare the following

1. Now while at the 'County Jail, waiting for trial. I have been here 4-years, and in that four years, I have been attacked four times from people in my pod, and at least two of these the officers saw what took place, and did nothing.

2. Then also I know of 6 or 7 time that the officers opened our dorm door along with other pod doors, so they could attack us.

3. One person that was attacked, was one Raul Morano, this young man has the I.Q. of a 10 year old, and when he was attacked he had his teeth knocked out. the County Jail had the inmates that had done this, but would not get Morano to press charges against them. And I believe this was because they did not want this on their record.

4. There was another inmate, one Joie Lenson, he was not the attacker but he was shot with the stun gun over the heart,

5. There was a mass attact on one inmate from our pod, then one of his friends went out to help him, then me and one Bruce Benton, we were holding the door, when Bruce was being pulled out farther, I pulled him back, and both of us were hit in the head, Mr. Benton, had problems from the beginning, headache, and other problems, it was not until I started to see double, and having headache, that I went to the doctor here, and I found out when they sent me to the eye-doctor, that I now have the beginning of cataracts, one eye is lower than the other, which is why I am seeing double, also she said something about 6 crystals in one eye, 3 or 4 in the other. Yes I have written to the eye-doctor, asking if this could be repaired surgery, I never received and answer from her.

6. Too this day the Officers are still opening our door along with the other pod-are willing to attack us.

7. Also, we have no Medical care here that should be given to any inmate that is being held for long periods.

8. No Real Dental.

9. No real Mental Health care, only as the jail sees fit.

10. The jail here (harm us, really bad,) by not allowing us to sleep six-hours of uninterrupted sleep, matter of fact we do not get four hours of uninterrupted sleep a night, they come by and rattle the doors, and wake you up, they throw mail under your door in the middle of the night, they slam the pod door real loud, so when you are dealing with this court, and your attorney, you are at your best.

11. We have Legal Mail that is thrown away, we have complained many times, but they do nothing about it, we have asked them to monitor, the Mail from the time it leaves the pod, to the person that puts it in the Postbox or Post office. They refuse to do this.

12. We are not allowed to have pens to be able to write our legal- paper work with, we are only given one pencil a week as indigent inmates, and they say we are not allowed to use pens because they can be used for making tattoos. Nevertheless, everyone knows you can also use pencils to do the same thing. The only reason I see that we are not allowed to have pens, is because they can erase pencil.

13. The only thing I know is this, this County Jail, does everything to help the court out, against the inmate.

I declare under penalty of perjury that these statements are true and correct to the best of my understanding and belief.

X ______________________________

Timothy Suddeth
Declarant

To Courts presiding over this Case.

My name is Steven Francis Shaw, born April 11, 1979.

The following statement is True and Correct To The best of my Reco-lection.

On or about The 14TH Day of November 2014 I was Booked into Eldorado County Sheriffs office (Jail) at 300 forni Rd, Placerville, California, 95667.

At This Time I Requested a walk alone order To Be implimented out of fear That Mr Shane Mendonca was going To attack me a Second Time in This Jail. I Also Asked for a Keep Seperate order on Him. Which Classification officer Hart Violated.

I Subsequently was placed in The Same pod as my attacker. "(Shane mendonca)", on or about November-19, 2014 Shane Mendonca Paid Joe Smith To Hide in The Shower until His groups Lock Down, Because I was Next for Day Room (1 man walk alone)

upon exiting my Cell, Joe Smith Jumped out of enclosed Shower And Said, as follows. "You Snitch Nigger mother fucker, im going To Kill you!")

And Began The assult By punching Me in My face, THEN pushing ME BACK in my Cell where i was Beat on for approximate 1-3 minutes." im not certain Time wise; Because I was Rendered unconsio us." When I Regained consiousness I pushed my Emergency Button inside my Cell To no Avail.

I Exit my Cell seeking medical attention. where Joe smith is still outside His cell. He offers His Hand in a form of Truce (peace offering). Makeing me Believe All issues are Resolved.

at This Time He Begins an second Assult in Day Room of B' pod Eldorado Co. Jail, I yell for assistance Never one Time Return ing any punches, Kicks, or form of protection or, Combat Retaliation.

when officers (Guards) Recognized The Situation at Hand, One was moving faster But 3 where casually walking To The Situation,

at which point I was Handcuffed and Escorted To medical.

All of This should Be on video TAPE, and assult for Hire should Be on audio From Cell 5 occupied By Shane mendonca and Milo Saulter.

Plaintiff [illegible] 12/2/14

**Declaration #3**

MY STATEMENT OF WHAT TOOK PLACE AT THE EL DORADO COUNTY JAIL

I was standing by the sick-call box, when I heard two doors click. The first one was the door to C-pod, the other I did not know until after the fact. Was the yard door, but they were both almost at the same time. And not pulled open or even kicked open.

What I saw was 3-or-4 guy's trying to come in the pod. One guy had grabbed (freak) Mr. Benton, so I ran over- on my way I saw the guy in cell-6 on the ground with 6 or 7 guy's kicking and hitting him. Or in other words, beating the crap out of him. Also (Benton) was being hit from 2 or 3 guys. When to the door I grabed (Benton) and pulled him back to the door. one guy a young man about 5' 10" blonde hair and one with a gotee.

The blonde haired guy hit me one time maybe two on the left side of my face. Fairly hard.

This is all a saw or played a part in. I do wish I was young again so I could have done more, and was able to go to the help of the guy in cell-6.

SIGNATURE:____________ DATED: 4/29/14

UPDATED AS OF 10/16/2014

I have been to the eye doctor, and have found out that I now have a cataract forming in one of my eyes, also I have damage to my right eye, it is lower than the lift one, now I see double, and now need a prism on that side.

Plus I have other damages, to both eye's, the doctor side something about crystals in both eye's.

The doctor had at the time asked me if I had been hit in the head, and I was not thinking about anything after hearing all this, and I said "no." but then when I got back, I remembered about the attack on us.

Oh. I asked the doctor if the damage was done because of me being a diabetic, she said "no."

So now I want to include this damage to the law suit.

SIGNATURE:____________ DATED: 10/16/14

ATTACHMENT APPROX 11 AM **Declaration #4** 1/28/14

#1

I've asked to speak to C/O Hart (SMALLER HART) Because the investigating officers of the Hate crime attack had left the jail after, the inmate line up, officer Hart told me the officers left (BRAAFALDT & GUTSU) and that I could I D the 5150 inmate & A couple others, I just had to relax some & re think about this, due to the attack happening just A few minutes By but these others were spitting, hitting me & others & yelling Kill The cho-mos & Fags!

This one and the other I 180% I D R the ones who tried to pull me out the door and spit & hit & Kicked me Charles Greeson, & Jason Bondeson also the 2 that were at the DOOR holding it open & trying 2 come in by the grace of God we were able to Stop them.

we've also been told by staff that cameras are & arent Working! if any at all!

Bruce Benton

ATTACHMENT #2

**Declaration #5**

12:35 pm 5/10/14

On this date while Doing there walks officer Dunahue and officer wheeler exited Dorm #1

The door did not close! And officer wheeler had to go back & shut the Door!

This was wittnessed by quite a few people in Both Dorm #1, C-pod & other Pods. Do to the very recent attacks/assaults we are on every pod & Dorm Doors

Bruce M Benton 5/10/14
12:47 pm

Attachment #3



**Declaration #6**

5/27/14

Told DR Lee neck is getting worse he said arthritis in ligament or tendon damage, Possibly what cracking is!

No way cracking is Bones & stabbing pain is very painful alot of nightmares He denied anderson also

This has been alot of Problems seeing the doctors. They arent doing anything & I Guarantee doesnt work!

[signature]

**Declaration #7**

Attachment #4

At Di[illegible]le returning from visiting, After Officer Handy was told by the Tower it was clear to return as I reached the lower level of Dorm 1 the door locked, pryor to this it was open to allow Dorm 1 Inmates access to attack me. Thankfully they didn't see me until door locked they still acted as they were disappointed they missed an oppertunity to attack and ridicuel me with hand jestures and body language to add more proof of a blatant hate crime toward me. I am still shaken over incident and can't get it out of my head that I came very close to being a victim of such crime while in Protective Custody (Alledgedly) it just conforms the lack of training or attention given to a persons job as Important as they should be.

6-1-14

Darrell Brooke

4, 28, 14

**Declaration #8**

The guys From yard and Dorm I
Hurt Chuck Jason and Bruce they
Kick and hit them BaD, like they Hurt
Me to BeFore

x Raul Moreno

**Declaration #9**

4-30-14

I Declare,

ON 4-28-14 I was called to a dissaplin hearing in Booking at the EL Dorado County Jail Faculty.

Apon returning to "C" pod (which I was housed) my path took me through the Sally Port that connects Dorms 1 & 2, Pods A, B, C, & D, And Lower Yard. C-pod is Procted Coustidy.

Dorm 1 inmates were at yard & as I rounded the corner I heard the Yard Door & Dorm 1 door click to unlock. All inmates from Dorm 1 had access to the said Sally Port & at least 50% - 20 or more inmates were walking in from yard.

As they relized that I was a Procted Coustidy inmate withen access they Charged & jumped me as I attempted to enter C Pod. I was overcome & assaulted by an onslaught of at least 10 to 12 Dorm 1 inmates.

They attacked me by hitting & Kicking me over & over & over. They were yelling Kill the Chomo.

**Declaration #10 pg 1 of 2**

I Declare,
On 4/28/14 a group of inmates attacked myself, Jason Charles Bonderer and a few other inmates Like Charles Greeson there were about 15 attackers They hit, kicked, and stomped on us it took over 6 minutes for deputies to respond. I believe my pelvis was fractured and other numerous injuries occured the medical staff here at the jail Refused to take us to the hospital even at our repeated request. I believe we

are being discriminated against because we're ~~we~~ in C-POD "protective custody" we were called Queers, Cho-mo's and other vile names, were denied propper medical treatment we are in constant fear of attack.

Jason Bonderer

Jason Bonderer

12/11/14

**Declaration #11**

4-29-14

I joshua Lewis KUNTZ am scared that my life is in grave danger. I am afraid to leave C-Pod housing unit because of multiple instances where our supposed protective custody is at stake and multiple times of assault & battery, not just against me but also against fellow protective custody inmates. By what I saw that occured yesterday 9-12 people from general population mixed between medium & maximum security attacked not only one known by the name of Charles Greeson but also jason Bonderer & Bruce Benton this isn't the first time this has occurred and we're deathly afraid that we are in danger by these things that have happend and the words that are still being said such as "Kill them" (protective custody bitches and all Chomos.) I feel our rights for actual protective custody is being violated and ask for our safety & out of the bottom of our hearts that something or someone helps fix these problems from happening.

Thank you for your time

Sincerely, Joshua Lewis Kuntz

**Declaration #12**

IT must have been 2008 or 2009 There was a gentleman here named Mike Stevens and he got let out to go to yard and there was a General Population guy trying to get into Dorm 1 and they started fighting, there was also another Incident betwee a man named Sonny John and a man from D-pod, The man from D-pod attacked Sonny John and there was a physical confrontation, these are 2 instances that I witnessed my self.

Shawn McGuire #101006
Aug, 3, 2014

**Declaration #13**

9:30 A.M.
4-29-14

It was around 7:30 on 4-28-14 when
I David Reed withnesed Chuck Greeson coming back from booking, he was almost to our Pod-C door when he was attacked by several inmates from Dorm 1 coming out of yard. Dorm 1 was coming out of yard at the same time Chuck Greeson was coming back from booking, Dorm 1 was yelling, get that child molester. Several of them tried to get in C-pod. I can Identify 2 of them from Dorm 1 And the one blonde tried to pull Benton out of C-Pod and assaulted him, Benton was able to get back in C-Pod.
There was at least 6-8 inmates from Dorm 1

P.S. I am now nervous to leave my pod because of G.P. doors being popped and being attacked with no Protection.

David Reed

# Declaration #14

DATE OF INCIDENT 4-28-2014

I watched as a whole bunch of men surrounded Chuck Gregson while he was returning to C-Pod. His hand looked to be upon the C-Pod Door as He was attacked from behind. two men stood at the door way not allowing anyone of the attackers in to C-Pod, Bruce Benton and Dave Everett. Jason Bonderer went out of C-Pod to defend his friend since there was no one else to help him. the Police then came and stoped the issue. At that point Jason Bonderer was laid on the floor not moving.

I have been in similar situations in the past that have involved myself.

Today is May 17, 2014

Any Questions, Just Ask!

My Name is Cole Douglas Richardson

Cole Douglas Richardson

**Declaration #15 pg 1 of 2**

1

over→

I was sitting at the table closest to the sink in the Dayroom after Laundry exchanged was called over the speaker I saw Charles Greeson on his way back from booking when the yard and dorm 1 door were opened @ the same time by the ofiser on duty in the C2 control tower.

as dorm 1 was returning from yard they noticed Charles and rushed him yelling Chomo (child molester) and fag It was then that the C Pod door was also opened by the C-2 control tower our Pod door was opened and Jason bonderer reached through to pull Charles in wile being attaced by no less than 10 active inmates from dorm 1 @ this point Jason was pulled out into the assault and a dorm 1 imate steped into C Pod and grabed closest imate Bruce Benton hitting him several times

**Declaration #15 pg 2 of 2**

(2)

Before being pushed back out by Benton. The remainder of the attack took place out side of C Pod where Bouderer (who was pulled out) and Greeson were defending themselves against no less than 10 active inmates. The whol atack lasted no less than 2 minutes 20 sec why did it take so long for help to arrive.

Brett Davis

[signature]

Case 2:15-cv-00165-AC Document 1 Filed 01/20/15 Page 59 of 175

# Safety Concern

On Friday while returning from Court, As we were nearing C-Pod which is Protective Custody as they C/Os unlocked our door B Pod's door which houses Gang Member Drop outs at the same time unlocked fortunately for us there was no-one near the door to come out and attack us which is what happened to Jason Bonderer, Chuck Greeson and Bruce Benton who were attacked by inmates (approx 10) from Dorm 1 on April 28th which left all three with some injuries. These attacks are not Revoked instead are Hate crimes which endanger every inmate regardless if they have been found guilty or not. accident maybe, but it seems to happen frequently and only to C-Pod? Now Everytime I leave the C-Pod I am quite concerned for my safety. There are alot of questions to be answered, It's either neglect, intentional or technical design error since it only happens to C-Pod Inmates leaves pretty much one answer and there should be consequences for the issues, (Monitor

In more detail there was so
much confusion and Dorm #1 Inmates
in abundance that inmates at the
doors couldn't get to intercom
to push button for help, Greeson
was so overwelmed with being
attacked the couldnt get to
button outside the corridor.
This happened on April 28th
and there has been no type
of correction or investigation
made to insure it doesn't
happen again, Because it has
twice. On May 16th approx 10:00 a.m.
and again on June 1st at approx.
6:30 am Both to me Darrell
Brooke, the first with Benton
Speers The second Alone
I feel for some reason
I have been targeted

[illegible] for the issues, (Monitory etc.)

Responsibility for Control operations

My main concern is inmate safety (On Back)

Can it be provided?

5-3-14 Darrell Brooks

**Declaration #17**

I WAS Changing out of my whites into my oranges when I heard a Commotion down in the day room. when I Looked out the window in my door I seen A tall I think Blond guy trying to pull Mr Benton out the door another person (Tri-pod) Mr Suddereth was trying to pull Benton back in the cells When the guy hit Tri-pod in the face. He tryed several time to grab people close to the door and He even took a swing at my cellie Don Everett

Thank you

William Mull[illegible]

**Declaration #18**

I was standing in the door way when they ran up on Jason and chuck They were Trying To Pull Freaky out To sock him They knocked chuck To the ground I saw a guy threw some puches the guy with the glasses was the first to threw punches at chuck he went To the Floor then Jason ran to help him he got hit than they Pulled Freaky out Then they were Trying To come in are dayroom while this was all happening a guy was still punching chuck

JOE CRESPIO

To whom it May Concern:
On the 28th of April, 2014, there was an incident of conflict between "C" Pod and Dorm 1 of which resulted in the physical injury of multiple inmates of "C" Pod. Inmate Greeson was returning from booking when the door to the Yard opened thus allowing inmates of Dorm 1, to be present in the main hallway directly in front of Control Tower 2. Inmate Greeson just passed the yard when an inmate of Dorm 1 made the realization that Greeson was a protective Custody inmate and Called out "Chomo" (standing for Child Molester) and multiple inmates took it upon them selves to make haste in Greeson's direction. The door to "C" Pod was unlocked by the tower and Greeson was just clearing the threshold when he was assaulted and pulled back into the hallway where no less that 10 inmates surrounded Greeson and continued to batter him with fists and feet while other inmates were yelling "Kill the Chomo". While Inmate Greeson is Grappling for his life, other inmates of Dorm 1 proceeded to enter "C" Pod in the attempt to pull inmate Benton out into the hallway but their plan was toiled by inmates Anderson, Suddeth, and Benderer. Though

inmate Benton was kept from being pulled out it was not achieved with out consequence. Inmate Anderson was shoved backwards into a table and suffered a jarring injury to his right wrist and thumb. Inmate Benton took a massive blow to the face and inmate Bonderer was pulled out into the hallway and was assailed next to the wall of "C" Pod. A second attempt was made at inmate Benton of which I, David Everett, intervened and forced intruders back out of the doorway and remained standing vigilant against any further intruding attempt. One inmate of Dorm 1 (a Caucasian White Male approximately 6 foot with short dirty blonde hair and clean shaven face with either blue or hazel eyes) decided to make an attempt at me with multiple swings of the fists which I was able to avoid and was able to fend off attack without actively engaging in the offensive toward my assailant until the Correctional Officers finally arrived from around the tower with tazers drawn and at the ready to break up the Melee in the hallway. All the while Greeson had been grappling with his assaulters. After Conflict was over and Dorm 1 inmates were removed from the scene

inmate Greeson was found to have received a good pummeling to his face and neck and inmate Bonderer, although not looking the worse for wear, was left unable to stand under own power for fear of reinjuring a once broken pelvis. As for myself, though I did not suffer any physical harm, was left thoroughly shaken and had great difficulty in falling asleep that night. I now find myself with a deep seated fear when the time comes for me to leave the Pod in the prediction of finding myself in the position of being attacked by the other sects of the floor on which I currently preside. I am placed in "C" Pod under Protective Custody and yet I don't feel all that protected. I hope and pray that this missive aids in the possibility of avoiding incidents such as this from reoccurring in the future. Thank you for your time and consideration.

Sincerely,

Everett, David C.

[signature] 04,29,2014

4-28-14

While I was waiting in line by the sink for clothing exchange Chuck Greeson was Returning from a DP hearing and when he got to the end of the corridor booth our pod door was pop open he was trying to get in cause the inmates from Dorm 1 were also in the process of returning from the yard when I heard inmates from "CellBlock D" yelling at the inmates Returning to Dorm 1 to get the "chomo" Referring to Chuck Greeson I witness at least 10 inmates from the yard charge towards "C" Pod where Chuck Greeson was Returning to I witness at least 4 inmates attack chuck one had our pod door open and came inside and tried to pull my cellie Bruce Benton out and was hitting him Benton was pulled back inside by myself and Tim Suddeth. Benton was injuried as a Result of this. At the same time Jason Bondnerchargcd out the door to Help Bring chuck inside and was also attack by numerous inmates from Dorm "2" and Also was injuried. David Everett was Able to shove the Ringleader from Dorm 2 back out of Pod "C" he was past the red line in here As far as I know Everett was not injuried. I myself believe my hand was broken when I was shoved against a table during this altercation. This is the second time this has happened-

happen to this pod "C" in the last 6 months This is a p.c. cell and this jail is Responsible for the safety of these inmates from General Population there is severe Hate Crimes happening here from General Population and certain Individuals the sheriffs Dept its no accident that 3 different doors were open at the same time. They were also very slow stopping this altercation I believe it happen for a couple of minutes before I seen 2 sherriffs come with tazers on yelling at people to get down this was not mutual combat this was a Hate crime aimd at people in p.c. "Chomos" and the 3 people in pod "C" - Rodney, Gustavo and Benton have recieve notice of D.P. action against them. This is a weak attempt to hide the truth that the sherriffs dept aint doing its job [illegible] ... my [illegible]. didnt sleep, my blood pressure [illegible] ... PTSD ... the incident [illegible]

[illegible] will [illegible]

[illegible]

On 11/5/14 at 7:05 PM I
Was sitting in [illegible] Room In
C-Pod and saw 3-4 Inmates
Returning From Visits To C-Pod
Where I am [illegible] Housed.
Upon Arrival at Door To C-Pod
Another Inmate From Dorm 1 Attacked
The Inmates and Yelling at The
Colonel "Al Ramos" and was Threatening
Them and Trying To Get [illegible]
our Pod To Attack Anyone &
Everyone In or Around Him
This Has Been an Ongoing Issue
Which Has not Been Resolved
To Date - and Has To Be Stopped
"Officers Then Threaten us with Tazers"
"3Rd Time Now"

Trey [illegible]
# JN1400674
([illegible] El Dorado County
C-Pod Jail)

**Declaration #22**

ON NOVEMBER 5 RETURNING
FROM A CHRUCH Bible CLASS to MY POD
C-POD. I REACHED THE DOOR LAST OF
FIVE INMATE. I GOT HIT ON THE BACK
SO I RUNING THE DOOR A INMATE FRUM
DOOM I RUN over to Hit me. I WAS
MORE UPSET MENTALLY that INJURDED.
My HEART RATE AS UP AND I tOKE
SOME TIME to Cool DOWN. The
COP'S POINTED TASZER GUN AND
Had EVER ONE DROP to the GROUND.
They pick up the one CRAZY INMATE
And that it.

ALBERT RAMOS
C-POD CELL # 15

11-5-2014

P.S IF YOU NEED, I WILL PRESS
CHARGES. UP to YOU?

JN1405131

SAW NURSE: BLACK NUR: ACKNOWLEDGED

[signature]

Inmate Declaration #23 D-23

at the Back entrance to dept #7 court house in Feb or early march 2014 Myself Jorge Silva and Ben Burnely went to court and Eldorado county Sheriffs dept Put us Protective custody in A Transport VAn with the MAX security General PoPulation 3 Very active Prison Gang inmates just from the tension you Knew, Something was going to happen.

Dont Know Correct spelling → officer Ruelas went around the Van leaving us alone after we all Exited the Van, Burnley was Spit on and Silva was head butted and taken to the ground by Inmate Spencer! Spencer then tried to choke Silva as he was trying to get up! officer Ruelas & Bila were the transport officers Ruelas was also classification Gang officer so he Knows Some of the other inmates are long time G.P. & Prison Gang population inmates He Knows better to Put these two inmates together and un observed! Sargent came to Speak to me the very incident & I said no due to threats thank you

[signature] 7/10/14

# Declaration #24

My Name Is Troy Bauer And I Am Here In
Eldorado County Jail In C-Pod And I Have Witnessed
The Attrocities That Have Been Occuring Here
Including Incident on 4-28-14 or Attack on us
As I Saw It Occur It Looked More Like A Riot And
Lasted More Than 10 Minutes Without So Much
As A loudspeaker Announcement To Cease & desist
Several Inmates Were Beaten Some Severely &
Myself Suffered An Injury Several days Prior
In Which Code 2☆ Ambulance & Hospitalisation With
A Severe Concussion With 77 Stitches My Scalp Was
Peeled Off As I Hit A Brick Wall In This Facility
Since Then I Have Recieved Primative Secondary
Medical Care Without Adequate Medication After
Numerous Requests Without Any Assistance I Have
Tried To Tell Them About Painful Headaches And
Neurological Complications That Involuntary Muscle
Movements And Twitches With Memory Loss And
All The Medications Prescribed Have Made It
Unmanageable To Combat The Pain & Discomfort
I Am 57 Years Old And I Have Never Seen This
Kind Of Blatant Disregard Human Dignity.

[signature]

Troy Bauer 5-7-14

☆ 4/7/14 Marshall Hospital Emergency Room

**Declaration #25**

To: whom it May concern. 6/20/14

My name is Bruce Benton
I am very concerned about a Hate crime assault that took place at Eldorado county jail on 4/28/14.
After Filed a complaint with The ElDorado county sheriffs dept, who in return submitted it to the Eldorado county District attorneys office. Ive written the El Dorado county District attorneys Office and have received no response
I am now looking to you For help in this situation
I am still having night mares From this vicious assault, as I see my attackers daily Walk pass my Pod window. One even serves my meals!
I need to know whats going in this case so me & the others who were attacked Know someone is Fighting For our Rights
Please ~~advise me~~ of what should happen now
Thank you sincerely Bruce Benton

ANDERSON C-7

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
# INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Richard Anderson | 126026 | 4-28-14 - Laundry Exchange | C-7 |

## BRIEF DESCRIPTION OF COMPLAINT
*Write legibly; keep all complaints to one page.*

While waiting at the front of the line for clothing Exchange Chuck Greeson was Returning from A Dr. hearing when the yard Door was open letting in inmates from Dorm 3 chuck got pod C door open when he was charged by a group of inmates coming in from yard someone yelled get the chomo And started assaulting chuck one guy from Dorm 4 whom I can ID plus others came into pod C past the Red line trying to Assault inmates in pod C during this period I was shoved in to a table by people trying to get out of the way my Right hand - thumb was injured during this time I have seen the nurse and doctor And my hand is wrapped up and in pain there is X Rays schedule for me I I believe my hand is broken as a result of the Door being opened open and the ability of G.P. to push in here to P.C. cause its on site for P.C. ... Attack - I Don't believe we are being kept safe from attacks as this is not an isolated incident and now my hand is hurt and I fear for my safety as G.P made it in this pod

Receiving Officer: CHERNIKA ID# 1322

Date: 4/30/14 Time: 2015 Grievance # 283

CHECK APPROPRIATE DISPOSITION
__ Reply Attached X Forward To Next Level ( __SGT __ADMIN)

-on forwarded to next level: ____

RECD 5-11-14

Recieved 5-11-14

C-7

**Anderson – Attachment # 2**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| Sgt. Green | 1027 | 5-01-14 | 283 |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Anderson, Richard | 126026 | 4-28-14 | C-Pod |

## OFFICER'S RESPONSE TO GRIEVANCE

Mr. Anderson:

I have received and read your grievance. You are currently housed in our protective custody housing unit. Although an unfortunate incident occurred regarding your assigned housing unit, it is our job and mission to keep all persons safe. We will continue to provide the best safety and security possible.

5-17-14

Attachment #3

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
# INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Richard Anderson | 126026 | 4-28-14 | C-7 |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

This is in Response to my Grievance #345 I am Appealing the Response As it is wrong And dosnt Resolve the issue (my Broken thumb) The nurse that Responsible to my Grievance was wrong I have An old thumb fracture (define old its not And can be proven by A Specialist) it is A new fracture on Repaired Area the nurse is wrong per DR Lee he never said mild displacement he said fracture the x-rays show it What is A mild displacement Any displacement Regarding my bones is bad I make my Living with my hands I'm in Constant pain I have hit my thumb on various Items in the pod causing further damage and delay cause its not protected My hand wasnt broke at my Intake no complaints at my physical there wasnt no complaints agast my thumb on April 28, 2014 when The attack on C-pod happen my hand was Injured When An Inmate from Dorm / Came into C-pod my hand got injured when I got shoved into A table. My hand got injured or Reinjured dont matter the incident aggravated it and that makes it this facility Responsibility to fix it This facility is Responsible for my health and safety at All times And per the law old or new the incident aggravated it and this facility needs to fix my hand per DR Lee I need An orthopedist but not upon my Release my hand needs attention now or Release me to see my DR to fix my hand

Receiving Officer: Cevo ID# 1355
Date: 5/17/14 Time: 2030 Grievance # #345A medical

CHECK APPROPRIATE DISPOSITION
__ Reply Attached X Forward To Next Level (X SGT __ ADMIN)

Reason forwarded to next level: ______

**Anderson – Attachment # 4**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| L. Isaacson | | 5/22/14 | 345A |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Anderson, Richard | 126026 | 4/28/14 | C |

**OFFICER'S RESPONSE TO GRIEVANCE**

Mr. Anderson,

Attached is a copy of your X-Ray report. It shows that you had a prior fracture that healed with mild displacement. It is not a new fracture, therefore it is a chronic problem that needs follow-up if you choose to go when you are released from custody. Again, due to it not being a new fracture it is not necessary to send you for an emergent orthopedic referral.

Lisa Isaacson, RN
Medical Manager

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Godman | 589 | 5-22-14 / 1743 |

**Attachment # 5**

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Richard Anderson | 126026 | 4-28-14 | C-7 |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

This is in Response to grievance 345 A not Acceptable please forward to next level The Results of the X-Ray plainly says there is no prior study available for comparison There is soft tissue swelling there is A fracture the incident on 4-28-14 cause this or aggravated it I've been sentence to A Johson's year here in this jail And my hand needs attention now I still have swelling and bruise And a lot of pain And violating my Rights to medical attention on my ~~hand~~ hand I can't wait A year to repair my hand

Receiving Officer: Even ID# J1363
Date: 5/23/14 Time: 1358 Grievance # 345(B) Medical

CHECK APPROPRIATE DISPOSITION
__ Reply Attached X Forward To Next Level (__SGT __ADMIN)

Reason forwarded to next level: ____________________

**Anderson – Attachment # 6**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| L. Isaacson | | 5/30/14 | 345B |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Anderson, Richard | 126026 | 5/23/14 | C |

Wrong Date

**OFFICER'S RESPONSE TO GRIEVANCE**

Mr. Anderson,

Since your last grievance another x-ray was ordered and as explained, there was no change from the prior one. Per your statement, you received a fracture on December 2013 and the current x-ray shows that you have an old mildly displaced fracture of the 5th digit. ~~Since it is not a new fracture it is therefore considered non-emergent and no referral will be made. You will continue to be treated for~~ the new soft tissue issue resulting from the incident. I am requesting that you sign a release of information in order for us to request your old records. Once received, we can review the type of injury and treatment.

Lisa Isaacson, RN
Medical Manager

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Gadman | 5891 | 5/30/14 1940hrs |

Anderson Attachment #7

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Richard Anderson | 126026 | 4-28-14 | C-7 |

6-1-14

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

In Response to my officers Response for my Greivance 345B 1st Date of Grievance is wrong 2nd which incident are u Refering to 3rd per my statement I had surgery in Dec to Repair my hand I had a bone Removed And Another put in that my DR. took off the Sheff which would explain why the brace may appear old and again Im telling you its not as I have from the beginning the Riot or Hate crime on this pod "C" pod or Attack on April 28 2014 injured or Reinjured my hand and per DR. statement he agrees with that assesment and I just want my hand fix like it was before I got here and Im tired of being in pain all day long. I do understand this facilitys point that they don't want to accept Responsibility for this injury Regardless it happen here and I Am there Responsibility now Let me point out things I have had to learn about who is Responsible you say its not A serious medical need the An eight Amendment violation as A serious medical need is meet if the failure to treat A prisoners condition could result in further significant injury or the "unnessary and wanton infliction of pain" and that leads to deliberate indifference I just want my hand fix and the pain to stop Im here till April next year. And you never sent the medical Release you requested - I want to see X-rays and reports also and I need a new ace bandage

Receiving Officer: Tivoli 1583 ID# 1583

Date: 6/1/2014 Time: 1603 Grievance # 345C Medical

CHECK APPROPRIATE DISPOSITION

__ Reply Attached X Forward To Next Level (__SGT X ADMIN) MEDICAL DR.

Reason forwarded to next level: UNRESOLVED @ PROGRAM MANAGER LEVEL.

**Anderson – Attachment # 8**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT

## DETENTION DIVISION

## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| L. Isaacson | | 6/5/14 | 345C |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Anderson, Richard | 126026 | 6/1/14 | C |

### OFFICER'S RESPONSE TO GRIEVANCE

A release of information was faxed to your provided in order to review your old medical records from your stated injury. Once received, Dr. Lee will review.

Several attempts have been made to help you understand your prior medical condition, unfortunately it does not appear that you are able to grasp the concept of old fracture versus new fracture. Attached is a copy of your second x-ray.

In regards to your new soft tissue injury, you are being treated appropriately with an ace wrap and Ibuprofen.

Please request a new ace wrap from medical by utilizing a sick-call slip.

Your medical case will be reviewed at the quarterly quality assurance meeting.

All other issues addressed in prior grievances.

Lisa Isaacson, RN
Medical Manager

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Scholtz | S432 | 6/5/14 @ 1843 |

**Anderson – Attachment # 9**

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
# INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
| --- | --- | --- | --- |
| Richard Anderson | 126026 | 4-28-14 7pm | C-? |

Tony 6-7-14

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

In Response to your Response of grievance Grievance # 345C
[illegible] 'forward' to next 'level'

I have made several attempts to help you understand my condition unfortunately you are not A specialist in this field and don't agree it

In Regard's to my neck soft tissue issue from the hate crime on 4-28-14 you say I'm being treated appropriately so why do I still have swelling, Bruising and [illegible] 37 days later and nobody wants to help me with this issue that was create in The facility on 4-28-14 This I don't understand how medical personal don't care if I went to the ER they would do since there was different guaranteed
So forward or exhaust my grievance
thank you

Receiving Officer: ______________________ ID# ________

Date: ____________ Time: ____________ Grievance # 345D Medical

CHECK APPROPRIATE DISPOSITION
__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: ______________________

Medical

**Anderson — Attachment #10**

To Writ

Vedas go To

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement; Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

Today 6-19-14

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Richard Anderson | 176026 | 4-28-14 | C-7 |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

This is in Regards to Grievance 345 D
I Responded on 6-7-14 - its now 12 days later
And no response this is for Medical. I have
Done three Request I have done everything
possible to try and get help for my hand
that was injured on 4-28-14 I still
have pain swelling and Bleeding. And I fear
my hand is getting worse and healing wrong
Why did you ask for my medical Records
if you're not going to utilize them and fix my
hand?

Receiving Officer: MERINO 874 ID# ______
Date: 6/19/14 Time: 2145 Grievance # 345 D Done

CHECK APPROPRIATE DISPOSITION
__ Reply Attached __ Forward To Next Level (__SGT __ADMIN)

Reason forwarded to next level: ______

Anderson Attachment # 11

7-3-14

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
INMATE GRIEVANCE FORM

If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.
All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Anderson Richard | 126026 | 4-28-14 | C-7 |

BRIEF DESCRIPTION OF COMPLAINT
Write legibly; keep all complaints to one page.

There is still one more grievance # 345D
that never got Return to me
I told them Again I totaly disagree with the
Response And will until my hand is fix this
Break is not old As the second x-rays dosn't
even mention that I sign Medical Release form
so they can get my Records I have nothing to
hide unlike the staff here lack of training
lack of policy lack of compassion I may be A
criminal but never once have I been proven
A liar And I can prove that also I'm still
in pain still have swelling 60 days later
they stop Answering my Grievance so I have
exhausted my Remedies At this level now I
have file A motion to force the jail to fix
my hand this is the first time in my life
I've had to go thru a jail that has no Regards
for Health or civil Rights I like inmates its A good
clean jail Guards are Respectful food good clothes very
clean But the Rights of people in P.C. don't exist
I've Paid my debt to society along time ago for my
290 crime but yet I still am paying

Receiving Officer: ______________________ ID# ________

Date: __________ Time: __________ Grievance # ______________

CHECK APPROPRIATE DISPOSITION
__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: ______________________________________

**Anderson – Attachment #12**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| L. Isaacson | | 7/29/14 | 345 D or E |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Anderson, Richard | 126026 | 4/28/14 | C |

### OFFICER'S RESPONSE TO GRIEVANCE

The medical file was scanned to Dr. Fithian for review. The recommendation was to attempt to make a follow-up appointment with Dr. Linn. An attempt was made and he recommended that you see a local Orthopedist rather than return to his office. At this time I have faxed a referral recommendation to Marshall Orthopedics. Once you are accepted a referral will be made. At this time you will not be sent out for an eye glass referral. We are still waiting for all of your records from San Quentin. I will again fax a request for records to San Quentin. Dentures will not be provided at this time. A soft diet will continue to be provided.

Lisa Isaacson, RN
Medical Manager

LISA > nurse
Michelle > nurse
LEE - DR
Ford - officer always listening I'm giving advice to medical staff he don't belong there listening in
not a medical professional

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| [illegible] | S1198 | 8-2-14 , 1040 |

to put in Request for copy of my medical file - today. good luck with that
why so long to responde & deliver it
and why addressing all those issues that
didn't pertain to Grievance 345 original
Dentures - I guess I need to lose more weight
eye glasses - waiting on Quentin, Ain't going to happen CDC Ain't going to pay [illegible]
Received it from officer Hart on 8-6-14 at 8:00 pm
(not 35 [illegible]) witness by Benson
[illegible] Wheeler [illegible] The other [illegible] Drake, Crawford

**Anderson Attachment #13**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

[illegible] 8-7-14

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Anderson Richard | 126026 | 4-28-14 | C-4 |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

Lisa Isaacson [illegible] Medical Manager "I received back
Grievance 345 Dor E [illegible] 7/25-14. This grievance
will be 345 F. This is all that you ask [illegible]
the [illegible] after 7/25 [illegible] in [illegible] hopefully
this will be dealt with [illegible] soon "It states" on the
top of the grievance only one complaint [illegible]
Grievance and grievance 345 deals with the
Rod on 4/8/14 and my hand being broken
[illegible] the hate crime [illegible] - the [illegible]
[illegible] and still did not [illegible]
[illegible] please [illegible] this grievance
or [illegible] to someone higher [illegible]
[illegible] this grievance

So please [illegible] from
4-28-14 [illegible] give it to someone
who can [illegible]

Thank you

Receiving Officer: CHERINKA ID# 1322

Date: 8/7/14 Time: 2000 Grievance # 345 [illegible]

CHECK APPROPRIATE DISPOSITION

__ Reply Attached X Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: APPEAL TO MEDICAL

**Anderson – Attachment # 14**

Ilm

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| M. Bianchi | | 6/19/14 | 416 |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Anderson, Richard | 126026 | 6/11/14 | C |

**OFFICER'S RESPONSE TO GRIEVANCE**

Mr. Anderson,

At this time dentures will not be provided, your soft diet will be continued. Please put in a sick call slip if you would like to see the dentist. You may request to be transported to an outside dentist, but all costs incurred will be your responsibility. You are correct, an eye exam was performed and your vision is Rt 20/80 LT 20/50. A request for medical records has been faxed to San Quinton, none have been received. Once we have received and reviewed the records a determination will be made in regards to providing glasses. At this time you do not meet the criteria for emergent glasses.

Michelle Bianchi, RN
Charge Nurse

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Schultz | S432 | 6/20/14 @ 1932 |

Medical

**Anderson – Attachment # 15** 15 days 6-20-14

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
| --- | --- | --- | --- |
| Anderson Richard | 126026 | 6-11-14 | C-7 |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

In Response to Nurse Michelle Bianchi Response to my Grievance 416 please forward it to Nurse Lisa Erickson what if San Quentin does not send my records, what is the criteria for emergent classes falling down or walking into something And the chart in the exam room is that the right chart for a test or the one in the hallway the right one please forward to the next Level

Receiving Officer: Segarra ID# 1486

Date: 6-20-14 Time: 2145 Grievance # 416 A - Medical

CHECK APPROPRIATE DISPOSITION
__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: MEDICAL

**Anderson – Attachment # 16**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| L. Isaacson | | 6/26/14 | 416A |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Anderson, Richard | 126026 | 6/20/14 | C |

**OFFICER'S RESPONSE TO GRIEVANCE**

Mr. Anderson,

If records are not received, Dr. Lee will make the determination if orders are written to send you out for a new eye exam. With the noted visual acuity exam results, at no time should you have difficulty walking or avoiding objects. The medical staff can use either chart to determine a patients visual acuity.

Lisa Isaacson, RN
Medical Manager

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt-Scholtz | S437 | 6/27/14 @ 1804 |

**Anderson – Attachment # 17**

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
## INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Richard Anderson | 126026 | 6-13-14 548pm | C-7 |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

On 6-12-14 Thursday - in C-Pod our main pod door was broke on and has not worked properly sense then the door would lock on numerous occasions on 6-13-14 at 548pm Tim Rogers was returning from clothing exchange when the door was poped open and would not lock until a C.O. came 5 minute later to spray silicone or white grease not sure exactly what spray was fortunately no other inmates from the G.P. Pods were out at the time and no harm phisicaly happen to inmates it did bring back flash backs off the 4-28-14 attack on C-Pod - Please fix the door so that don't happen again it may not seem serious to some but our safety is at issue

Receiving Officer: Whitlock ID# 11526

Date: 6/13/14 Time: 2030 Grievance # 427

CHECK APPROPRIATE DISPOSITION

__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: ______________________

***Anderson – Attachment # 18***

C-7

# EL DORADO COUNTY SHERIFF'S DEPARTMENT

## CUSTODY DIVISION

## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| Whitlock J | J1526 | 6/13/2014 | 427 |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Anderson, Richard | 126026 | 6/13/2014 | C-POD |

### OFFICER'S RESPONSE TO GRIEVANCE

I have received your grievance concerning the main entrance door to C-POD. I researched the maintenance log and found an entry logging the same problem you are describing. The log was entered on 6/13/2014 at 0925 hrs. and work was completed on C-POD door on the same date. During my shift both Officer Day and I completed a door pull test each time we exited C-POD and have not had any problems with the door not securing. I have informed the Shift Sgt. and In the future please report that your door did not secure immediately upon noticing it.

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Armstrong CA | 103 | 6/13/14 2330 hrs. |

**Anderson – Attachment # 19**

mailed at 6:12 pm

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Anderson Richard | 126026 | 6-13-14 558pm | C-7 |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

This is in Responce to the officers Response to grievance 427 Once Again let me explain the situation to help you understand what happen on 6-13-14 Around 8Am officer Anderson & Bradly work on our main Pod door in C-Pod For About ten minutes hitting the lock with Flash lights And Sticking things in the hole to Release the locking mechanism nobody From Maintence ever work on this door on 6-13-6-14 Later on At exactly 558Pm Tim Rodgers was coming back from getting his issue of clothe he miss clothing exchange Control Dan open the door he came threw And the door didnt lock central call Joshua Kuntz over to open And close the door to no avail the door was left unlock 5 minutes and who ever was in the central Booth knew of this problem it was 5 minute before officer Mitchell show up with a can of spray lubricant And After numerous tries and several more minutes he got the lock working again so Another tragedy like the attack on 4-28-14 on C-Pod didnt happen But you could tell what people were thinking in here causing more fear nitemares PTSD ALL BAD And Avoidable problems please Fix the door And Return my Grievance to me

please forward to next Level

Receiving Officer: Beck ID# J1533

Date: 6-15-14 Time: 1935 Grievance # 427A

CHECK APPROPRIATE DISPOSITION

__ Reply Attached __ Forward To Next Level ( __SGT X ADMIN)

Reason forwarded to next level: ____________________

**Anderson Attachment # 20**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## CUSTODY DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| Sgt. Godman | 3S891 | 6/30/14 | 427(A) |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Anderson, Richard | 126026 | 6/30/14 | C-pod |

**OFFICER'S RESPONSE TO GRIEVANCE**

Inmate Anderson, I have reviewed your grievance:

At the discretion of the Jail Commander, I have been assigned to review this grievance pertaining to the main housing unit door to C-pod.

On 6/30/14, I spoke with you in regards to this incident and asked you how we could resolve this. You stated that at this time you feel safe in C-pod and that the C-pod door is working and functioning properly. You also stated that this grievance was old and no longer a concern you have. The grievance is considered resolved at this time.

The jail staff have a responsibility to ensure the safety and security of all inmates, if at any time you do not feel safe please advise jail staff via inmate request slip or your cell intercom system.

Thank You,

Sgt. Godman

I WAS told to stop filing paperwork on each
up in the hole on tahoe I told him my
main concern WAS to ensure no Repeats
of 4-28 Showed him my hand and he said
your out of here July 5, 2014 which
is not the case at all and he admitted this
to be true And SAID tell all to stop filing

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Godman | 3S891 | 6/30/14 ~~200hrs~~ 2100 |

Bullshit Grievances

**Anderson Attachment # 21**

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Richard Anderson | 126026 | 6-22-14 | C-7 |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

I put in A Request to get Anger managment Hearts class or pre Release And the Response is Always the Same Due to classification I can not Attend I Know for A fact this is wrong There is two Sides of Sky And we have people in here with certificates From hearts class pre Release I know for A fact would be willing to come in our And And do this class Ask him yourself I have been sentence And I'm trying to better my self so I do recommitt I'm going for my high school Diploma go to church and trying to remain positive not just for me but for a example to others in here we need All the [illegible] we can get to succeed out there

Receiving Officer: Whitlock ID# 1526
Date: 6/24/14 Time: 2130 Grievance # 485

CHECK APPROPRIATE DISPOSITION
__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: ______

**Anderson - Attachment # 22**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## CUSTODY DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| Sgt. Koontz | S225 | 06/26/2014 | 485 |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Anderson, Richard | 126026 | 06/24/2014 | C-Pod |

**<u>OFFICER'S RESPONSE TO GRIEVANCE</u>**

Inmate Anderson, I have read your complainer guarding programs.

You are classified "Protective Custody". This means that we must house you in a manner that protects you from others that would harm you if they had the chance. Anger Management and HEARTS classes are contracted classes. These classes are held in the "Program" housing units (Dorm-3/G-pod) and the classroom. You must be housed in one of these housing units to attend HEARTS, and you must be classified Medium security to attend Anger Management.

There is no way we can send inmates that are designated Protective Custody, Administrative Segregation or Maximum Security into this type of setting without risking the safety of the inmate(s) and jeopardizing the security of the facility.

For the safety and security of all, your grievance is denied.

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Koontz | S225 | 06/26/2014 0500 |

**Anderson - Attachment #23**

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Anderson Richard | 176026 | 6/26/14 | C-7 |

BRIEF DESCRIPTION OF COMPLAINT
*Write legibly; keep all complaints to one page.*

this is in Response to Grievance 485 Sgt Koontz Denied my Grievance without Answering the grievance in its entirety Answer about the Hearts program And the Anger Management But did not Reply about the Relapse program which can be done in the pod and the person that does it is willing to do it in here so I disagree with the Sgt finding and want this forwarded to the next level thanks

C-pod is a program pod with somebody in here with a hearts certificate

Receiving Officer: HALE ID# 1259
Date: 6-26-14 Time: 1930 Grievance # 485(A)

CHECK APPROPRIATE DISPOSITION
__ Reply Attached __ Forward To Next Level ( __SGT X ADMIN) Lt.

Reason forwarded to next level: ____

**Anderson – Attachment # 24**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## CUSTODY DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| Sgt. Godman | 3S891 | 6/30/14 | 485(A) |
| Inmate Name | Master ID# | Date of Grievance | Housing Unit |
| Anderson, Richard | 126026 | 6/29/14 | C-pod |

**OFFICER'S RESPONSE TO GRIEVANCE**

Inmate Anderson, I have reviewed your grievance:

At the discretion of the Jail Commander, I have been assigned to review this grievance pertaining to allowing protective custody inmates the opportunity to attend different programs.

On 6/30/14, I spoke with you in regards to this grievance. At this time we are not providing this service to your housing unit, however I will speak to the Inmate Services Officer to see if this is feasible. Any program that can be provided in a safe and secure manner should be offered to as many inmates as possible, although due to classification issues it is not always available to some. This will need to be discussed with Classification, Inmate Services and the Jail Commander to ensure that we are providing a safe and secure environment not only for inmates but the instructors for different programs.

Thank You,

Sgt. Godman

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Godman | 3S891 | 6/30/14 2115hrs |

**Anderson – Attachment # 25**

C-13

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## CUSTODY DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| Sgt. Green | 126026 | 7/19/14 | 503 |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Anderson, Richard | 126026 | 6/29/14 | C-Pod |

**OFFICER'S RESPONSE TO GRIEVANCE**

Mr. Anderson:

I have received and read your grievance. As we discussed, there are many factors that determines how and where we house various classifications of inmates. I appreciate ability of the inmates in your housing unit to "program". However, we have policies and procedures as well as laws to follow with respect to inmate classification and housing.

Although the inmate you mentioned in your grievance (Inmate Snow) is no longer in custody, we will continue to monitor and review our rotation procedures for your housing unit.

In regards to the inmate movement within your unit, I will be monitoring the movement to ensure it is being conducted according to our policy and as safely as possible.

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Green | 1027 | 7-19-14 1745hrs. |

**Anderson Attachment # 26 pg 1 of 2**

Page 1

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE FORM

COPY

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Anderson Richard | 126076 | 4-28-14 till present | C-1 |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

And still another grievance against the medical staff at El Dorado Co. Jail. DR LEE on 8-14-14 put a half cast on my hand to protect my thumb from being further reinjuried, on 8-17 the cast reinjuried my hand. I heard the bone snap, like cracking a knuckle, it did this 2 times. My thumb swell up, as did my hand and I have developed a rash from the cast being done incorrectly. DR LEE put the cast sock on my hand and arm; didn't put any guaze or cotton between the sock and cast he molded the cast and the cast is pressing down on the bone sticking up that's broken and suppose to be protected now it sticks up more the cast floats on my arm so it moves over the broken bone with only the sock as a cushion between the cast and my hand I was seen by nurse Issacson on the 8-19-14 she ask me how I reinjuried my hand I told her the bunks and the cast being made wrong she peeled the Ace bandage off revealing a swollen brusied thumb area. I'm sure its not reported but I have plenty of witnesses to this. She put 4 pcs of 3" square gauze (she called it a Frame) on the area the cast was reinjuring the thumb. and said DR. LEE may need to put a full cast on and said she put me on to see DR LEE. yesterday - 8-20-14 I told pill call nurse about my hand she said she let them know

Receiving Officer: Beck　　ID# J1533

Date: 8-21-14　　Time: 2035　　Grievance # 629

CHECK APPROPRIATE DISPOSITION

__ Reply Attached　__ Forward To Next Level (__SGT　__ADMIN)

Reason forwarded to next level: ____________________

page 2

**Anderson - Attachment # 26 pg 2 of 2**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Anderson Richard | R6026 | 4-28-14 - till present | C-1 |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

today 8-21-14 at pill call I ask the nurse if she said Anything she said she did tell them about my hand and was told they are not going to do Anything about it Right now even though it hurt swoller and Reinjuried, But once sense Ive told them its been Reinjuried have they look at it X-Ray or Anything other than putting a half cast on it to protect it From further injury. Well that didn't work out, so to Avoid the issue, they Refuse to do Anything about it. I need X-Rays! I need a specialist! And no such thing as nothing can be done about it. it needs X-Ray And fixed - and a different cast that dosn't move like half cast

A "serious" medical need exists if the failure to treat a prisoners condition could result in further significant injury or the "unnecessary and wanton infliction of pain (Estelle") thus the "existence of An injury that a Reasonable doctor or patient would find important and worthy of comment or treatment: the presence of a medical condition that significantly affects an individual daily activities; or the existence of chronic and substantial pain Are indications of prisoner has a "serious need for medical treatment" "established the governments obligation to provide medical care for those whom it is punishing by incarceration" - Eighth Amendment

Receiving Officer: Beck ID# J1533

Date: ____________ Time: ____________ Grievance # 629

**CHECK APPROPRIATE DISPOSITION**

__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: ____________________________________________

________________________________________________________________________

**Anderson – Attachment # 27**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| L. Isaacson | | 8/27/14 | 629 |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Anderson, Richard | 126026 | | C |

**OFFICER'S RESPONSE TO GRIEVANCE**

Mr. Anderson,

I apologize that the prior splint was uncomfortable due to padding and angle. Several attempts were made since the application to provide extra padding and you were placed on Dr. Lee's sick call list in order to have another splint applied. On August 26th Dr. Lee evaluated the current splint and a decision was made to apply a new one. Upon examination, no re-injury signs or symptoms were noted. I as well discussed the option of providing you with a hard plastic splint, again, you refused this option. Please let medical know if the current splint is not providing you with enough comfort and stability. As always the medical department has no issues changing the splint in order for you to be comfortable and feel that your thumb is being protected from re-injury. Please let me know if I can assist you any further.

Lisa Isaacson, RN
Medical Manager

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Godman | 5891 | 8-27-14 2000 hrs. |

**Attachment # 28**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

Todays 8-28-14

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Anderson Richard | R6026 | 8-17-14 | C-1 |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

In the officers Response to Grievance 629 From Nurse Isaacson as I tried to explain the issue is the fact that my thumb is still not fixed or been X-Ray on a Real X-Ray Machine that gives better Clarity to my fracture. I know you say its an old fracture we know its not old just looks that way cause the fracture is where the graft didn't take. As DR. LEE stated way back the graft took fine until 4-28-14 when the incident in C-Pod cause my hand to get shoved into a table causing the injury or Reinjuring it im not a doctor or specialist just a average layman who knows my hand not Right in pain and healing wrong when its not being Reinjured. DR. LEE never examined my thumb for it being Reinjured or discussed it with me the last exam was only about the splint needing to be Remove! In the numerous times my hand been Reinjured its never been Rexamine or x Ray to determine if its damage or healing right. I will maintain my right to medical treatment as Dr. Lin Recommend a local specialist along with the medical staff here (DR LEE Recommended A Referral also. I need x rays and a hand specialist or exhaust my remendies! please forward to next level!

Reference Grievance 629

Receiving Officer: C. Arwwood ID# J138

Date: 8-28-14 Time: 0038 Grievance # 629 A

CHECK APPROPRIATE DISPOSITION
__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: ______

Anderson – Attachment # 29

# EL DORADO COUNTY SHERIFF'S DEPARTMENT

## DETENTION DIVISION

## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| L. Isaacson | | 9/5/14 | 629A |
| Inmate Name | Master ID# | Date of Grievance | Housing Unit |
| Anderson, Richard | 126026 | 8/17/14 | C |

**OFFICER'S RESPONSE TO GRIEVANCE**

Mr. Anderson,

You have been to the medical department many times and Dr. Lee has attempted to explain your x-ray findings and discuss the options for treatment. Unfortunately you are having a difficult time understanding the medical diagnosis of a chronic fracture. Yes, the x-ray machine that is being utilized is a real machine and no, a better one is not necessary. Dr. Lee did see you and he did examine your thumb while he was placing another splint. At that time he felt there was no need for a 4th x-ray of your thumb. You are correct, Dr. Linn requested not to see you at that time and he did make a recommendation for you to see a local Orthopedist. Your chart was faxed to Dr. Boody to review and he made the determination that there was nothing he could do for your thumb. At this time I am making another request to Dr. Linn to schedule an appointment to discuss your current diagnosis and possible treatment plan. Once I ~~have received an answer I will inform you of the plan.~~

Lisa Isaacson, RN
Medical Manager

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| GREEN | 1027 | 9-10-14 1718 |

**Anderson Attachment # 30**

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Anderson Richard | 126026 | 10-24-14 | C-1 |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

Today medical dept started A super soft Diet that I didn't Ask for these meals Are degrading And gross I Am not A baby that need his food in A blender I need dentures I don't eat Blended veg or mashed veg or blended Anything I don't eat yogurt or cottage cheese I didn't Ask for food I would not touch on the streets I Ask for dentures Any food that is blended will not be eaten. this is just Another form of degrading punishment for asking for teeth I need dentures I'm here till April 2015 And I'm not eating baby food And cant chew half cook Beans or other undercook food if your not going to supply denture for me peanut butter And Bread will work

Receiving Officer: EDWARDS ID# J247
Date: 10/24/14 Time: 2125 Grievance # 782 - Medical

CHECK APPROPRIATE DISPOSITION
__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: ____

**Anderson – Attachment # 31**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| L. Isaacson | | 10/31/14 | 782 |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Anderson, Richard | 126026 | 10/24/14 | C |

**OFFICER'S RESPONSE TO GRIEVANCE**

Mr. Anderson,

I appreciate you bringing the dietary items that are on your tray to our attention. I am assuming that it is not the kitchens intention to provide you with food items that you would not touch on the streets. After review of your chart it is noted that a soft diet was requested in April due to you not being able to chew food properly. I do not see that it was changed since that time. I will refer the grievance to custody and the kitchen for review. At this time dentures will not be provided.

Lisa Isaacson, RN
Medical Manager

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Goodman | 589 | 10/31/14 1715 hrs |

 1 of 2

To Capt Peshon 8-10-14
From Richard Anderson
Subject Appeal to Grievance 345 F

Sir today at Evening pill call the nurse brought me my medical Records from my doctors - the ones the medical Dept were waiting four. They didn't believe me about my hand injury and me telling them it was a new facture - my Records show it was a new bone Replace in my hand not a old Broken Bone. the old bone they took out was in three firm portions - chronic fracture of the proximal first metacarpal as noted on 1-11-14 - I visit Dr Lins office and he put a cast on my hand - the cast was on for 6- to 8 weeks then Removed that would be around the begging of March 2014 My P.O. can also verify all of this she was very concerned cause I had a civil trial starting March 17, 2014 that I had to be avaible for every day it was 28 day long before it was settle or just a few days before I got here on the 7 of April I can prove all of this if needed I didn't come to jail with a broken thumb I got injured on 4-28-14 when that hate crime happen against C-pod. I'm just a witness - victim

to All of this but have been treated like I was involved and nobody has no Regards for my hand - Medical Dept has had my Records since July 14 it dont take this long to get Relief I seek for my hand its not protected in pain and not healing correctly. I only wanted my hand fix and was told by DR. LEE to deal with it when I get out in April 2015 I've been told there was an Attempt made a getting an appointment for a Referral and once Accepted A referral will be made that sound Real funny - except its my hand and health that nobody cares about and as I've Asked for a long time please exhaust my Remedies - so I can go to the next level

Thank you Capt Peshon Sir. For your Time and consideration in this matter I await your decision

Inmate Richard Anderson
126026

please Return a copy of this for my Records thank you

***Anderson – Attachment # 33***

# EL DORADO COUNTY SHERIFF'S OFFICE
## SHERIFF JOHN D'AGOSTINI

C-1

**MEMORANDUM**

TO: Inmate Anderson C-4

FROM: Capt. Peshon

SUBJECT: Appeal to Grievance 345 F

DATE: August 8, 2014

---

I received your grievance today and have reviewed it. In this case I am unable to proceed with my review because I am unclear as to what you are appealing. I understand this grievance to be about a possible bone fracture and your desire to have it treated. It appears from the documentation that there has been a request made to Marshall Orthopedics. If you could provide me what you are appealing and why, I will be able to respond with a decision.

Capt. R. Peshon

Custody Division Commander

To Capt Peshon.

From Inmate Anderson - C-1

Subject Appeal to Grievance 345 F

DATE Aug 9, 2014

I have recieved your Reply to my grievance. Capt. Sir I will try to help you understand what I am appealing and why so please Bear with me I'm not the smartest tool in the shed and this may take a minute to get it rite.

On 4-28-14 the melee - we call it a Riot - happen Agaisnt Inmate Greeson and C-pod. I was standing in line waiting for laundry exchange when this melee started as Inmate Greeson or Gleeson not sure on spelling - was Returning from a DP Hearing he got attacked in front of C-pod from the doors being open incorrectly 3 doors were open at one time including C-pod door - how or who I don't know - Inmate Benson was there getting hit in the face as a GP was being pushed back out of C-pod when this was all happening, fast and furious

I was shoved in the table by the p dones injuring my hand At no time did I hit Any body OR involved in the Riot Im A witness - victim to this hate crime And since 4-28-14 have been trying to get the medical staff here to fix my hand two X-Rays show its broken but they wanted to wait for my medical Records cause they think its And old injury

I've been trying to get them to understand it not old And my doctor here confirmed this. Either way Ive been in pain since then Ive Reinjured it put in numerous Request telling them this.

345C to no Avail Done all kinds of grievance And they tell me I stupid And dont grasp my injuries - I want something that states Ive exhausted my remedies So I can file A lawsuit for deliberat indifference to my medical needs

Grievance Dated 4-28-14 #345 DOKE And Responded on 7-29-14 3months later Nurse Isaacson faxed A Referral to Marshall ORthopedics on OR About 7-29-14 it now 8-9-14 And still waiting to get some Relief Sir. On July 24 I spoke with Lt Noren & Sgt Kent they got me down Back on Linen line

to stop the Reinjuring of my hand
From use of climbing to top bunk
with Broken hand IT NoREEN Stated
her concern for my hand injury
And Asked me then if medical has
done Any thing for it they have seen me
I Ask them if I could get some thing
to protect my hand From further
injury nurse said like what And then
said she would check with doctor I told
her I Reinjured it she said no need to
see doctor As I Am being sent out to
ortho for Appointment. that was 16 days
Ago Sir And still nothing it over 100 days
now with A broken hand that dosn't seem
Right to be And I think my Rights have
been violated And that why I Am
Appealing Grievance 345 F
I await your decision Sir and
thank you for your time & consideration
I hope this helps you understand my
situation Sir.

Thank you
Inmate Anderson

May I please have A copy of this
letter Return to me

**Anderson – Attachment # 35**

# EL DORADO COUNTY SHERIFF'S OFFICE
## SHERIFF JOHN D'AGOSTINI

### MEMORANDUM

TO: Inmate Anderson C-1

FROM: Capt. Peshon

SUBJECT: Appeal to Grievance 345 F

DATE: August 11, 2014

---

I received your explanation today and have reviewed it. I have also met with the CFMG Program Manager Lisa Isaacson. Your case has been reviewed by four Doctors. Doctors Lee and Dr. Fithian with CFMG, Your previous Doctor, Dr. Lin who stated he did not believe he could do anything more and Dr. Boody with Marshall Orthopedics. All of the Doctors believe there is nothing else they can medically do for your condition. Ms. Isaacson told me she would consult with Dr. Lee to see if there is anything else that can be done to make you more comfortable.

Capt. R. Peshon

Custody Division Commander

**Anderson – Attachment # 36**

Normal Xray.

2nd Request

# EL DORADO COUNTY JAIL
## INMATE SICK CALL REQUEST SLIP

INMATE'S NAME Richard Anderson HOUSING UNIT C-7

PROBLEM / REASON FOR REQUEST:

Im still waiting to see my Results of my X-Rays on my thumb and Im still in pain and have swelling

INMATE'S SIGNATURE Richard Anderson DATE 5-11-14

By signing this form, you understand that $3.00 may be removed from your inmate commissary account for services provided by medical. Medical staff will decide at the time the services are provided if you will be charged or not.

INMATE CHARGED FOR MEDICAL SERVICES: YES ☐ NO ☐

DATE SEEN BY MEDICAL ____________ MEDICAL STAFF SIGNATURE ____________

Methodist Hospital of Sacramento
A Dignity Health Member

**Dictated Report**

PATIENT: ANDERSON, RICHARD
MED.REC.: 09015710
ACCT #: 422299719
PHYSICIAN: JAMES LIN, M.D.

**OPERATIVE REPORT**

**DATE OF OPERATION:**

**PREOPERATIVE DIAGNOSIS:** Right thumb metacarpal malunion.

**POSTOPERATIVE DIAGNOSIS:** Right thumb metacarpal malunion with partial extension to the 1st carpometacarpal joint.

**OPERATION:** Right thumb metacarpal osteotomy and open reduction internal fixation using 2 K-wires, 0.045.

**SURGEON:** James Lin, M.D.
**ASSISTANT:**
**ANESTHESIOLOGIST:** Martin Straznicky, MD
**ANESTHESIA:** General anesthesia.

**INDICATIONS / FINDINGS:** The patient is a 49-year-old gentleman who had a right thumb metacarpal fracture on August 12, 2013, when he fell off a bike. He only had a splint and did not follow up because of no insurance status. Her because he now has insurance. Risks, benefits, and complications of surgery were explained. Questions asked by patient. Patient agreed to surgery.

**DESCRIPTION OF PROCEDURE:** Patient was brought into the operating room, was laid supine. The right hand was prepped and draped sterilely in the usual manner. Esmarch applied. Tourniquet turned up to 250 mmHg. Fluoroscopy was used to identify the area of irregularity. He had a metacarpal that had shifted more radially and there was significant bone growth on the ulnar aspect. The 1st CMC joint appeared to be partially involved.

A longitudinal incision of approximately 5 cm was made over the base of the metacarpal and the 1st metacarpal. Sharp and blunt dissection was then performed. The area between the extensor pollicis longus and brevis was entered using a #15 blade and periosteum was lifted. The fracture was not easily identified, but an area of softness was identified and osteotomy was then used to break through this fracture site. Part of the 1st CMC joint at the lateral portion of this was removed. The decision was made not to open the whole 1st CMC joint

Methodist Hospital of Sacramento
A Dignity Health Member

**Dictated Report**

PATIENT: ANDERSON, RICHARD
MED.REC.: 09015710
ACCT #: 422299719
PHYSICIAN: JAMES LIN, M.D.

**OPERATIVE REPORT**

because this would destabilize the area and it appeared that there was still a part of the 1st metacarpal with the joint surface that was in alignment with the trapezium. The decision was made to put the distal portion metacarpal osteotomy site to the surface. The 1st metacarpal that was split was pushed more ulnarly and was stabilized with a 0.045 K-wire x2. The osteotomy site was identified and it was stapled.

The area was then irrigated with saline solution. Periosteum was closed using 4-0 Vicryl stitch. Skin was closed using 4-0 nylon interrupted mattress stitch. 0.25% Marcaine was injected. Bacitracin and Xeroform were applied. K-wire was cut and a cap was applied and was covered with alcohol soaked in Betadine. 4 x 4, Kling, and volar splint was applied. The patient tolerated the procedure well.

**ESTIMATED BLOOD LOSS:** Minimum.

**SPECIMENS SENT:** Debrided bone of 1st metacarpal.

**Preliminary Report - if not signed by author**

JAMES LIN, M.D.

JL:MedQ/592302063

D: 12/18/2013 T: 12/18/2013 #:153220

Copy For: James Lin, M.D.

RADIOLOGICAL ASSOCIATES
OF SACRAMENTO MEDICAL GROUP, INC.

SOUTH IMAGING CENTER
8118 TIMBERLAKE WAY 110
SACRAMENTO, CA 95823
(916) 681-8852

JAMES LIN MD
8021 LAGUNA BLVD #3
ELK GROVE, CA 95758-0000

***Final Report***

PATIENT: ANDERSON, RICHARD
DOB: 04/27/1954
REFERRED BY: LIN, JAMES
EXAMINATION DATE: 11/22/2013

REASON FOR EXAM: PAIN HAND JOINT

EXAMINATION: RIGHT HAND, COMPLETE (3+VW) - (SDX/0076)

HISTORY: Preop.

FINDINGS: Three views of the right hand are obtained. Chronic fracture of the proximal first metacarpal is noted. The alignment demonstrates substantial displacement of fracture fragments. The fracture extends into the CMC joint.

The remainder of the examination is unremarkable. No destructive or sclerotic bony lesions.

IMPRESSION:

Chronic fracture involving the proximal right first metacarpal with intraarticular extension. The fracture fragments are displaced.

UT: (p) RC: (n)

11-25-13

DIGITAL SIGNATURE: CALVIN WANG MD DATE/TIME: Nov 22 2013 5:13P
TRANS BY: LMB1
File #: 000001458167
Accession #: 10894562
cc:

**Anderson - Attachment # 39 pg 1 of 2**



*This document came from the MobileMD Health Information Exchange (HIE)*

**Sending Facility Information**

**Name:** Methodist Hospital
**Address:** 7500 Hospital Drive
Sacramento, CA 95823
**Phone:** (916) 423-3000

**Patient Information**

**Name:** ANDERSON, RICHARD E
**DOB:** 04/27/1964
**Sex:** M
**SSN:** XXX-XX-3698
**Phone:** (916)544-4117
**MRN:** 009015710

---

**Document: Surgical Pathology Report** **Status: F**

**Observation Date Time:** 12/18/2013 11:32:00
**Dictating Physician:** SUNG, ELLEN
**Ordering Physician:** LIN, JAMES T
**CC Physician:**

Performed At: Mercy General Hospital 4401 J. St, Sacramento CA 95819
Kai Ni, MD, Director

Surgical Pathology Report

| Collected Date/Time | Received Date/Time | Accession Number |
|---|---|---|
| 12/18/2013 11:32:00 PST | 12/18/2013 12:39:00 PST | 15-SP-13-005590 |

Clinical Information

Pre-op diagnosis: RIGHT FIRST METACARPAL MALUNION AND PAIN
Procedure: RIGHT FIRST METACARPAL OSTEOTOMY AND ORIF
Post-op diagnosis: SEE CERNER
Clinical History: SEE CERNER

Specimen Submitted

FIRST METACARPAL BONE

Gross Description

Received in formalin labeled with the patient's name and "1st metatarsal bone right" are three firm portions of bone ranging from 0.3 x 0.3 x 0.2 cm to 1.2 x 1.0 x 0.4 cm. There is a single elongated portion of soft tissue measuring 2.0 x 0.2 x 0.1 cm. The tissue is grossly unremarkable. The larger segment of bone is sectioned. The cut surfaces are trabeculated with no softened areas are masses appreciated. The specimen is entirely submitted in cassette A1 following decalcification.
BS 12/18/2013

JUL 14 2014
ML G83231
DEA BL4806052

Diagnosis

BONE, 1ST METACARPAL, OSTEOTOMY AND ORIF:
- REACTIVE CARTILAGE OVERLYING BONE WITH MARROW FIBROSIS AND INCREASED LYMPHOCYTES AS WELL AS RARE PLASMA CELL IN SLIGHTLY FIBROTIC MARROW SUGGESTIVE OF CHRONIC OSTEOMYELITIS (SEE COMMENT).

1.2.14

COMMENT: In the context of malunion, it is difficult to determine the

significance of the focally increased lymphocytes and rare plasma cells. While bony scalloping is minimal and there is only rare focal osteoclastic activity associated with bony scalloping, the few lymphocytes and plasma cells are suspicious for or suggestive of low grade chronic osteomyelitis. Clinical correlation with any other data bearing on the question of possible chronic osteomyelitis recommended.

Ellen Sung, MD
(Electronically signed)
Verified: 12/20/2013 19:52
ES /ES

ANDERSON, RICHARD E 09015710(M)

**Rendering Provider: Lin, James MD** **Phone: (916)525-1559**
**Practice: James T. Lin, MD**
**Address: 8021 Laguna Blvd Suite 3, ELK GROVE, CA95758** **Phone: (916)525-1559**

**Visit Date: Monday, January 06, 2014**

**Patient: Anderson, Richard**
**623 Pringle Ave, Herald, CA95638**
**Medical Record #:** **DOB: April 27, 1964** **Sex: Male**
**home: (916)544-4117**
**Status: Complete.**
**Visit Last Saved: 01/11/2014 09:56 AM.**

---

**CC / HPI:**
No ride to return for follow-up. Went to ER to have pins removed. They were coming out.

PE: s/p right first MC osteotomy and ORIF on 12/18/13. Pin exit sites slightly grungy.

**Dx:**

(736.00) - C - DEFORMITY OF HAND/FINGER/FOREARM, ACQUIRED

**Services Performed:**

(99024) POSTOP FOLLOW-UP VISIT
(Q4010) CAST SPL SHRT ARM CAST ADLT FIBRGLS

**Plan:**
A return visit is indicated in 2 weeks .

**Plan Note:**
Keflex. Fiberglass spica cast.

---

James Lin

**Anderson – Attachment # 41**



**Rendering Provider: Lin, James MD Phone: (916)525-1559**
**Practice: James T. Lin, MD**
**Address: 8021 Laguna Blvd Suite 3, ELK GROVE, CA95758 Phone: (916)525-1559**

**Visit Date: Monday, November 18, 2013**

**Patient: Anderson, Richard**
**623 Pringle Ave, Herald, CA95638**
**Medical Record #: DOB: April 27, 1964 Sex: Male**
**home: (916)544-4117**
**Status: Complete.**
**Visit Last Saved: 11/18/2013 09:38 PM.**

---

**CC / HPI:**

right thumb metacarpal malunion and pain.

49 years old right thumb metacarpal fracture on 8/12/13 when he fell off a bike. He did not have insurance back then. He used to work as a mechanic. He now complains of pain at fracture site. He has a history of crack and methamphetamine.

**Review of History**

I reviewed the medical, surgical, social, medication and drug allergy histories.

**ROS:**

Psychiatric: The patient denied anxiety, depression and insomnia.
Hematologic/Lymphatic: The patient denied anemia and history of transfusion.
Gastrointestinal: The patient denied heartburn, hiatal hernia and peptic ulcer.
Endocrine: The patient complained of cirrhosis/hepatitis (C) but denied diabetes and thyroid disease.
Constitutional: The patient denied weight gain, weight loss, asthma, bronchitis, bleeding history, emphasema, difficulty sleeping, fatigue, hypercholesterolemia, personal cancer history and weakness.
Cardiovascular: The patient complained of hypertension but denied chest pain, cold extremity, history of MI/CHF, pacemaker, palpitations, stroke and syncope.

**Vital Signs:**

data collected on 11/18/2013 09:37:59 PM by James Lin
weight is 150 pounds .
height is 5 feet 10 inches
body mass index is 21.52 Kg/m2

**PE:** right thumb metacarpal with surface anatomy contour change with tenderness.

**Dx:**

Rigth first metacarpal malunion and pain.

(719.44) - C - PAIN, HAND
(736.00) - C - DEFORMITY OF HAND/FINGER/FOREARM, ACQUIRED

**Services Performed:**

(99244) OFFICE CONSULTATION

**Plan Note:**

Risks, benefits, and complications of different options were explained. Questions asked were answered. Mr. Anderson agreed to right first metacarpal osteotomy, open reduction internal fixation, and possible cortical graft.
lab, EKG obtain new hand X-ray.

---

James Lin

JUL 14 2014

ML G83231
DEA BL4806052

CMD

Long Term Care - Specialty
- Correctional Facilities
- Psychiatric Hospitals

**Community Mobile Diagnostics, LLC.**
10948 Bigge Street
San Leandro, California 94577
Telephone: (877) 594-9729; Fax: (877) 769-9729

5

Diagnostic Imaging Report

Case ID: 06704337
Patient ID: 21999910
Patient Name: ANDERSON, RICHARD
Facility: ELDORADO COUNTY JAIL
Req. Physician: STAFF DOCTOR (JAILS)

DOS: 05/01/2014
DOB: 4/27/1964
Sex: M
Fax: 530-621-3783
Phone: 530-621-6017
Room:

PROCEDURE(S)

| CPT Code | CPT Description | ICD Code | ICD Description |
|---|---|---|---|
| 73130-RT | HAND RIGHT-3V | 719.44 | PAIN IN JOINT HAND |

Exam: HAND RIGHT-3V

**RESULTS:**

Right hand There is no prior study available for comparison. There is soft tissue swelling. There are no significant degenerative changes. There is a mildly displaced comminuted, possibly intra-articular, fracture at the proximal aspect of the first metacarpal. The edges of the fracture fragments appear rather smooth and sclerotic and this likely represents an old nonunited fracture.

**CONCLUSION:**

An old nonunited fracture of the first metacarpal.

Electronically signed by CONSTANTINA LAMPROPOULOS, M.D.
Date: 5/1/2014 1:06:35 PM PST
Case ID: 06704337 ANDERSON, RICHARD

MAY 06 2014
ML G83231
DEA BL4806052

CMD

Long Term Care - Specialty
- Correctional Facilities
- Psychiatric Hospitals

**Community Mobile Diagnostics, LLC.**
10948 Bigge Street
San Leandro, California 94577
Telephone: (877) 594-9729; Fax: (877) 769-9729

## Diagnostic Imaging Report

| | | | |
|---|---|---|---|
| Case ID: | 06760134 | DOS: | 05/28/2014 |
| Patient ID: | 21999910 | DOB: | 4/27/1964 |
| Patient Name: | ANDERSON, RICHARD | Sex: | M |
| Facility: | ELDORADO COUNTY JAIL | Fax: | 530-621-3783 |
| Req. Physician: | STAFF DOCTOR (JAILS) | Phone: | 530-621-6017 |
| | | Room: | |

PROCEDURE(S)

| CPT Code | CPT Description | ICD Code | ICD Description |
|---|---|---|---|
| 73130-RT | HAND RIGHT-3V | 719.44 | PAIN IN JOINT HAND |

Exam: HAND RIGHT-3V

**RESULTS:**
There is a fracture of the base of the 1st metacarpal. There is mild displacement of the distal fragment. There is no apparent callus formation. There are no gross lytic or blastic lesions in the bones. There is no dislocation. There are no radiopaque foreign bodies in the soft tissues. Compared to study performed on 05/01/2014. Reference: 06704337

**CONCLUSION:**
There is a fracture as described above. The exam is overall not significantly changed compared with prior dated 5/1/2014.

| | | | |
|---|---|---|---|
| Electronically signed by | WILLIAM B BETZ, M.D. | Date: 5/28/2014 2:23:38 PM PST | Case ID: 06760134 ANDERSON, RICHARD |

MAY 29 2014
ML G83231
DEA BL4806052

Long Term Care - Specialty
- Correctional Facilities
- Psychiatric Hospitals

**Community Mobile Diagnostics, LLC.**
10948 Bigge Street
San Leandro, California 94577
Telephone: (877) 594-9729; Fax: (877) 769-9729

Diagnostic Imaging Report

| | | | |
|---|---|---|---|
| Case ID: | 07071953 | DOS: | 10/29/2014 |
| Patient ID: | 23330160 | DOB: | 7/27/1964 |
| Patient Name: | ANDERSON, RICHARD | Sex: | M |
| Facility: | ELDORADO COUNTY JAIL | Fax: | 530-621-3783 |
| Req. Physician: | STAFF DOCTOR (JAILS) | Phone: | 530-621-6017 |
| | | Room: | |

PROCEDURE(S)

| CPT Code | CPT Description | ICD Code | ICD Description |
|---|---|---|---|
| 73130-RT | HAND RIGHT-3V | 719.44 | PAIN IN JOINT HAND |

Exam: HAND RIGHT-3V

**RESULTS:**

There is an acute fracture involving first proximal phalanx, distal aspect with no displacement. There is associated soft tissue swelling.

**CONCLUSION:**

Acute right first proximal phalangeal fracture as described.

| | | | |
|---|---|---|---|
| Electronically signed by | SONIA JOHNSON, M.D | Date: 10/29/2014 2:40:47 PM PST | Case ID: 07071953 ANDERSON, RICHARD |

Anderson – Attachment # 45 pg 1 of 8
Anderson – Attachment # 45 pg 1 of 8

Richard Anderson
300 Forni Road
Placerville, Ca. 95667

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF EL DORADO

RICHARD ANDERSON

VS.

EL DORADO COUNTY JAIL

Case No.:

**NOTICE OF MOTION FOR PROPER MEDICAL TREATMENT IN JAIL**

TO THE DISTICT ATTORNEY OF EL DORADO COUNTY AND/OR HIS REPRESENTATIVE:

PLEASE TAKE NOTICE: that on______________ , at the hour of ______ or as soon thereafter as petitioner may be heard in the courtroom of the above-entitled court, the petitioner will move for an order directing the Sheriff of El Dorado County to provide the petitioner with proper medical treatment.

This motion will be made on the ground that the denial of proper medical treatment constitutes cruel and unusual punishment prohibited by the Eight Amendment of the United States Constitution.

This motion will be based on this notice of motion, on the attached declaration and memorandum of points and authorities served and filed herewith, on such supplemental memoranda of

RECEIVED
JUL 08 2014

points and authorities as may hereafter be filed with the court or stated orally at the conclusion of the hearing on the motion, on all papers and records on file in this action, and on such oral documentary evidence as may be presented at the hearing of the motion.

Dated ____________________

________________________________
Petitioner

Richard Anderson
300 Forni Road
Placerville, Ca. 95667

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF EL DORADO

**RICHARD ANDERSON**

**VS.**

**EL DORADO COUNTY JAIL**

Case No.:

**DECLARATION IN SUPPORT OF MOTION FOR PROPER MEDICAL TREATMENT IN JAIL**

I, Richard Anderson, declare:

1. I am the petitioner in this action
2. The petitioner is currently confined in the El Dorado County Jail
3. I, the petitioner, suffer from the following diagnosed medical condition and have been prescribed the following treatment. I have been diagnosed with a fractured bone in my right hand and am in need of a cast and further medical treatment.
4. The medical staff in the jail has failed to address the petitioner's medical problems and have failed to administer the medically prescribed treatment.

I declare under penalty of perjury that the foregoing is true and correct, except as to matters stated on information and belief, and as to those matters I believe to be true.

Executed this ___________, Placerville, California

___________________________

Petitioner

Richard Anderson
300 Forni Road
Placerville, Ca. 95667

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF EL DORADO

| | |
|---|---|
| RICHARD ANDERSON<br><br>VS.<br><br>EL DORADO COUNTY JAIL | Case No.:<br><br>**POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROPER MEDICAL TREATMENT IN JAIL** |

Petitioner submits the following points and authorities in support of the motion for proper medical treatment in the jail.

## I

## THE FAILURE TO PROVIDE MEDICAL CARE TO A PRETRIAL DETINEE IS A VIOLATION OF THE DEFENDANT'S RIGHTS UNDER THE EIGTH AMENDMENT OF THE UNITED STATES CONSTITUTION

The United States Supreme Court has stated that the "deliberate indifference to serious medical needs of prisoner constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eight Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying

access to medical care or intentionally interfering with the treatment once prescribed." (Estelle v. Gamble, 429 U.S. 97, 104-105, 97S. Ct. 285, 50 L. Ed. 2d 251 (1976)). The courts have held that pretrial detainees are entitled to the same constitutional protections afforded convicted inmates who have serious medical needs (Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985)).

In 1994 the California legislature amended Penal Code § § 2600 and 2601 to restrict prisoner's rights. The new amended law allows an inmate to be deprived of "only such rights, as is reasonably related to legitimate penalogical interests." (Pen C § 2600). Although on its face, Pen C § 2600 applies only to those confined in state prisons, the California Supreme Court declared that equal protection principles required its application to county jail inmates (De De Lancie v. Superior Court, 31 Cal. 3d 865, 872, 183 Cal Rptr. 866, 647 P.2d 142 (1982)). In Response to these changes, the legislature directed the Department of Corrections to develop guidelines for "local detention facilities" (Pen C § 6030). These regulations, codified in Title 15 of the California Code of Regulations, mandates that the local facility "shall have the responsibility to ensure provisions of emergency and basic health care services to all inmates." (15 CCR § 1200). However these regulations must be implemented so as not to invalidate a constitutional right. The standards set forth in Title 15 "constitute contemporary notions of decency and are advisory in nature," but the courts do not rely blindly on these standards as fixing constitutional minimums. (Inmates of the Riverside County Jail v. Clark, 144 Cal. App. 3d 850, 860, 192 Cal. Rptr. 823 (4th Dist. 1983)).

One court has observed that "the requirement of deliberate indifference is less stringent in cases involving a prisoner's

medical needs than in other cases involving harm to incarcerated individuals because the states responsibility to provide medical care ordinarily does not conflict with competing administrative concerns." (Hudson v. McMilliam, 503 U.S. 1, 5, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)).

**II**

**UNTREATED MEDICAL CONDITIONS CAN CONSTITUTE CRUEL AND UNSUAL PUNISHMENT**

There are two components to establishing violations of the Eighth Amendment's "cruel and unusual punishment" provisions as it relates to medical care: (1) the inmate must demonstrate a serious medical need and (2) that the jail authorities knew about the medical need and refused to remedy it. (Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994))

A medical need is serious if it "has been diagnosed by a physician mandating treatment or … is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" (Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)). A "medical condition need not be an emergency in order to be considered serious under Estelle." (Ellis v. Butler, 890 F.2d 1001, 1003, (8th Cir. 1989))

Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment. (Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)). A court has held that "a doctor's decision to take an easier and less effective course of treatment" may constitute deliberate

indifference (Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)). A showing of indifference does not require proof of an intent to inflict pain, but the conduct must demonstrate a knowing indifference to a serious medical need. (Hicks v. Frey, 992F.2d 1450, 1455 (6th Cir. 1993)). In Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986), the court stated the settled rule that "the unnecessary and wanton infliction of pain … constitutes cruel and unusual punishment forbidden by the Eight Amendment."

Benton - Attachment

2nd grievence re-written per SGT Godman 5/9/14

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| BRUCE Benton | 099733 | 4/28/14 1st 2nd 5/9/14 | Protective Houseing C-pod |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

I Filed A Grievence on 5/1/14 And still nothing HAS been Done, it Appears My grievence has been lost And Per SGT Godman I was told to File A new one. My grievence is concerning the vicious Hate crime Attack on 4/28/14 on me & 3 other Inmates this Attack occured Because of the unlocking of 3 different areas containg Different classification of Inmates including our Protective custody area & Pod which resulted in Protective custody Inmates being Attacked Verbally And physically which included names being yelled At us As we were being Attacked including "child molesters & Homosexuals" & other derogatory names Resulting in Injuries to Protective custody inmates, This is not An Isolated Situation this has happened atleast 6 times! over the last Few years. We'd like to Know what is being Done to Ensure the Safety of Protective custody inmates, As I Am still suffering From the Pain in teeth, Neck, back, Face, And still have problems sleeping due to Night-mares. Also on 5/2/14 3 of us were returning From court at approx 10:30 And upon getting close to C-pod Door & pod & B-pod Door were opened at the same-Time !! Thank God no one Attacked us Again

Receiving Officer: Anglin T. ID# J1380

Date: 5/14/14 Time: 2035 Grievance # 352

CHECK APPROPRIATE DISPOSITION

__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: ______

**Benton - Attachment #2**

C-7

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## CUSTODY DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| Sgt. Godman | 3S891 | 5/20/14 | 352 |
| Inmate Name | Master ID# | Date of Grievance | Housing Unit |
| Benton, Bruce | 099733 | 5/9/14 | C-Pod |

**OFFICER'S RESPONSE TO GRIEVANCE**

Inmate Benton, I have reviewed your grievance concerning an incident that transpired on 4/28/14. There are currently two different actions that are transpiring at this time. A criminal complaint has been filed with the District Attorney's office concerning the incident. The jail management currently has an internal investigation on going to attempt to find the cause of this incident. Jail staff takes matters like this seriously and will take appropriate action to try and ensure this type of incident does not happen again.

In regards to your medical issues, I will refer you to our medical department. Our medical department can refer you to mental health for your night mares.

Thank You,

Sgt. Godman

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Godman | 3S891 | 4/20/14 1345 |

**Benton - Attachment #5**

[handwritten, top left:] 3(?) ... TO RE-DO ... File he didnt like Language But it is fact. 5/9/14

[handwritten, top right:] 2nd grievance 1st one has dissapeard

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
## INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Brad Benton | 0997733 | 4/28/14 | C pod |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

On 4/28/14 I was attacked and called FAG and ho me and I'm not I was assaulted by inmate in dorm I I Filed A grievance on 5/1/14 and still nothing has been done! 3 doors were popped this is another grievance lost or dissapeared. I've been to medical alot. ~~[illegible]~~ and recordings were done by officer BRAAFdat 13 Gutsu And A line up people were ID And possibly found guilty. I'm still suffering from alot of pain, neck back teeth loose, I can't sleep nightmares how can attacks like this keep happening! No one will interview witnesses in A ~~[illegible]~~ pod of 27 or 28 people. I've Asked Both CO Harts to speak to the investigating officers to No Avail please help us!

Receiving Officer: ______________________ ID# ________

Date: __________ Time: __________ Grievance # __________

CHECK APPROPRIATE DISPOSITION
__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: ______________________________

Benton - Attachment #4

Not 5/15/14

wrote grievance on 5/20/14 8AM on exhausting admin remedies

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## CUSTODY DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| Lt Noren N | L138 | 5-23-14 | 272A |
| Inmate Name | Master ID# | Date of Grievance | Housing Unit |
| Benton, Bruce | 099733 | 4-25-14 | C-7 |

**OFFICER'S RESPONSE TO GRIEVANCE**

Mr. Benton,

I have reviewed your grievance appeal. As I discussed with you on May 16, 2014 your claim is currently being reviewed by County Council Attorney John Hendrickson. The claim can take up to forty-five days to be determined if you are to be reimbursed or not.

In regards to the chain of custody with property, no rules were broke. It is not uncommon after the conclusion of an incident/investigation for property to be consolidated so that it is kept in one place. Property that comes into custody with you is logged on your property sheet that is kept in the jail file. Property that is not within the jail is taken and put in our Evidence/Property Section, which is what happened to your backpack in which your hat, keys, wallet, and loose change were put as documented in the deputies report,

> "I later discovered I had inadvertently placed Bruce's wallet and loose change into the backpack I had booked as found property. On 4/11/14 at approximately 1330 hours, I retrieved these items from the backpack and transported them to the El Dorado County Jail to be added to Bruce's property."

This happens frequently and there is no evidence of impropriety on the deputy's part.

Based upon information contained in the Deputies reports; that you lead the officers on a foot chase into heavy shrubbery, discarded items as you were pursued, tumble down an approximate 10 foot embankment, had stated that you had been in a physical altercation earlier, and you had injury to your eye; there is no information indicating that upon apprehension you were in possession of eyeglasses. If you had the glasses on at any time during this incident it is highly likely that they could have come off during the time you had been engaged in a fight, you had been running in a wooded area, or when you had tumbled down the embankment; all actions initiated by you.

On May 7, 2014 and Evidence Property Technician check the contents of your backpack in the event they may have become entangled in the clothing found no glasses.

Based upon the above information and your actions that lead to your being in our custody and most likely lead to you not having glasses in your possession at the time of apprehension, I have determined we are not responsible and will not replace your glasses.

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Henscheid S264 | S264 | 5-25-14 @ 1440 |

Benton Attachment #5

2nd grievence re-written per SGT Goodman 5/9/14

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Bruce Benton | 099733 | 4/28/14 2nd 5/9/14 | Protective Houseing C-pod |

BRIEF DESCRIPTION OF COMPLAINT
*Write legibly; keep all complaints to one page.*

I Filed A Grievence on 5/1/14 And still nothing HAS been Done, it Appears My grievence has been lost And Per SGT Goodman I was told to File A new one. My grievence is concerning the vicious Hate crime Attack on 4/28/14 on me & other Inmates This Attack occured Because of the unlocking of 3 different areas containg Different classification of Inmates including our Protective custody area & Pod which resulted in Protective custody Inmates being Attacked Verbally And physically which included names being yelled at us As we were being Attacked including "child molesters & Homo sexuals" & other derogatory NAMES Resulting in injuries to Protective custody inmates this is not an isolated situation this has happened atleast 6 times! over the last Few years. we'd like to Know what is being Done to ensure the safety of Protective custody inmates, As I Am still suffering From the pain in teeth, neck, back, Face, And still have problems sleeping due to Night-mares, Also on 5/2/14 3 of us were returning From court at approx 10:30 And upon getting close to C-pod door & pod & B-pod Door were opened at the same time!! Thank God no one Attacked us Again

Receiving Officer: Anglin T. ID# J1580

Date: 5/14/14 Time: 2035 Grievance # 352

CHECK APPROPRIATE DISPOSITION

__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: ____________________

2ND grievance 1st one has DISSAPEARED

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION

Benton Attachment #6

# INMATE GRIEVANCE FORM

If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.
All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Brice Benton | 0997733 | 4/28/14 | C Pod |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

On 4/28/14 I WAS ATTACKED [illegible] called TAG ANCHO ME and I'm NOT I WAS ASSAULTED by INMATE in DORM 1 I Filed A grievance on 5/1/14 And still Nothing has been done! 3 doors were popped this is Another grievance lost or disappeared. I've been to Medical alot! ~~[illegible]~~ ~~[illegible]~~ [illegible] were done by officer BRAAFbat 13 Gutsu And A line up people were ID And possibly Found guilty. I'm still suffering [illegible] alot of pain, neck back teeth loose, I can't sleep nightmares how can [illegible] like this keep happening! NO one will interview witnesses in A [illegible] pod of 27 or 28 people, I've ASKED Both CO Harts to speak to the investagating officers to NO AVAIL please help us!

[illegible] TO REDO? [illegible] File He didn't like LANGUAGE But it IS FACT. 5/9/14

Receiving Officer: ____________ ID# ________

Date: ________ Time: ________ Grievance # ________

CHECK APPROPRIATE DISPOSITION
__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: ____________

Benton - Attachment #7

C-7

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## CUSTODY DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| Sgt. Godman | 3S891 | 5/20/14 | 352 |
| Inmate Name | Master ID# | Date of Grievance | Housing Unit |
| Benton, Bruce | 099733 | 5/9/14 | C-Pod |

**OFFICER'S RESPONSE TO GRIEVANCE**

Inmate Benton, I have reviewed your grievance concerning an incident that transpired on 4/28/14. There are currently two different actions that are transpiring at this time. A criminal complaint has been filed with the District Attorney's office concerning the incident. The jail management currently has an internal investigation on going to attempt to find the cause of this incident. Jail staff takes matters like this seriously and will take appropriate action to try and ensure this type of incident does not happen again.

In regards to your medical issues, I will refer you to our medical department. Our medical department can refer you to mental health for your night mares.

Thank You,

Sgt. Godman

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Godman | 3S891 | 4/20/14 1345 |

**Benton Attachment #8**

C-7

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## CUSTODY DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| Sgt. Godman | 3S891 | 5/20/14 | 352 |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Benton, Bruce | 099733 | 5/9/14 | C-Pod |

**OFFICER'S RESPONSE TO GRIEVANCE**

Inmate Benton, I have reviewed your grievance concerning an incident that transpired on 4/28/14. There are currently two different actions that are transpiring at this time. A criminal complaint has been filed with the District Attorney's office concerning the incident. The jail management currently has an internal investigation on going to attempt to find the cause of this incident. Jail staff takes matters like this seriously and will take appropriate action to try and ensure this type of incident does not happen again.

In regards to your medical issues, I will refer you to our medical department. Our medical department can refer you to mental health for your night mares.

Thank You,

Sgt. Godman

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Godman | 3S891 | 4/20/14 1345 |

ATTACK

**Benton - Attachment #9**

Wrote responce
Asking About Exh-
austing Administra-
tive Remedies
5/26/014

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## CUSTODY DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| Lt Noren | L138 | 5-23-14 | 352A |
| Inmate Name | Master ID# | Date of Grievance | Housing Unit |
| Benton, Bruce | 099733 | 5-21-14 | C-7 |

**OFFICER'S RESPONSE TO GRIEVANCE**

Mr. Benton,

I have reviewed your grievance appeal. As previously advised in Sergeant Godman's response a criminal complaint has been filed with the District Attorney's Office. I have requested an update from the DA's Office regarding that case status. As soon as I am informed I will relay the information to you.

I had previously submitted a request for this incident to be investigated by the El Dorado County Sheriff's Office Internal Affairs Investigations Unit. This investigation is in progress at this time.

In regards to Jail Management, I am evaluating alternative housing areas for certain classifications. I am also working with Lieutenant Eslick of the South Lake Tahoe Jail Facility regarding housing locations for different classifications between both facilities.

If you have further questions or concerns please submit an inmate request form to me. Thank you

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| **Sgt. Henscheid S264** | S264 | 5-25-14 @ 1448 |

**Benton - Attachment #10 pg 1 of 2**

# EL DORADO COUNTY SHERIFF'S OFFICE
## SHERIFF JOHN D'AGOSTINI

### MEMORANDUM

TO: Inmate Benton C-7

FROM: Capt. Peshon

SUBJECT: Appeal to Grievance 352A

DATE: May 28, 2014

I received your appeal on Tuesday 5-28-14 and have reviewed it. My understanding of your grievance is that:

1. You are informing jail management that an incident occurred on 4-28-14 in which inmates were attacked by other inmates due to negligence by the jail staff.
2. You wish more explanation and assurance concerning these incidents.
3. You wish to report an incident that occurred on 5-2-14.

My response is as follows:

1. This request is not a grievance but a personnel complaint. Personnel complaints are handled through a separate process from grievances and are subject to different laws, rules and responsibilities for the Sheriff's Office.
2. As listed in the previous responses from Sgt. Godman and Lt. Noren the Sheriff's office is aware of the incident on 4-28-14 and self-initiated both criminal and internal investigations on that same day. Immediately following this incident the Sheriff's Office made operational changes to do our best to prevent any further inmate on inmate assaults.
3. The investigations are in progress and ongoing. Due to the in depth nature and rules and laws surrounding the conduct of the investigations no information, updates, or explanations may be made at this time.
4. I have directed an investigation be made into your allegation of misconduct that occurred on 5-2-14.

5. The Sheriff's Office has the right and duty to conduct these investigations in an ethical, honest, lawful and timely manner. These investigations are not subject to the grievance process.

6. The Sheriff's Office takes seriously all incidents occurring in our facilities and any allegations of misconduct against the staff.

Since your complaints are against staff and inmates, this matter will be separated from the grievance process and will continue as both internal and criminal investigations.

Capt. R. Peshon

Custody Division Commander

**Benton - Attachment #11 pg 1 of 3**

CEDAR EYE CENTER
MEDICAL GROUP

**Cedar Eye Center**
**4300 Golden Center Drive, Suite A**
**Placerville, CA 95667**
**530-344-2020 530-622-9613**

**THIS DOCUMENT WAS CREATED ON: 05/29/2014 02:55:54 PM BY: Leilani C Norton**

**Exam Date:** Thursday, May 29, 2014

**PATIENT NAME: Bruce Benton**

PATIENT ID: 85C80 BIRTH DATE: 3/25/1965 AGE: 49
GENDER: Male RACE: White

PRIMARY CARE PHYSICIAN: **none**

## *History*

**Chief Complaint/Reason For Visit:** NPM/(from county jail) pt states he was in a fight around 4/28 and since then he has had blurry VA and needs larger print to see things. He has been having a lot of pain in OS and watering going on off and on since the fight. Pt has also had light sensativity problems for many years.

**HISTORY OF PRESENT ILLNESS:**
**PROBLEM:** Trauma occured in fight
CONTEXT/ONSET: several weeks ago
LOCATION: both eyes
TIMING: constant
HPI was performed by Dr. Leilani C Norton
**PAST MEDICAL HISTORY:**
OCULAR: No known ocular history
PROCEDURES : No known ocular procedures
INFECTIOUS: No known previous infections
OCULAR SIGNIFICANT: No known ocular significant illnesses
ILLNESSES: Possible Cancer
SURGERIES: No known previous general surgeries
HEAD/OCULAR TRAUMA: Trauma to heads in fight 4/28/2014
**SOCIAL HISTORY:**
ALCOHOL: Denies drinking
SMOKING: Former Smoker
OCCUPATION: Other
**FAMILY HISTORY:**
FAMILY MEMBER: Family history unknown

**CURRENT MEDICATIONS:**

| | | |
|---|---|---|
| albuterol | 1 puff as directed as directed | as of:5/29/2014 2:19:36 PM |
| ibuprofen | 1 capsule as directed as directed | as of:5/29/2014 2:19:36 PM |

**ALLERGIES:**
Allergies Last Reviewed on:05/29/2014
Codeine:Adverse reaction to substance (282100009), Tetracyclines:Adverse reaction to substance (282100009)

**REVIEW OF SYSTEMS:**
All other Review Of Systems negative

## *Exam*

ORIENTATION, MOOD AND AFFECT: Alert & oriented x3

| | RIGHT EYE | LEFT EYE |
|---|---|---|
| UNCORRECTED VA | 20/200 | 20/200-1 |
| WEARING | OTC readers +2.75 | OTC +2.75 |
| Second Pair-OTC READERS | +1.75 SPHER | +1.75 SPHER |
| MANIFEST REFRACTION | +1.50 +0.75 x 015 | +1.50 +0.75 x 145 |

**Benton - Attachment #11 pg 2 of 3**

Account:85080 Benton,Bruce DOB: 3/25/1965 Todays Date:05/29/14 14:56 Exam Date:05/29/2014 Page

2Account:85080 Benton,Bruce DOB: 3/25/1965 Todays Date:05/29/14 14:56 Exam Date:05/29/2014 Page 2

| | | |
|---|---|---|
| AUTO REFRACTION | +1.75 +0.75 x 013 | +1.75 +0.50 x 145 |
| DOCTORS FINAL REFRACTION | +1.50 +0.50 x 015 add +2.00 | +1.50 +0.50 x 145 add +2.00 |
| WR NVA | J10 | J10- |
| DOCTORS FINAL VA | 20/20-1 | 20/20 |
| KERATOMETRY | 41.50/42.25 @ 55 | 41.50/42.50 @ 118 |
| PRESSURE METHOD: | Noncontact | Noncontact |
| PRESSURES: | 21 | 21 |
| DATE-TIME: | 02:20 PM | 02:20 PM |
| TECHNICIAN: | KCLEVELAND | KCLEVELAND |
| CONFRONTATION VF | Normal | Normal |

**EXTERNAL EYE EXAM:**

| | | |
|---|---|---|
| LID: | Normal for Age | Normal for Age |
| PUPIL: | PERRL, negative APD, 2mm, no react | PERRL, negative APD, 2mm, no react |
| ADNEXA: | Normal | Normal |
| MUSCLE BALANCE: | Ortho | |
| OCULAR MOTILITY: | EOMI, NPC 1/2" | |

**ANTERIOR SEGMENT EXAM:**

| | | |
|---|---|---|
| TEARFILM: | good | good |
| CONJUNCTIVA: | normal | normal |
| CORNEA: | clear | clear |
| ANTERIOR CHAMBER: | deep and quiet | deep and quiet |
| IRIS: | normal pupil size and shape | normal pupil size and shape |
| LENS: | clear | clear |
| ANTERIOR VITREOUS: | normal | normal |

**FUNDUS EXAM:**

| | | |
|---|---|---|
| DILATION and NUMBING DROPS: | Neo 2.5% / Mydr 1% OU 05/29/2014 02:28:25 PM | |
| CUP TO DISC: | 0.3 | 0.3 |
| OPTIC DISC: | no edema, no neovascularization, good color | no edema, no neovascularization, good color |
| VITREOUS: | clear | clear |
| MACULA: | Normal contour and reflex for age | Normal contour and reflex for age |
| VESSELS: | 2/3 ratio of Arterioles/venules w/o tortuosity or abnormality | 2/3 ratio of Arterioles/venules w/o tortuosity or abnormality |
| PERIPHERY: | flat and attached 360 degrees | flat and attached 360 degrees |

## *Impression*

01 379.91 Acute Left Eye Pain-New
02 367.0 Hyperopia-New
03 367.21 Regular Astigmatism-New
04 367.4 Presbyopia OU-New

## *Discussion*

Work up tech:Kayla
Refracted By;Kayla

**Benton - Attachment #11 pg 3 of 3**


3Account:85080 Benton,Bruce DOB: 3/25/1965 Todays Date:05/29/14 14:56 Exam Date:05/29/2014 Page 3
Scribing for Dr. Norton:DYATES

Educational Material for Diagnosis : 367.0 Printed

## *Plan*

ACUTE LEFT EYE PAIN|379.91
Discussed eye pain.
Discussed with patient healthy eye exam.
No retinal holes or tears.

HYPEROPIA|367.0
REGULAR ASTIGMATISM|367.21
PRESBYOPIA OU|367.4
New glasses Rx given.
Pt. will need large print for reading until he has galsses made for reading or Bifocal glasses.
Can use over the counter reading glasses +3.50 and for distance +1.75

**FOLLOWUP SCHEDULED:**
Return Visit - PRN

| SPECTACLE PRESCRIPTIONS: | Right | | | | Left | | |
|---|---|---|---|---|---|---|---|
| DR REFRACTION : | +1.50 | +0.50 | x 015 add +2.00 | +1.50 | +0.50 | x 145 add +2.00 | |

Leilani C Norton    DOCUMENT CREATE DATE: 05/29/2014 02:55:56 PM

Benton Attachment #12

sent for copy & mailed to Capt Peshon 5/30/14

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Bruce Benton | 099733 | 5-30-14 AM | C-POD #7 |

BRIEF DESCRIPTION OF COMPLAINT
*Write legibly; keep all complaints to one page.*

IN responce to grievence responce # 352A THAT WAS sent to capt peshon. I was Asking IF I HAD EXHAUSTED my ADMINIStrative remedies of the grievance process of El Dorado county Jail ON this very serious matter in which u Didn't return my original or a copy I sent to you of that grievence you only sent your responce (Please Forward that to me For My records thank you)
I Appreciate your responce But u still havent told me if I exhausted my Administrative remedies so I can proceed to the Next step! AND IF I havent please tell how I must do that! You are also informing me of a personal complaint issue? Well if so as you have put on your responce How am I to pursue a personal complaint (A seperate issue if you wont tell us the officers NAMES involved! who am I or others to personally complain against!

Receiving Officer: ____________________ ID# ________

Date: __________ Time: __________ Grievance # __________

CHECK APPROPRIATE DISPOSITION
__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: ____________________

**Benton - Attachment #13**

TO CAPT Peshon
Sent 5/30/14 9AM

# INMATE REQUEST SLIP

**INMATE'S NAME:** Benton Bruce **DATE:** 5 / 30 / 14 **TIME:** 9AM

**HOUSING LOCATION:** C-7 Capt Pesha

**REQUEST:** Once again I am asking Have I "Exhausted" the grievance #352A process Administrative Remedies"? so I can proceed on Habeus Thank you For your Time.

**COLLECTED BY:** ______ **DATE:** __/__/__ **TIME:** ______

**JAIL STAFF REPLY:** ______

______

______

**Officer:** ______ **Date:** __/__/__ **Time:** ______

**ONE REQUEST PER SLIP**

**Benton - Attachment #14**

3rd request on going medical

## EL DORADO COUNTY JAIL
## INMATE SICK CALL REQUEST SLIP

INMATE'S NAME Benton HOUSING UNIT C-Pop

PROBLEM / REASON FOR REQUEST: this is my 3rd request And Sgt Gorman Put me up For medical mental health in his grievence responce on 5/9/14 still its over 20 days later And nothing has been Done I Am haveing Horrible Nightmares & depressed, Nervous

INMATE'S SIGNATURE [signature] DATE 5/31/14 AA

By signing this form, you understand that $3.00 may be removed from your inmate commissary account for services provided by medical. Medical staff will decide at the time the services are provided if you will be charged or not.

INMATE CHARGED FOR MEDICAL SERVICES: YES ☐ NO ☐

DATE SEEN BY MEDICAL ______________ MEDICAL STAFF SIGNATURE ______________________________

Ongoing medical and request Hep C
Please send my
receipt copy

**EL DORADO COUNTY JAIL**
**INMATE SICK CALL REQUEST SLIP**

INMATE'S NAME Benton HOUSING UNIT C-7

PROBLEM / REASON FOR REQUEST: I AM SICK Hep C I forgot on 6-6-14
already I sprained Aint working for Neck
Pain still loud cracking? Very sharp pain I am
in 50% of Activity if that Face, Back, Ribs I need proper x-rays
what about the ~~possible medication~~ NEED Prescription glasses
eyes hurt

INMATE'S SIGNATURE [signature] DATE 6-8-14

**By signing this form, you understand that $3.00 may be removed from your inmate commissary account for services provided by medical. Medical staff will decide at the time the services are provided if you will be charged or not.**

**INMATE CHARGED FOR MEDICAL SERVICES: YES ☐ NO ☐**

**DATE SEEN BY MEDICAL** ________ **MEDICAL STAFF SIGNATURE** ________

MDSC June 6, 2014
MDCR - NEXT rounds - MD To review your

**Benton - Attachment #16**

6-9-14

attention Victims of crime

Myself & others were assaulted on 4/28/14 at El-dorado County jail during a horrible hate crime attack!

I would like to Know whats going on in the case? and whats my rights as A Victim.

People r being threatened daily This is my 2nd letter to Your office, I never got a response From the 1st letter.

I will wait For ur reply or A representative to come Speak to me & others about our rights

Bruce Benton
300 Forni Rd
Placerville CA, 95667

Benton Attachment #17

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
# INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Bruce Benton | 099733 | Every Day | C-pod |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

response to grievance # 448 I am still very dissatisfied!

Per your El Dorado counties description of a "Programming Pod" is one that has classes in their Housing units is untrue! there isn't classes that take place in Housing units.

(Attached →)

We'd really love to attend all classes school, anger management, Pre-release, and work as trustee or kitchen or outside workers, you won't allow us that's clear discrimination because u haven't even tried to come up with jobs 4 us! n u could easily! protective custody has jobs n all facility's county & CDC per PC 4029.

We deserve the same privileges as all other Inmates recieve! We'd like to wear our own personal shoes as workers do with no MTO; get free haircuts, Extra foods, Free calls, listen to radios Day & night etc Boomboxs in rooms & dorm pods Movies on weekends or weekdays as Koontz stated will look into Pod Jobs. All we want is not to be discriminated against! n equal opportunity to recieve the same privileges as other Inmates get. At least they have the opportunity to get jobs and go to all classes! you won't allow us is the only reason we can't. Please tell us how we can get the equal privileges as other programmers recieve cuz we r a programming unit and one of the less disciplined pod in here. please don't discriminate against us thank you. Solve the problem give us the privileges as others recieve and the POD JOBS Just give us some of the privileges

Receiving Officer: [illegible] 1562 ID# ________

Date: 6-18-14 Time: 2130 Grievance # ________

CHECK APPROPRIATE DISPOSITION
__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: ________________________________

Benton – Attachment #18

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## CUSTODY DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| Sgt. Koontz | S225 | 06/25/2014 | 448A |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Benton, Bruce | 099733 | 06/18/2014 | C-Pod |

**OFFICER'S RESPONSE TO GRIEVANCE**

Inmate Benton, I reviewed your grievance regarding the so called discrimination that you feel is taking place. First off let me remind you that you and many of the others inmates are classified "Protective Custody". With that being said, this agency has duty to protect you to the best of our ability for as long as you are here.

You are classified Protective Custody/ Administrative Segregation. You must be housed separate from the rest of the population for your safety and the security of the facility. We are not discriminating; we are protecting you from others that would not hesitate to harm you or any other inmate in your housing Pod. Unfortunately you have experienced this first hand.

We will not place any inmate classified other than "Medium Security" in to Inmate Worker status. This goes for Maximum Security and Administrative Segregation inmates. We are not a State Prison, and we don't fall under the same operational guidelines as a State Prison, nor do we have the facilities to separate Protective Custody inmates from the rest of the population. You are more than welcome to take it upon yourself to maintain the cleanliness of your housing unit. We will give you the supplies to do so.

We do have two Program housing units, one male, one female. We are required by AB109 "The Prison Realignment Act" to offer certain programs for those inmates sentenced under 1170 that are not a risk to the safety and security of the facility or other inmates. Your classification does not meet the criteria.

Inmate workers do get their own shoes while working. They are not allowed to wear them after work. You can by tennis shoes from commissary, and you can purchase radios as well. Free haircuts are given to workers for hygiene and public appearance reasons. Not because we are discriminating. No other housing units are afforded free haircuts.

So, to make this perfectly clear to you, we are not discriminating, we are protecting all inmates as required by law and state standards. We will not in the foreseen future have Protective Custody, Maximum Security or Administrative Segregation inmates working in this "JAIL".

You make reference to 4029 pc. This section deals with "Facilities for Opposite Sex". This has nothing to do with your classification.

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Koontz | S225 | 06/26/2014 0300 |

**Silva - Attachment #1**

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
| --- | --- | --- | --- |
| Jorge Silva | 098711 | 8-19-14 2pm | C-POD |

BRIEF DESCRIPTION OF COMPLAINT
*Write legibly; keep all complaints to one page.*

on date and time above I was going to a visit, the tower opened my protective custody Pod door to let me out to my visit! while there was in "clear view" & "unobstructed view" of a d-pod Prisoner Mang D.O. member he actually waving at the tower to get into his pod. He had court papers in his hand or something, So I ensure court transport, Visiting, and Tower officers had been called on radio to clear my release to my visit. It took more than one officer to clear my release. tower is 15 away d-pod is right in front of the "unobstructed view" of the tower. Clearly El Dorado County correctional CO's are continuing to make these negligent mistakes. Just as recently 7-31-14 (AT top stairwell) 8-1-14 (notified LT, 8-5-14 (cell 15 Problems Doors) 8-7-14 cell 5 Problems door, 8-13-14 (POPPED All Seg doors & left open till he notified tower). and proves staff are Following A practice & custom 3 or Policy that undermines the protection of protective custody inmates here at El dorado county, and all of the staff's Incidents and Tod[illegible] are posing A serious risk of serious harm! later officer windham came & Apologized yet we heard a female in the tower Also windham did A prior incident on TUES, June 3rd inmate TOGNOTTI returning From a visit & A.D-Seg.
These officers are all aware of the numerous prior attacks and disregard protective custody safety, It [illegible] only our PC Pod that the doors get Popped open on! We are the only ones attacked. I thank Windham for admitting his mistake and taking accountability for the serious negligent mistake. As the Jail should do! Supervisors have failed to Properly Train There staff. This is not a frivolous grievance.

[illegible]

need copy of grievance

Receiving Officer: Fox ID# 1011

Date: 8/20/14 Time: 2245 Grievance # 624

CHECK APPROPRIATE DISPOSITION
__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: ____________________

**Silva - Attachment # 2**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT

## CUSTODY DIVISION

## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| Silva, Jorge | 1027 | 9-26-14 | 624-A |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Sgt. Green | 098711 | 8-23-14 | C-Pod |

**OFFICER'S RESPONSE TO GRIEVANCE**

Mr. Silva:

I have received and read your grievance. Thank you for the information contained in our conversation regarding your grievance appeal. As a follow-up to the conversation we had that included Lt. Noren, we will be continuing to ensure your housing unit as well as all housing units are kept safe and secure by addressing these issues with officers.

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Green | 1027 | 9-26-14 1549 |

Silva - Attachment #3

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Jorge Silva | 099711 | 8-19-14 2pm | C Pod |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

response to grievence 624 I'm dissatisfied still these incidents are only occur-
ing to our Pod "Protective custody" Preventive maintenance" should of always been Kept up to date
This is a county jail facility And no matter what it was clear failure to
Protect & failure to Properly train your officers which is negligence. One night
called to send the d-pod Prisoner [illegible] back to his pod, 2 officers OK'
That, Then right in front of the control tower in a unobstructed view
barely 15" feet away there was a "waving" d-pod inmate, Then the Tower called me to
my visit releasing me into a very dangerous situation (That The
Tower was aware of, How could they not be aware? The tower OK'
the d-pod inmate to come down to [illegible] but didn't [illegible] in.
They then called me to a "visit" then opened my c-pod door to
go to my visit. The tower have a [illegible] [illegible] The [illegible]
"just put in" But only after years of prior attacks and the last attack on 4-
28-14. It is shocking that your staff are still continuing to either
on purpose or negligently to use their [illegible] on custom [illegible] dangerous
C-Pod's safety again & again as stated [illegible] on Prior grievance 624
(6 or more times in aug alone!) I'm dissatisfied Please Forward to next
level. Thank you.

need copy of this grievance also

*also at 2:30PM Sat 8-23-14 The C-Pod door was not locking [illegible]
had to actually call a inmate to push [illegible] to [illegible] to show locked secured or closed

Receiving Officer: Segarra 1456 ID# A624

Date: 8-23-14 Time: 1830 Grievance #

CHECK APPROPRIATE DISPOSITION
__ Reply Attached X Forward To Next Level ( __SGT X ADMIN)

Reason forwarded to next level: APPEALING THE RESPONSE FROM SGT GREEN

**Silva - Attachment # 4**

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## CUSTODY DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| Sgt. Green | 1027 | 8-22-14 | 624 |
| Inmate Name | Master ID# | Date of Grievance | Housing Unit |
| Silva, Jorge | 098711 | 8-19-14 | C-Pod |

**OFFICER'S RESPONSE TO GRIEVANCE**

Mr. Silva:

I have received and read your grievance. Your safety as well as the safety of all inmates and staff is very important. We are in the process of improving this safety by conducting full maintenance and repair where needed to all doors. We have also been in the process of improving our mechanical controls.

Both events have presented challenges to maintain the highest security during busy times. Any time these issues are brought to our attention, they are investigated to prevent them from occurring again. Your housing unit is not the only one that has been affected by these issues.

We will continue to improve our security and will continue to respond to all information given to us regarding this issue. I can assure you that your grievance has not been taken as "frivolous".

Please continue to bring any future issues to our attention so that we can address them accordingly.

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Green | 1027 | 8-22-14 2230 |

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
# INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement. Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Brian Spears | 120709 | 5-28-14 ongoing | C-8 |

## BRIEF DESCRIPTION OF COMPLAINT
*Write legibly; keep all complaints to one page.*

I have been incarcerated here for over two years and have had constant issue with my health that I am now finding out some are directly do to my incarceration. One is the constant pain I have been in concerning my knee joints and feet. It has gotten progressively worse as time went on. I knew it was related to my arthritis but it was getting worse at an alarming rate. As every time I went to the yard or exercised I would have to pay for it with days of pain in my feet and knee joints. It got to the point my mobility was about 25% of what it was when I first arrived. After my family sent me a medical journal about arthritis I discovered that this could be due to the type of shoes I was wearing. When I had first arrived and was issued the blue shoes every time I tried to exercise I would inflame my foot pain and would not be able to walk properly and without severe pain for days. I had informed medical that just prior to coming in here my rheumatologist had informed me that I also had gladifeciatius (not sure of the spelling) and that custom shoes would be needed to alleviate the pain. Medical informed me that if I had already had the shoes they would have allowed me to wear them. But since I did not, I ordered the white shoes from canteen. These were a lot more comfortable than the blue county issued shoes but my pain even though not as severe kept coming back and I just continued to deal with it all this time. Eventually the pain in my knee joints got so bad I ask for arthritis medications that had been prescribed to be but had a lot of side effects. It helped for a time but one of the side effects was it lock up my muscles. Over time even the meds did not help with the pain I had in my knees. After reading the article and realizing that my shoes were worn I attempted to order a new pair but they were on back order. I noticed that the pain was becoming unbearable and I was becoming like a cripple at times. I started placing tissue inside my shoes and immediately notice a difference. The pain subsided nearly 75% over just a few days. I even had stop taking my arthritis meds because they were doing more damage than good. I then realized all this time it was the poor quality of shoes irritating my arthritis in my knees and feet. After three weeks of back order on the shoes I had talked with medical about possibly having someone bringing me in a corrective pair of shoes that would alleviate the pain and stop the permanent damage that was being done to my knee joints. I told medical that I would pay for them myself. Medical informed me that it was against jail policy for inmates to wear any other shoes other than the ones issued by the jail or purchased on canteen. I again tried to explain that if I was forced to continue to wear these shoes (even the ones from canteen) that I was going to have to suffer pain and would eventually become crippling. Medical explained that I would need a foot specialist to over ride jail policy. I ask how do I get to see a foot specialist, the answer was that I could not as long as I was in custody. I did not understand this because I have a medical need that is serious and if not properly taken care of could cause irreversible and crippling damage. I also noticed that inmate workers are wearing all kinds of personal shoes. So there are allowances for certain situations that are not as severe as mine. I have been constantly placing some form of inserts in my shoe that have helped quite a bit and have knock down the pain some 50%. But if I were allowed proper shoes for my medical situation it would, I'm sure, nearly if not totally alleviate the pain and slow down the progression of the RA in my knees. Just after a week of wearing the highly insulated shoes I was able to walk down the stairs for the first time in over a year without severe pain. I can only imagine what would happen with a quality properly insulated shoe would do. It comes down to policy vs. a medical need. I am asking that my medical need be met an I be allowed to have a proper pair of shoes as recommended by my rheumatologist.

Receiving Officer: Ford ID# JJ134

Date: 5-29-14 Time: 1540 Grievance # 329

CHECK APPROPRIATE DISPOSITION

__ Reply Attached __ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: MEDICAL ISSUE

Recieved 6-12-14



Spears – Attachment #2

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| M. Bianchi | | 6/3/14 | 379 |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Spears, Brian | 120709 | 5/28/14 | C |

## OFFICER'S RESPONSE TO GRIEVANCE

Mr. Spears,

Per Dr. Lee, a referral to a Rheumatologist is being made.
Due to the custody and medical staff observing you playing handball aggressively, I do not feel that special shoes would benefit you. It is obvious that your arthritis is being managed properly if you are able to continue your exercise routine. It is the medical department's recommendation that you not play handball or exercise aggressively. This is due to the possibility of aggravating your arthritis or causing further damage or injury.

Michelle Bianchi, RN
Charge Nurse

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| [signature] | S225 | 06-03-14 |

Appeal

**Spears Attachment # 3**

EL DORADO COUNTY SHERIFF'S DEPARTMENT
DETENTION DIVISION
INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| BRIAN SPEARS | 120709 | 6-12-14 | C-8 |

**BRIEF DESCRIPTION OF COMPLAINT**
*Write legibly; keep all complaints to one page.*

This is the appeal for the responce to Grievance #379 that I did not receive until 6-12-14 after several request for it. This originally was not a medical issue as Dr Lee had asked staff were the shoes allowed and staff said it was against Jail policy, So I was greiving Jail policy not medical. But medical responded. First to say I dont need the shoes is against every other medical specialist opinion and medical Journal Reports and I personally can feel the difference of the pain in my feet & knees with my shoes insulated & without. 2nd to say not to exercise is ludicrous. That goes againts every doctor, Cardiologist & Rheumatologist that I have seen. They all state that I must exercise or I will pay for it later. Even Dr. Lee has recommended stretching & exercise. Since padding my shoes with what ever I can find my playing handball & exercising in general has had a very positive effect on my health. As every doctor has said it would. The shoes would allow me to be able to exercise more with less pain. 3rd On 6-10-14 I did see a Rheumatologist and again he recommended seeing a foot specialist & getting some custom shoes & incerts to alieviate the pain & allow me to exercise. After he realized that the jail would not be willing to pay for it, he changed to a better quality "wide" shoe, because he noted the Vans were way too narrow for my feet with poor insulation causing additional pain, & incerts that I could pay for myself. Since the same Doctor had seen me just days before coming into custody he also noted that my joints did not have as much movement as they did when he originally seen me and he also noted that the bones in my left foot had started to "turn" which is known to cause pain. Again the shoes would help to alieviate & deal with this pain. I have dealt with unnecessary pain for two years, which a simple decent pair of shoes could have cured. Also, I have not been able to maintain my exercise routine. I originally was able to do 6 sets a day 6 days a week, now I'm lucky if I can do 2 sets one day a week, but since finding ways to insulate my shoes it is getting better. Bottom line is better quality "wide" shoes would go a long way in helping deal with the desease I am currently fighting. Just read any Arthritis Journal about shoes and you will see the world of difference it will make.

Receiving Officer: HUNTER ID# 925

Date: 6/12/14 Time: 1335 Grievance # 379(A)

CHECK APPROPRIATE DISPOSITION

__ Reply Attached ✓ Forward To Next Level ( __SGT __ADMIN)

Reason forwarded to next level: APPEAL TO 379 - MEDICAL

**Spears - Attachment # 4**

Ilu

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| L. Isaacson | | 6/19/14 | 379A |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Spears, Brian | 120709 | 6/12/14 | C |

**OFFICER'S RESPONSE TO GRIEVANCE**

Mr. Spears,

Orthotic shoes are not indicated and have not been ordered for your medical condition at this time. You were seen by a Rheumatologist and his recommendation was for Dr. Scholl's heel inserts and allowance for wide shoes. At no time did he order orthotic shoes or make a recommendation for you to see a foot specialist. Both have been denied due to no medical indication. Again, it is Dr. Lee's recommendation that you not play handball, there are many other less arthritis aggravating exercises that you can benefit from.

Lisa Isaacson, RN
Medical Manager

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt. Scholtz | S432 | 6/20/14 @ 1930 |

Spears - Attachment #5

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE FORM

*If, while in custody of the El Dorado County Sheriff, you have a complaint relating to any conditions of confinement, Only one complaint per grievance will be accepted. Grievances with more than one complaint will be returned without action being taken.*
*All unresolved grievances will be appealed on a separate grievance form. You must state the grievance number and a reason why the first response was not acceptable.*

| Inmate Name | Master ID# | Date and Time of Occurrence | Housing Unit |
|---|---|---|---|
| Brian Spears | 120709 | 6-20-14 ongoing | C-8 |

### BRIEF DESCRIPTION OF COMPLAINT
*Write legibly; keep all complaints to one page.*

I have been in this facility for over two years and have watched my health deteriorate at a rapid pace. Recently I discussed my stress test results with Dr. Lee. He explained to me that my heart was operating at 60% of capacity which he said is not bad for a person my age and I believe he stated that two valves are leaking which he stated is not that bad. My concern is even though Dr. Lee is trying his best to be helpful he is not a cardiologist. What he did not take into consideration is how quickly my capacity rate drop over the last two years. Dr Aslam, a nationally recognized Cardiologist and founder of the Northwest Heart Center in Houston, had informed me that as long as my capacity was stable I would be fine. Dr. Aslam took two years of trial and error to establish the correct medications I needed to maintain a healthy heart. At that time I had no damage. Once moving to El Dorado Hills my cardiologist was Dr. Vasconcellos of Marshall Cardiology. He had stated that he would not be quick to change any of the medications that Dr. Aslam had prescribed because they were working well and a lot had went into selecting them. I told him that I had started taking fish oil and after a couple of visits Dr Vasconcellos informed me that I should be taking Lavasar (not sure of spelling) instead of fish oil because it would go a lot further in maintaining a healthy heart with less issues (I believe). I'm not exactly sure of the reason but he was adamant about the change. He went through a lot to get the change approved because he felt it was important. Once arriving here my medications were changed within minutes, including changing me back to fish oil, something that no true cardiologist would have done. My family in an attempt to help brought in my original medications at the approval of this facility's medical staff because they were so expensive. Even though my family was told it was a good thing to bring them in they were never given to me, as of one point Dr. Lee thought I had been taking them. I went from healthy and stable to having problems within a short time span. What I have noticed over this time period is that I have had severe chest pains, nausea, fatigue, dizziness, memory loss. I am now fatigued and exhausted all the time. What the test results tell me is that I need to have a cardiologist look at my result just before I came in and now and try and determine what is causing the severe changes and what can be done to reverse this process. As we know heart issues are life threatening, and mine is on a serious down swing. I am praying that my previous charts can be compared to my current ones by a cardiologist and recommendations made, and I be allowed to be seen by a cardiologist. In the past when I have complained about my health I was told about my ability to play handball, but once again what is not being noticed is the fact that my physical abilities are only at most 25% of what they were when I arrived here. Something is severely wrong and I am tired of being in constant pain, Something needs to be done to help prevent the current medical decline I am now enduring.

Receiving Officer: Segarra ID# 1486

Date: 6-20-14 Time: 2145 Grievance # 463

CHECK APPROPRIATE DISPOSITION

__ Reply Attached __ Forward To Next Level (__SGT __ADMIN)

Reason forwarded to next level: MEDICAL

# EL DORADO COUNTY SHERIFF'S DEPARTMENT
## DETENTION DIVISION
## INMATE GRIEVANCE RESPONSE

| Responding Officer | Officer ID# | Date Responded | Grievance Number |
|---|---|---|---|
| M. Bianchi | | 6/26/14 | 463 |
| **Inmate Name** | **Master ID#** | **Date of Grievance** | **Housing Unit** |
| Spears, Brian | 120709 | 6/20/14 | C |

**OFFICER'S RESPONSE TO GRIEVANCE**

Mr. Spears,
I am placing you back on MD sick call list in order for you to discuss your new medical concerns and medication regime. I encourage you to further discuss your exercise stress echocardiogram that was done on 3/4/14. The summary stated; good functional capacity, normal heart rate recovery at one minute, and NEGATIVE treadmill exercise stress test.

Michelle Bianchi, RN
Charge Nurse

| Logging Sgt. | Sgt. ID # | Date and time logged |
|---|---|---|
| Sgt Scholtz | S437 | 6-27-14 @ 1804 |

**Spears - Attachment # 7**

Brian Spears 120709 6-21-14

Appeal to 379A

At this point I can only feel that this is ridicules. I know what the Rheumatologist said and I know why he wrote what he wrote. It was a compromise feeling the jail would at least allow this medical need. The bones in my feet and knees are starting to turn. This is not due to hand ball or exercise, but due to poorly insulated and narrow shoes. It is doing permanent damage. You guys did not even consider the inserts or the wide shoes and you never considered the cardio exercise that I must do. My medical report will show that this decision will cause irreparable damage. This is totally "deliberate indifference". Is this the exhaustion of my Administrative Remedies?

**THIS IS A GENERATED COPY. AS OF 7-10-14 I HAVE NOT RECEIVED A RESPONSE OR A COPY OF THIS GRIEVANCE**

Brian Spears
300 Forni Road
Placerville, Ca. 95667

EL DORADO ... SUPERIOR CT.
FILED JUL - 8 2014
BY ... Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF EL DORADO

| | |
|---|---|
| EL DORADO COUNTY SUPERIOR COURT<br>VS.<br>BRIAN SPEARS. | Case No.: P12CRF02...<br>NOTICE OF MOTION FOR PROPER MEDICAL TREATMENT IN JAIL |

TO THE DISTICT ATTORNEY OF El Dorado COUNTY AND/OR HIS REPRESENTATIVE:

PLEASE TAKE NOTICE: that on ~~7-18-14~~ 7-25-14 8 , at the hour of 8:30 AM or as soon thereafter as petitioner may be heard in the courtroom of the above-entitled court, the petitioner will move for an order directing the Sheriff of El Dorado County to provide the petitioner with proper medical treatment.

This motion will be made on the ground that the denial of proper medical treatment constitutes cruel and unusual punishment prohibited by the Eight Amendment of the United States Constitution.

This motion will be based on this notice of motion, on the attached declaration and memorandum of points and authorities served and filed herewith, on such supplemental memoranda of



CMS

points and authorities as may hereafter be filed with the court or stated orally at the conclusion of the hearing on the motion, on all papers and records on file in this action, and on such oral documentary evidence as may be presented at the hearing of the motion.

Dated 7-14-14

DEFENDANT

Attorney for Defendant is
Adam Weiner

Brian Spears
300 Forni Road
Placerville, Ca. 95667

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF EL DORADO

| | |
|---|---|
| EL DORADO COUNTY SUPERIOR COURT<br>VS.<br>BRIAN SPEARS | Case No.: P12CRF0216<br>**DECLARATION IN SUPPORT OF MOTION FOR PROPER MEDICAL TREATMENT IN JAIL** |

I, Brian Spears, declare:

1. I am the defendant in this action
2. The defendant is currently confined in the El Dorado County Jail
3. I, the defendant, suffer from the following diagnosed medical condition and have been prescribed the following treatment. I have been diagnosed with Rhuematory Arthritis and Gladifeceitous by Dr. Mansour of the Marshall Medical Center. I was prescribe, as a compromise for the jail medical staff, a wider shoe and inserts to relieve the joint and foot pain and to counter act the progression of my joint and bones deterioration. Dr. Mansour originally wanted to prescribe a custom shoe and a visit to a foot specialist but was given the impression that the jail

medical staff would not allow these medically necessities. Dr. Mansour also prescribed a new medication, Leflunomide, as the old medications were not working. Defendant also has a heart condition and was prescribed specific medications and cardio exercise by Dr. Aslam of the Northwest Heart Institute in Houston Texas and Dr Vasconcellos of the Marshall Medical Center in Cameron Park California both of whom are cardiologist. The cardio exercise is very difficult without the proper necessities to protect the joints and bones in movement. Defendant heart condition and arthritis has worsened severely since his incarceration in the El Dorado County Jail over the last two years.

4. The county jail medical staff has totally and deliberately ignored the prescribed treatments. Even going as far as to say that the new medication that was prescribed by Dr Mansour was too expensive during a medical visit with staff on 7-3-14. The jail medical staff had also changed the prescriptions given by cardiologist Dr. Aslam and Dr. Vasconcellos without defendant ever seeing a cardiologist, again in an effort to save money but in return petitioner's health has suffered (see medical grievances). During the visit on 7-3-14 Dr. Lee (the jail staff doctor) stated that maybe defendant did need to see a cardiologist at this point. Another issue is the fact that the medications that defendant is taking require that blood test be done at least once every three months (Dr. Aslam had suggested once a month) but my last test was in October of 2013 over eight months ago and still counting. This is a huge risk as damage that could have been detected in the blood test could go unnoticed until it is too late. The jail medical staff has failed to address the defendant's medical

problems and have failed to administer the medically prescribed treatment.

I declare under penalty of perjury that the foregoing is true and correct, except as to matters stated on information and belief, and as to those matters I believe to be true.
Executed this 7-14-14, Placerville, California

Defendant

Attorney for Defendant is
Adam Weiner

Brian Spears
300 Forni Road
Placerville, Ca. 95667

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF EL DORADO

| | |
|---|---|
| EL DORADO COUNTY SUPERIOR COURT<br><br>VS.<br><br>BRIAN SPEARS | Case No.: P12CRF0216<br><br>**POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROPER MEDICAL TREATMENT IN JAIL** |

Petitioner submits the following points and authorities in support of the motion for proper medical treatment in the jail.

### I

### THE FAILURE TO PROVIDE MEDICAL CARE TO A PRETRIAL DETINEE IS A VIOLATION OF THE DEFENDANT'S RIGHTS UNDER THE EIGTH AMENDMENT OF THE UNITED STATES CONSTITUTION

The United States Supreme Court has stated that the "deliberate indifference to serious medical needs of prisoner constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eight Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying

access to medical care or intentionally interfering with the treatment once prescribed." (Estelle v. Gamble, 429 U.S. 97, 104-105, 97S. Ct. 285, 50 L. Ed. 2d 251 (1976)). The courts have held that pretrial detainees are entitled to the same constitutional protections afforded convicted inmates who have serious medical needs (Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985)).

In 1994 the California legislature amended Penal Code § § 2600 and 2601 to restrict prisoner's rights. The new amended law allows an inmate to be deprived of "only such rights, as is reasonably related to legitimate penalogical interests." (Pen C § 2600). Although on its face, Pen C § 2600 applies only to those confined in state prisons, the California Supreme Court declared that equal protection principles required its application to county jail inmates (De De Lancie v. Superior Court, 31 Cal. 3d 865, 872, 183 Cal Rptr. 866, 647 P.2d 142 (1982)). In Response to these changes, the legislature directed the Department of Corrections to develop guidelines for "local detention facilities" (Pen C § 6030). These regulations, codified in Title 15 of the California Code of Regulations, mandates that the local facility "shall have the responsibility to ensure provisions of emergency and basic health care services to all inmates." (15 CCR § 1200). However these regulations must be implemented so as not to invalidate a constitutional right. The standards set forth in Title 15 "constitute contemporary notions of decency and are advisory in nature," but the courts do not rely blindly on these standards as fixing constitutional minimums. (Inmates of the Riverside County Jail v. Clark, 144 Cal. App. 3d 850, 860, 192 Cal. Rptr. 823 (4th Dist. 1983)).

One court has observed that "the requirement of deliberate indifference is less stringent in cases involving a prisoner's

medical needs than in other cases involving harm to incarcerated individuals because the states responsibility to provide medical care ordinarily does not conflict with competing administrative concerns." (Hudson v. McMilliam, 503 U.S. 1, 5, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)).

**II**

**UNTREATED MEDICAL CONDITIONS CAN CONSTITUTE CRUEL AND UNSUAL PUNISHMENT**

There are two components to establishing violations of the Eighth Amendment's "cruel and unusual punishment" provisions as it relates to medical care: (1) the inmate must demonstrate a serious medical need and (2) that the jail authorities knew about the medical need and refused to remedy it. (Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994))

A medical need is serious if it "has been diagnosed by a physician mandating treatment or … is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" (Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)). A "medical condition need not be an emergency in order to be considered serious under Estelle." (Ellis v. Butler, 890 F.2d 1001, 1003, (8th Cir. 1989))

Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment. (Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)). A court has held that "a doctor's decision to take an easier and less effective course of treatment" may constitute deliberate

indifference (Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)). A showing of indifference does not require proof of an intent to inflict pain, but the conduct must demonstrate a knowing indifference to a serious medical need. (Hicks v. Frey, 992F.2d 1450, 1455 (6th Cir. 1993)). In Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986), the court stated the settled rule that "the unnecessary and wanton infliction of pain … constitutes cruel and unusual punishment forbidden by the Eight Amendment."

**Diagram #1**


2nd Floor
Class Room
Dorm 1
15 Attacked From yard & Dorm 1 to C pod
Tower to pop sep. cell Door at once to allow Attack to happen
Door
Yard
Wall
Door
All glass Control Tower Unobstructed View
Wall
A pod
D pod
15'
Door
Door
Door
Emergency Speaker
Door
Wall
Cpod
B-pod
Wall
All pods Are clear glass Fronts

**Diagram #2**

Bottom Floor




Door side walls are Glass others are solid
Officer tower has Glass on every side

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** Timothy Suddeth Brian Spears, et. Al. Class Action

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff El Dorado Co
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant El Dorado Co
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Pro per

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☒ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
42 U.S.C. § 1983

Brief description of cause: Civil Rights Violations

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE DOCKET NUMBER

DATE 12-10-14

SIGNATURE OF ATTORNEY OF RECORD

x T. Suddeth Brian Spears

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE