UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN SPEARS, | No. 2:15-cv-0165 AC P |
| Plaintiff, | |
| v. | ORDER and |
| EL DORADO COUNTY SHERIFF'S DEPARTMENT, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

## I.     **Introduction**

Plaintiff is a state prisoner at Mule Creek State Prison, under the authority of the

California Department of Corrections and Rehabilitation (CDCR).  Plaintiff challenges conditions

of his prior confinement in the El Dorado County Jail (EDCJ or Jail) in Placerville, California, as

a pretrial detainee.  Plaintiff proceeds pro se with a First Amended Complaint (FAC) filed

pursuant to 42 U.S.C. § 1983,[1] and a request for leave to proceed in forma pauperis filed pursuant

to 28 U.S.C. § 1915.

This action is referred to the undersigned United States Magistrate Judge pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Rule 302(c).  For the reasons that follow, (1) plaintiff's request

---

[1]  Plaintiff filed his original complaint with three other plaintiffs.  See ECF No. 1.  The court severed these actions, ECF No. 12, but found them related, ECF No. 14.  Two plaintiffs declined to pursue their separate actions, which were each dismissed without prejudice.  See Case No. 2:15-cv-0773 AC P (Anderson), and Case No. 2:15-cv-0774 AC P (Suddeth).  Plaintiff Benton continues to pursue his separate action.  See Case No 2:15-cv-0772 AC P.

to proceed in forma pauperis is granted;(2) the court recommends the dismissal of some of plaintiff's claims without leave to amend, and dismisses other claims with leave to amend; and (3) the court provides plaintiff the option of proceeding with his currently cognizable claims in his FAC OR submitting a proposed Second Amended Complaint (SAC) that repeats his currently cognizable claims and attempts to state additional cognizable claims.

## II.      In Forma Pauperis Application

Plaintiff has submitted an affidavit and prison trust account statement that make the showing required by 28 U.S.C. § 1915(a).  Accordingly, plaintiff's request to proceed in forma pauperis, ECF No. 18, will be granted.

Plaintiff must nevertheless pay the statutory filing fee of $350.00 for this action.  28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

## III.      Screening of Plaintiff's First Amended Complaint

### A.      Legal Standards for Screening Prisoner Civil Rights Complaints

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

2

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u> at 555). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" <u>Iqbal</u> at 678 (quoting <u>Twombly</u> at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) (internal quotation marks omitted)). <u>See also</u> Fed. R. Civ. P. 8(e) ("Pleadings shall be so construed as to do justice."). Additionally, a pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. <u>See Noll v. Carlson</u>, 809 F.2d 1446, 1448 (9th Cir. 1987).

### B. General Limitations of the FAC

The FAC is over forty-five pages in length with approximately 60 pages of exhibits. The FAC presents wide-ranging factual allegations challenging numerous matters that occurred over a period of nearly three years. The breadth of plaintiff's allegations, coupled with vaguely identified defendants, has made screening the FAC difficult. The general limitations of the FAC are set forth below.

### 1. Improper Joinder of Some Claims and Defendants

"Shotgun" or "kitchen sink" complaints, like the instant FAC, are strongly disfavored. "The plaintiff who files a kitchen-sink complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might

have legal support. . . . It is the plaintiff['s] burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." Gurman v. Metro Housing & Redevelopment Authority, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011).

Moreover, although the Federal Rules of Civil Procedure permit a plaintiff to join multiple claims against a single defendant, see Fed. R. Civ. P. 18(a), multiple defendants may be named in a single complaint only if the claims against them involve common questions of law or fact. See Fed. R. Civ. P. 20(a)(2) (joinder of defendants is permitted if "any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action"). In other words, joining more than one claim in a single complaint is proper when the claims are against the same defendant, but joining multiple defendants in one complaint is proper only the claims against them are based on the same facts.

To the extent the court has been able to identify specific claims against specific defendants, they are identified below. Otherwise, the requirements noted above and the legal standards set forth below instruct plaintiff how to limit and refine his allegations and claims and identify appropriate defendants in a SAC.

### 2. The County is the Entity Liable for the Sheriff's Department

The first section of the FAC challenges policies, customs and/or practices of the El Dorado County Sheriff's Department, the only defendant named in that section.

Plaintiff is informed that the appropriate defendant for these claims is El Dorado County, not the Sheriff's Department, which is a subdivision of the County. See Nelson v. County of Sacramento, 926 F.Supp.2d 1159, 1170 (E.D. Cal. 2013) ("persons" under Section 1983 include local municipalities or governmental entities but not their subdivisions); Vance v. County of Santa Clara, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("The County is a proper defendant in a § 1983 claim, an agency of the County is not.").

////

4

For these reasons, the court will direct the Clerk of Court to substitute, on the docket, defendant El Dorado County for the El Dorado County Sheriff's Department. Should plaintiff file a SAC, he should make the same substitution.

### 3.    No Class Action

The first section of the FAC broadly contends that the matters challenged therein impacted not just plaintiff but all EDCJ inmates, some of whom are specifically identified. When plaintiff and others initially attempted to raise these claims as a class action, they were informed that pro se plaintiffs may represent only themselves. See ECF No. 12 at 1-2. Plaintiff is again informed that he may only represent his own legal interests; he may not represent the legal interests of other inmates. "A litigant appearing in propria persona has no authority to represent anyone other than himself" in a civil rights action. Russell v. United States, 308 F.2d 78, 79 (9th Cir. 1962); see also Weaver v. Wilcox, 650 F2d 22, 27 (3rd Cir. 1981) ("[A]n inmate does not have standing to sue on behalf of his fellow prisoners. Rather, the prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights." (Citations omitted.)). "Although a non-attorney may appear in propria persona in his own behalf, that privilege is personal to him. He has no authority to appear as an attorney for others than himself." C.E. Pope Equity Trust v. U.S., 818 F.2d 696, 697 (9th Cir. 1987) (citations omitted); see also McShane v. United States, 366 F.2d 286, 288 (9th Cir. 1966) (same).

For this reason, the court has construed plaintiff's allegations and claims as limited to plaintiff alone. Should plaintiff continue to challenge County policies, customs or practices in a SAC, he must allege how he alone was adversely impacted by the challenged matters.

### 4.    Requests for Injunctive Relief Are Moot

Plaintiff generally "prays for relief from the inhumane treatment he was subjected to," ECF No. 16 at 38, and seeks both damages and prospective injunctive relief in the form of significant changes at the EDCJ, id. at 54. However, any request for injunctive relief was mooted by plaintiff's transfer out of the EDCJ. Plaintiff was held at the Jail from April 12, 2012 until February 25, 2015. See FAC, ECF No. 16 at 14 (cf., id. at 1). He filed his FAC after his release from the Jail, while incarcerated at Deuel Vocational Institution (DVI), under the authority of

5

CDCR. Plaintiff remains incarcerated under the authority of CDCR, presently at Mule Creek State Prison. When an inmate challenges prison conditions at a particular correctional facility, but has been transferred from the facility and has no reasonable expectation of returning, his claim [for injunctive relief] is moot. Pride v. Correa, 719 F.3d 1130, 1138 (9th Cir. 2013). There is no indication in the FAC that plaintiff will be returned to the EDCJ, where he was apparently held as a pretrial detainee prior to his conviction, imposition of sentence, and transfer to CDCR.

For this reason, the undersigned finds that plaintiff's claims for injunctive relief against El Dorado County have been rendered moot and will recommend the dismissal of those claims from this action without leave to amend. Plaintiff may, however, continue to pursue damages relief.

### C. Allegations and Claims of the First Amended Complaint

The FAC is divided into two sections. Section I, entitled "Policy and Pattern," is a photocopy of the original complaint submitted by all four plaintiffs, which plaintiff has interlineated with personal notations. ECF No. 16 at 1-14 (cf. ECF No. 1 at 1-14). Section II, entitled "Prejudice and Racism," sets forth allegations specific to plaintiff. Id. at 14-39.

The FAC is further organized by "issues" within each section, e.g. "Issue I-One." For screening purposes, the court has renamed these "issues" as "claims" and identified them sequentially while also providing, as reference, the original designations provided by plaintiff.

### 1. SECTION I: "POLICY & PATTERN"

The FAC's Section I alleges that numerous policies, customs and/or practices within the Jail are unconstitutional. These allegations are framed as putative "Monell claims" against El Dorado County. See Monell v. Department of Social Services, 436 U.S. 658, 690, 694-95 (1978) (Section 1983 claim against a local governmental entity requires allegations that a specific policy, custom, or practice of the entity was the "moving force" behind plaintiff's alleged constitutional deprivation). "[A] municipality is liable under Monell only if a municipal policy or custom was the moving force behind the constitutional violation. In other words, there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Villegas

////

v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008) (citations and internal
quotation marks omitted).

For the reasons set forth below, the court finds that none of the five claims identified in
Section I of the FAC is cognizable as currently framed. The court will provide plaintiff the
option of amending Claims Three and Four in a SAC, but recommends the dismissal of Claims
One, Two, and Five without leave to amend. Three general problems beset the claims in Section
I: (i) no specific policy, custom or practice is identified as the moving force behind the alleged
constitutional deprivation; (ii) plaintiff is not the person who suffered the alleged constitutional
violation; and/or (iii) an individual correctional official, rather than the County, appears to be the
appropriate defendant.

### a.      Claim One (Failure to Protect)

Labeled "Section I, Issue #1" in the FAC, see ECF No. 16 at 1, Claim One recounts
assaults on protective custody (PC) inmates by general population (GP) inmates at the EDCJ in
April and November 2014. The assaults were allegedly due to the mingling of these populations
by jail officials who intentionally opened the doors to their respective living pods and the yard at
the "wrong" times. Plaintiff, then a PC inmate, does not allege he was injured during these
incidents but rather that he sought to protect other PC inmates by blocking entrances and
intimidating GP inmates. Plaintiff contends "[t]hese events show a total disregard for the safety
of the protective custody inmates, and a pattern of behavior of the jail and some of its officers
(Doe's)." ECF No. 16 at 4.

Rather than challenge a specific Jail policy, custom or practice, these allegations appear to
be directed toward the conduct of individual unidentified jail officials on two or more occasions.
Moreover, while these allegations suggest that the assaulted inmates might be able to state
cognizable "failure to protect" claims under the Fourteenth Amendment,[2] they do not establish

---

[2] A pretrial detainee's right to be protected by jail officials is grounded in the Fourteenth
Amendment's Due Process Clause. The Ninth Circuit Court of Appeals has set forth the
following standards for assessing the cognizability of such a claim:

> The elements of a pretrial detainee's Fourteenth Amendment
> failure-to-protect claim against an individual officer are: (1) The

plaintiff's standing to seek relief. Plaintiff has not identified any compensable injury to himself. Damages are not available to prisoners asserting only mental or emotional injuries. "[F]or all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than de minimis." Oliver v. Keller, 289 F.3d 623 (9th Cir. 2002). Here plaintiff alleges that he experienced fear, intimidation, and threats of violence as a result of these incidents, but does not allege that he sustained physical injury; nor can such personal physical injury to plaintiff reasonably be inferred from the alleged facts.

For these reasons, and because plaintiff cannot represent the legal interests of other inmates and has alleged no personal injury based on these challenged circumstances, the undersigned finds that plaintiff's Claim One (Failure to Protect) should be dismissed without leave to amend.

### b.   Claim Two (Inmate Medical Care Generally)

Labeled "Section I, Issue #2" in the FAC, see ECF No. 16 at 4, Claim Two generally challenges the quality of medical care provided by the EDCJ. Plaintiff cites several examples "during the same time period" when specific inmates were injured but failed to receive adequate medical care. Regarding his own medical care, plaintiff states in this section only that he "has been having issues with medical treatment for a period longer than two years (see attached grievances and requests). Even though the medical treatment has gotten better since the new Lieutenant became aware of the issues, it was a long time coming." ECF No. 16 at 5.

---

defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries. With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case.

Castro v. County of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (fn., internal citations and punctuation omitted).

Plaintiff raises specific challenges to his own medical care in Section II of the FAC, addressed below. Because plaintiff lacks standing to pursue the rights of other inmates, the undersigned finds that plaintiff's Claim Two (Inmate Medical Care Generally) should be dismissed without leave to amend.

### c. Claim Three (Food Quality)

Labeled "Section I, Issue #3" in the FAC, see ECF No. 16 at 6, Claim Three generally challenges the quality of food provided by EDCJ, particularly for a "period of approximately a year from early to mid 2013 to early to mid 2014." ECF No. 16 at 6. The food was allegedly "not fit for human consumption," comprised primarily of "fatty salty foods" and caused many specifically named inmates significant weight gain, including plaintiff, whose "weight increase[d] 35 lbs during the time period of the unhealthy food." Id. at 7. The FAC alleges that "[i]t was later discovered that the cook had spent the budget and there were no funds available to properly feed the inmates." Id. Plaintiff states that the "cook was eventually fired," id. at 8, and "[e]ventually the food did get better as promised by the Lieutenant," id.

This claim appears to be directed at the conduct of the Jail's prior cook rather than a Jail policy, custom or practice. A pretrial detainee's claim against an individual defendant challenging conditions of his or her confinement is evaluated under the Fourteenth Amendment's Due Process Clause and assessed under an objective reasonability standard. Gordon v. County of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (en banc) (citing Castro, supra, 833 F.3d at 1070-71) cert. denied sub nom. County of Orange v. Gordon, 2019 WL 113108 (U.S. Jan. 7, 2019); see n.2, supra (same elements apply to other pretrial detainee conditions-of-confinement challenges). "Jail officials have a duty to ensure that detainees are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Shorter v. Baca, 895 F.3d 1176, 1185 (9th Cir. 2018) (citation omitted). Prisoners must "receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) (citation omitted).

As currently framed, plaintiff's challenge to the food served at the EDCJ is vague (it does not identify a specific defendant or Jail policy, custom or practice); and is improperly premised

on the injuries (weight gain) sustained by numerous detainees. Plaintiff does not explain how his own temporary weight gain of 35 pounds impaired his health or was otherwise injurious to him.

Plaintiff may pursue this matter in a SAC only if can plausibly allege that he was personally injured by the Jail's allegedly poor food due to the objectively unreasonable conduct of a specific defendant or the implementation of a specifically identified policy, custom or practice. Claim Three (Food Quality) will be dismissed with leave to amend.

### d.  Claim Four (Sleep Deprivation)

Labeled "Section I, Issue #4" in the FAC, see ECF No. 16 at 8, Claim Four alleges that the EDCJ intentionally deprives inmates of continuous sleep at night. Plaintiff describes a formal jail policy that includes the following, ECF No. 16 at 8-9:

> With the instituting of the new count policy there is no time period that the inmates can have more than a guaranteed 2-3 hours of uninterrupted sleep. The current policy calls for the lights to be on 24 hrs a day only dimming from 11 pm until 5 am. During all other times the light is on full power just inches away from the inmate[']s head. If this was the only issue it would not be such a problem allowing inmates to sleep 6 hours. But what occurs during those times is inhumane. Usually after the lights go out around 11 pm, approximately 30 minutes to an hour [later] an officer making his rounds will grab each door and rattle it verifying it is locked and closed. These solid metal doors make a sound similar to a small car crash when this happens and rattles the entire cell waking the inmate out of a dead sleep. Approximately two hours after that, bulk mail is delivered to the cells. It is either slid under the door, or the door has to be opened and the mail placed inside the cell, again waling the inmate up even if the mail is being delivered to a cell other than his. About an hour after that regular and legal mail is delivered to the cells with the same process. About an hour or so after that the lights come on (@5 am) and a loud voice comes over the cell speakers announcing pill call or med call (the call for morning medication distribution). This is done in every cell whether or not the inmate takes medications. Also every cell door is unlocked making a loud clanking noise and then relocked at the end of med call again making a loud clanking noise. . . . On some occasions, the speaker call for meds is done up to three times at time increments of five to ten minutes apart, reawakening the non-med receiving inmates each time. Then the main pod door loudly opens and then slams shut upon the arrival and exit of the nurse distributing the meds, again waking non-med inmates.

Plaintiff's allegations continue, noting a 6 a.m. announcement, which is often repeated, informing all inmates to approach their cell doors for "count time;" fifteen to thirty minutes later, an announcement informs all inmates to be dressed and prepared for breakfast; between 8 a.m.

and 9 a.m., another announcement informs inmates to prepare for cell inspections. Id. at 9. Announcements throughout the day are made to all inmates even though, allegedly, most of the matters – medical calls, personal calls, etc. – involve only one inmate at a time.

Plaintiff alleges generally that "[o]ver periods of time this sleep deprivation is causing inmates to have ill effects. Some have claimed everything from headaches to memory loss and memory lapses. There has been recent scientific research (2014) linking sleep deprivation to early aging of the brain. It is also linked to heart conditions, as [plaintiff] has." Id. at 10. Plaintiff alleges that his personal physician recommended he obtain a minimum of eight hours uninterrupted sleep each night "to allow his heart to recoup from the day[']s normal stress." Id. Plaintiff raises more specific challenges to his sleep needs in Section II of the FAC, addressed below.

It is well established that "sleep undoubtedly counts as one of life's basic needs. Conditions designed to prevent sleep, then, might [in the prison context] violate the Eighth Amendment." Harper v. Showers, 174 F.3d 716, 720 (5th Cir. 1999). Hence, adequate sleep is a condition of confinement that may be challenged under the Fourteenth Amendment. These allegations, unlike plaintiff's prior allegations, appear to reflect specific Jail policies, customs and/or practices that may properly be alleged as a "Monell claim" against El Dorado County. Nevertheless, to state a cognizable claim based on routine sleep deprivation, plaintiff must allege how he, himself, was injured, e.g., adverse effects on plaintiff's heart or sleep apnea (discussed in Section II). Plaintiff cannot rely on the adverse impacts to other Jail detainees.

Plaintiff may pursue this matter in a SAC only if he can plausibly allege that he was personally injured by the Jail's specifically identified policies, customs and/or practices that routinely deprived him of sleep. Claim Four (Sleep Deprivation) will be dismissed with leave to amend.

### e. Claim Five (Discrimination Against PC Inmates)

Labeled "Section I, Issue #5" in the FAC, see ECF No. 16 at 10, Claim Five alleges the discriminatory treatment of protective custody (PC) inmates in the EDCJ, as compared with general population (GP) inmates. The FAC alleges that PC inmates are "singled out and treated

11

differently than the average inmate." ECF No. 16 at 11. The following examples are cited and explained in some detail: "the way canteen is passed out," "distribution of yard times," "distribution of the meals," and issuance of cleaning supplies. Id. at 11-2.

These allegations reflect the challenged treatment of PC inmates generally; there are no allegations specific to plaintiff's treatment as a PC inmate or that demonstrate a potential violation of his own constitutional rights. Even if plaintiff made allegations specific to himself, however, he could not state a cognizable discrimination claim. "Inmates in protective segregation are not a suspect class" entitled to equal protection in comparison to general population inmates. Darrough v. Sacramento County Sheriff, 2012 WL 5549650, at *2, 2012 U.S. Dist. LEXIS 161320 (E.D. Cal. Nov. 9, 2012) (Case No. 2:12-cv-01814 EFB P).

There being no apparent grounds upon which these allegations could state a potentially cognizable civil rights claim, the undersigned finds that plaintiff's Claim Five (Discrimination Against PC Inmates) should be dismissed without leave to amend.

## 2. SECTION II: "PREJUDICE & RACISM"

Section II of plaintiff's FAC sets forth allegations specific to plaintiff; this portion was not part of the initial group complaint filed in this case. Section II makes numerous allegations against various potential defendants based primarily on claims of racial discrimination. Plaintiff is African American. He alleges generally that during the period of his incarceration at EDCJ, from April 12, 2012 until February 25, 2015, he was "subjected to various forms of prejudicial treatment involving denial of proper medical treatment, equal protection, retaliation, and racism." Id. at 14. He alleges that "the treatment [he] endured at times was so bad that other inmates, including some admitted supremist (whom will testify) complained on behalf of [plaintiff]." Id. at 36. Plaintiff avers in part, id. at 36-7:

> [Plaintiff] had heard the word "nigger" so much in a derogatory form that it was numbing and even some staff members explained to [plaintiff] that [plaintiff] was being treated that way simply because the [plaintiff] was black . . . . A statement was heard by inmates inside by an officer stating, "That's what the nigger gets for coming to our county.". . . Even when [plaintiff] sought help from the mental stress by asking to be seen by mental health, [plaintiff] was told by mental health personnel, "What do you expect, this is skinhead country."

12

Plaintiff alleges that he was fearful for his safety at EDCJ. His fear was underscored by "another Afro American inmate who was almost thrown off the [tier]," an incident that was "racially motivated and verified by the investigators from Sacramento." Id. at 37.

In contrast, plaintiff states that his subsequent treatment at DVI, under the authority of CDCR, "[b]ad or good, was equal and [the] color of his skin was not an issue when it came to his treatment as an inmate." Id. at 38. Plaintiff states that "[i]t was at this point I began to see and feel the extent that the subconscious effects of dealing with the prejudice and racism of the El Dorado County Jail and its staff had taken its toll on me. [Plaintiff] was coming out of a state of shock. [Plaintiff], mentally, was not the same person when he left the county jail as when he arrived there." Id.

For the reasons set forth below, the court finds that plaintiff's Claims Seven, Nine and Eleven state cognizable claims as framed, but dismisses Claims Six, Eight and Ten with leave to amend.

### a. Claim Six (Access to Grooming)

Labeled "Section II, Issue #1" in the FAC, see ECF No. 16 at 16, Claim Six alleges that plaintiff has a skin disease that prevents him from using a razor; plaintiff uses clippers for beard trims and haircuts, and timely informed the jail barber and other jail officials when he was admitted to the EDCJ. The Jail provides haircuts and beard trims to detainees every other week for nominal fees. Plaintiff alleges that during the first 18 months of his incarceration, he "was overlooked for haircuts and shaves for months at a time," despite using the inmate request system. "For nearly 18 months the only way [plaintiff] got a haircut and shave was the times Officer Jemmott personally placed him on the list and the time Sergeant Armstrong overrode the list." ECF No. 16 at 18. Sergeant Armstrong "was in charge of the haircut list because the cuts were given on her shift." Id. Officer Jemmott, who is also African American, told plaintiff that he was "the only inmate experiencing this issue to this extent" and suggested that it could be because plaintiff is black. Id. at 18-9. However, plaintiff states that "[t]he system was eventually changed with the renewing of the contract with the barber and during [plaintiff's] last year in the jail, cuts were on a regular basis with just a few exceptions." Id. at 19. Plaintiff further alleges that he was

incarcerated for 2½ years before he was told that the Jail has a set of clippers for personal inmate use under special circumstances.  Id.

These allegations appear to challenge not a policy or custom of the EDCJ, but the discretion of specific jail officials, perhaps Sergeant Armstrong who "was in charge of the haircut list."  ECF No. 16 at 18.  Although plaintiff avers that the reason for his disparate treatment was racial discrimination, he has also alleged that he has a "skin condition" that may have been implicated.

For these allegations to support a cognizable equal protection claim, plaintiff must plausibly allege that a specific defendant or defendants intentionally deprived plaintiff of regular grooming appointments and/or personal access to clippers at least in part because he is African American.  The requirements for stating a cognizable equal protection claim are as follows:

> The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike. Prisoners are protected under the Equal Protection Clause . . . from invidious discrimination based on race.  To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class. Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status.

Serrano v. Francis, 345 F.3d 1071, 1081-82 (9th Cir. 2003) (citations, internal quotation marks and punctuation omitted).

Plaintiff's Claim Six (Access to Grooming) will be dismissed with leave to amend.

### b.      Claim Seven (Cell Searches)

Labeled "Section II, Issue #2" in the FAC, see ECF No. 16 at 19, Claim Seven alleges that plaintiff "was subjected to cell searches more often and more severe than other inmates in his pod" at EDCJ.  ECF No. 16 at 19.  Plaintiff recounts an undated search by Officer Handy that left plaintiff's cell "totally destroyed.  [Plaintiff's] legal work was scattered around the floor, along with his personal mail and photos.  Most no longer in their envelopes or folders.  [Plaintiff's] canteen was also spread out over the floor, [plaintiff's] blankets and sheets were on the floor and under the toilet."  Id. at 19-20.  Plaintiff alleges that most other cells looked untouched.  Plaintiff

informed an officer who, at plaintiff's request, informed a sergeant; plaintiff told both officials that he believed the destruction of his cell was due to his race. Both officials expressed surprise when they saw the condition of plaintiff's cell. Thereafter defendant Officer Handy came to plaintiff's cell with new bedding and apologized, explaining that plaintiff had more stuff than most other inmates. Although plaintiff accepted the apology, he felt it was insincere as the cells of other long-term inmates, with comparable possessions, were "nearly unaffected by the search." Id. at 21.

Plaintiff further alleges that his cell was searched every Sunday when he was at church services. Plaintiff avers that "[t]hese were suppose[d] to be random searches but [plaintiff's] cell was the only one searched every Sunday and usually the only one searched at all. All these searches were done by [defendant] Officer Garcia." Id. at 21. After plaintiff submitted a grievance asserting that the searches appeared racially motivated, they stopped.

Although these allegations are somewhat sparse, the court finds them sufficient to state cognizable equal protection claims against defendant Handy and Garcia based on alleged racial discrimination against plaintiff. With the exception of providing no date for Officer Handy's search, plaintiff's allegations answer the questions "who, what, when, and where" in describing the challenged cell searches and plausibly explain that the "why" was each defendant's intentional discrimination against plaintiff based on his race. See Serrano, supra, 345 F.3d at 1081-82.

For these reasons, plaintiff may proceed on his equal protection claims against defendants Handy and Garcia, as set forth in Claim Seven (Cell Searches).

### c.      Claim Eight (Medical Care/Back Injury)

Labeled "Section II, Issue #3" in the FAC, see ECF No. 16 at 21, Claim Eight alleges that plaintiff was denied proper medical treatment "above and beyond what is mentioned in Section I." ECF No. 16 at 21. Plaintiff recounts "one event," undated, when he "injured his back and leg (believed to be sciatica) [and] . . . was in severe pain and unable to walk. [Plaintiff] was left to crawl to meals, unable to sit (even to use the bathroom)." Id. at 21-2. Plaintiff states that his complaints were ignored until he was "finally allowed to a see a doctor," apparently defendant

1  Dr. Lee, who prescribed ibuprofen.  Dr. Lee denied plaintiff's request for a cane, apparently

2  based on the opinion of a nurse (defendant Michelle Bianchi or defendant Lisa Isaacson) that

3  canes were not allowed in plaintiff's housing pod.

4      Plaintiff remained in "unbearable" pain for the next two weeks, when he again saw Dr.

5  Lee and again requested a cane.  Plaintiff explained that another inmate who lived in his pod, J.

6  Venegas, was using a cane and had told plaintiff that medical staff insisted he take it.  Confronted

7  with this inconsistency, the nurse left, returned with a wheelchair, and informed plaintiff that he

8  was going to be housed in "medical."  Id. at 22.  Plaintiff asserts that being sent to "medical" is

9  "like a form of punishment" because "you are locked down 24 hours a day sometimes without a

10  mattress and no sound.  You also lose your housing and other benefits."  Id. at 23.  Despite having

11  a medical chrono for a double mattress for chronic back problems in his regular cell, plaintiff was

12  given a "paper thin mattress" in medical, "creating a more painful situation," and remained there

13  for a week without seeing a doctor.  Plaintiff was released only after he asked to speak to a

14  Sergeant.  Thereafter another inmate living in plaintiff's pod, P. Sanatore, refused a cane after

15  bruising his foot, telling staff that it was plaintiff who needed the cane.  Later that evening,

16  Sanatore was told to roll up his belongings because he was going to be rehoused in "medical;" the

17  order was later revoked.

18      These allegations are insufficient to support a cognizable claim.  Plaintiff is informed of

19  the following legal standards for stating a pretrial detainee medical claim:

20      [C]laims for violations of the right to adequate medical care
    "brought by pretrial detainees against individual defendants under
21      the Fourteenth Amendment" must be evaluated under an objective
    deliberate indifference standard. Based thereon, the elements of a
22      pretrial detainee's medical care claim against an individual
    defendant under the due process clause of the Fourteenth
23      Amendment are: (i) the defendant made an intentional decision with
    respect to the conditions under which the plaintiff was confined; (ii)
24      those conditions put the plaintiff at substantial risk of suffering
    serious harm; (iii) the defendant did not take reasonable available
25      measures to abate that risk, even though a reasonable official in the
    circumstances would have appreciated the high degree of risk
26      involved—making the consequences of the defendant's conduct
    obvious; and (iv) by not taking such measures, the defendant caused
27      the plaintiff's injuries.  "With respect to the third element, the
    defendant's conduct must be objectively unreasonable, a test that
28      will necessarily turn on the facts and circumstances of each

16

particular case." The "mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." Thus, the plaintiff must "prove more than negligence but less than subjective intent – something akin to reckless disregard."

Gordon, 888 F.3d at 1124-25 (quoting Castro, 833 F.3d at 1070-71) (further internal citations and punctuation omitted).

Plaintiff may state a cognizable medical claim based on these legal standards, without reference to alleged racial discrimination, unless the latter is relevant. As currently framed, plaintiff's allegations do not imply that his allegedly inadequate medical care was based on plaintiff's race. However, plaintiff may revisit the pertinent facts subject to both considerations and applicable legal standards.

Plaintiff's Claim Eight (Medical Care/Back Injury) will be dismissed with leave to amend.

### d.    Claim Nine (Dental Care)

Labeled "Section II, Issue #3 Pt. 2" in the FAC, see ECF No. 16 at 24, Claim Nine challenges plaintiff's dental care at EDCJ. Plaintiff states that he obtained comprehensive dental work at the Tribal Health Center prior to his incarceration, and "all that was left scheduled was a cleaning." ECF No. 16 at 24. Within a few months after being incarcerated plaintiff chipped a cap while chewing a meal. The jail dentist ("Doe #7") informed plaintiff that the county jail policy did not provide repair or replacement of caps, or cleaning, but only provided tooth removal when deemed a necessity. ECF No. 16 at 24. "Over the next year two more caps chipped." Id. at 25. Another inmate, R. Stucky, informed plaintiff that "he and other inmates (all non African Americans) were called into the dentist office bi-weekly for flossing and rinsing," and that they received other additional preventive care. Id. "[Plaintiff] grieved the dentist and instead of receiving a response the [plaintiff] was called, along with [R. Stucky], for the bi-weekly flossing and rinsing." Id. The dentist informed plaintiff that he needed a "severe cleaning" and would schedule it "a little at a time (in ¼ sections)." Id. at 25-6. Plaintiff was not subsequently called by the dentist and did not see the EDCJ dentist again. When plaintiff arrived at DVI, he was informed that he needed extensive dental work. Plaintiff contends that his "dental records from just days before arriving at the county jail, compared to the one done just days after leaving the

jail will show the damage [he] endured because of the deliberate indifference show by the dental

staff at the county jail based on its policies and patterns, prejudice and racism." Id. at 26.

Pursuant to the legal standards set forth above for stating cognizable medical and racial

discrimination claims, the court finds these allegations sufficient to support both claims against

the EDCJ Dentist (Doe #7).  For these reasons, plaintiff may proceed on his medical and equal

protection claims against defendant Doe #7 (the EDCJ dentist at the relevant time), as set forth in

Claim Nine (Dental Care) of the FAC.  Plaintiff will be required to promptly obtain the identity of

Doe #7 and seek leave of court to substitute Doe #7 with the actual name of the subject EDCJ

dentist.[3]

### e.      Claim Ten (Medical Care/Prescribed Treatments)

Labeled "Section II, Issue #3 Pt. 3" in the FAC, see ECF No. 16 at 26, Claim Ten alleges

that prior to plaintiff's incarceration at the EDCJ, he was diagnosed by outside medical providers

with conditions including sleep apnea, rheumatoid arthritis, and a cardiac condition.  ECF No. 16

at 26.  Plaintiff was prescribed by outside physicians a wider shoe with inserts and Leflunomide

(Arava) to treat his arthritis; exercise and specific medications including Lavaza for his heart

condition; and a CPAP (continuous positive airway pressure) machine for his sleep apnea.  Id. at

27-32.  However, plaintiff alleges that EDCJ medical staff (defendants "Lisa or Michelle")

"ignored [his] prescribed treatments and medications."  For example, the nurses told plaintiff that

his prescribed medications were too expensive and they were "trying to find something cheaper

that you would be able to afford once released."  Id. at 27-8.  Medical staff allegedly gave

plaintiff fish oil instead of Lavaza, saving the jail nearly $1000 a month, although plaintiff's

cardiologist had specifically informed plaintiff that the two were not interchangeable.  Also,

defendant Dr. Lee told plaintiff that they would schedule him with a cardiologist, but an

---

[3]  "Doe" pleading is disfavored in the federal courts.  See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  However, amendment is allowed to substitute the true name for a fictitiously named defendant.  See Merritt v. County of Los Angeles, 875 F.2d 765 (9th Cir. 1989).  Plaintiff should promptly seek the identity of Doe #7 from El Dorado County and/or the EDCJ, and/or pursuant to the California Public Records Act, Calif. Gov't. Code § 6250 et seq., or by other means available to plaintiff.  If access to the required information is denied or unreasonably delayed, plaintiff may seek judicial intervention.

appointment was never made.  Nor was plaintiff provided with wider shoes or inserts, or a CPAP machine.  Id. at 28, 32.

A blood test plaintiff was required to have every three months instead averaged every six months and was once postponed for nine months.  Id. at 28-9.  Despite plaintiff's numerous requests to be given his prescriptions in the evening, rather than at the 5 a.m. Med Call, the requests were denied for approximately two years without adequate justification.  Plaintiff alleges that, as a result, he had significant adverse side effects requiring him to take reduced doses in the a.m., as well as complications associated with his sleep apnea and inability to get adequate sleep.  When plaintiff was finally able to obtain his medications in the evening, he had no adverse side effects taking the fully prescribed amounts and was able to obtain longer periods of sleep without being awakened at 5a.m.  See generally id. at 26-32.

The court finds these allegations, like plaintiff's other challenges to his medical care (with the exception of his dental care) insufficient to support a cognizable claim.  Plaintiff is directed to the legal standards for stating a pretrial detainee medical claim set forth in Gordon, supra, 888 F.3d at 1124-25.  Plaintiff is also informed of the requirement that his allegations be clearly connected or linked with specific defendants.[4]

Claim Ten (Medical Care/Prescribed Treatments) will be dismissed with leave to amend.

### f.    Claim Eleven (Legal Mail)

Labeled "Section II, Issue 4" in the FAC, see ECF No. 16 at 34, Claim Eleven alleges that plaintiff had several problems with his legal mail while incarcerated at EDCJ, including receiving legal mail that had been opened outside of plaintiff's presence without explanation, and receiving

_____

[4] To state a cognizable claim against a specific defendant, plaintiff must expressly "link" or "connect" the factual allegations describing each defendant's challenged conduct that reflects the elements of each asserted legal claim.  See Johnson v. Duffy, supra, 588 F.2d at 743; see also Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a specific defendant's actions and the claimed constitutional deprivation.  Rizzo v. Goode, 423 U.S. 362, 371 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson, 588 F.2d at 743.  Therefore, in a further amended complaint, plaintiff must clearly identify the specific conduct he is challenging for each defendant.

legal mail several weeks after it was postmarked, including mail from this court.  Plaintiff spoke with Officers Roberts and Hart about these matters, who appeared "sincere" and "fair."  Officer Roberts told plaintiff that it was jail "policy anytime [mail] comes with a handwritten address and legal mail label it is subject to be opened and inspected prior to being delivered to the inmate."  ECF No. 16 at 35.  Execution of this policy was not altered by plaintiff's statement to Officer Roberts that "in most cases the courts require a self-addressed stamped envelope so we can receive a stamped copy."  Id. at 34.

> In two recent decisions, we clarified the circumstances under which a plaintiff properly alleges a legal mail interference claim under the First and Sixth Amendments.  See Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1210 (9th Cir. 2017) (prisoners have a First Amendment right to have their properly marked legal mail, including civil mail, opened in their presence); Mangiaracina v. Penzone, 849 F.3d 1191, 1196-97 (9th Cir. 2017) (Sixth Amendment requires a pretrial detainee be present when legal mail related to a criminal matter is inspected; even a single incident of improper reading of a pretrial detainee's mail may give rise to a constitutional violation).

Nyland v. Calaveras County Sheriff's Jail, 688 Fed. Appx. 483, 485 (9th Cir. 2017).

Plaintiff has plausibly alleged that the EDCJ has a policy of opening mail that is clearly marked "legal" outside the presence of pretrial detainees, particularly if the envelope includes a handwritten address.  The court finds these allegations sufficient for present purposes to state cognizable First and Sixth Amendment claims under the legal standards set forth above.  Therefore, plaintiff may proceed on this "Monell claim" against El Dorado County, as set forth in Claim Eleven (Legal Mail) of the FAC.

## IV.    Summary for Pro Se Plaintiff

You have been granted in forma pauperis status; you will pay the filing fee over time with automatic deductions from your prison trust account.

The court has screened your First Amended Complaint (FAC), ECF No. 16, and finds that it states the following cognizable claims against the following defendants:

• Fourteenth Amendment equal protection claims against defendant Officers Handy and Garcia based on racially discriminatory searches of plaintiff's cell (Claim Seven).

- Fourteenth Amendment racial equal protection claim and inadequate dental care claim against Doe #7, the EDCJ dentist during the relevant period (Claim Nine).

- First and Sixth Amendment claims against El Dorado County based on its policy of opening plaintiff's legal mail outside his presence (Claim Eleven).

You will be given the choice to either (1) proceed with your FAC on these claims against these defendants, voluntarily dismissing other claims; OR (2) file a Second Amended Complaint (SAC) that attempts to add additional cognizable claims.

The court is dismissing the following claims with leave to amend: Claim Three (Food Quality), Claim Four (Sleep Deprivation); Claim Six (Access to Grooming); Claim Eight (Inadequate Medical Care/plaintiff's back injury); and Claim Ten (Inadequate Medical Care/plaintiff's prescribed treatments). These are the claims that you must voluntarily dismiss if you choose to proceed immediately on the claims of the FAC that the court has found appropriate for service now. If you choose instead to amend these claims, service will be deferred until the SAC is screened.

You have a choice to make. You can proceed now with Claims Seven, Nine and Eleven in your FAC, against the identified defendants. That would be a choice to drop your other claims. In the alternative, you can choose to file an entirely new SAC in which you restate your cognizable claims and also try to fix the problems with the claims that are being dismissed with leave to amend. Instructions for amending the complaint are provided below. Please use the attached form to indicate your choice.

Either way, the undersigned is recommending to the district judge that the following claims be dismissed without leave to amend: Claim One (Failure to Protect, all PC inmates); Claim Two (Inadequate Medical Care, all inmates); and Claim Five (Discrimination, all PC inmates). The undersigned will also recommend to the district judge that your claims for injunctive relief against the EDCJ be dismissed as moot due to your transfer from the Jail.

## V.     <u>Option to Proceed on FAC or to File a Proposed SAC</u>

Plaintiff may choose to proceed on his FAC, as construed and summarized above, or to file a proposed SAC that restates his cognizable claims and attempts to add additional cognizable

claims. Plaintiff is not obligated to file a SAC; he is directed to indicate his choice on the form provided.

If plaintiff chooses to proceed on his FAC, he will be limited to pursuing Claim Seven (Fourteenth Amendment racial equal protection claims against defendant Officers Handy and Garcia based on their searches of plaintiff's cell); Claim Nine (Fourteenth Amendment racial equal protection and inadequate dental care claims against the EDCJ Dentist during the relevant period (Doe #7)); and Claim Eleven (First and Sixth Amendment claims against El Dorado County based on their policy of opening plaintiff's legal mail outside his presence). If plaintiff wishes to proceed immediately on those claims, he must voluntarily dismiss Claims Three, Four, Six, Eight and Ten without prejudice.

Plaintiff is informed that a proposed SAC will supersede the FAC. See Local Rule 220; Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Therefore, a proposed SAC must be complete in itself without reference to the FAC. A proposed SAC must be on the form provided, labeled "Second Amended Complaint," and provide the case number assigned this case. It must identify each claim and allege in specific terms how each defendant violated plaintiff's constitutional rights, demonstrating an affirmative link or connection between each defendant's specifically-identified conduct and the claimed deprivation of plaintiff's constitutional rights. Rizzo, 423 U.S. at 371; May, 633 F.2d at 167. A proposed SAC must also adhere to the legal standards and other requirements set forth herein, e.g., no putative class action, no request for injunctive relief at the EDCJ, etc. A proposed SAC will be screened pursuant to the standards set forth in 28 U.S.C. § 1915A.

## VI.    Conclusion

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis, ECF No. 18, is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the

////

1  Director of the California Department of Corrections and Rehabilitation filed concurrently

2  herewith.

3      3.  Within thirty (30) days after service of this order, plaintiff shall complete and return

4  the attached "Notice of Election" indicating whether he chooses to proceed on his First Amended

5  Complaint (FAC), as construed herein, <u>OR</u> file a proposed Second Amended Complaint (SAC).

6      4.  If plaintiff proceeds on his FAC, he shall, without sixty (60) days after service of this

7  order, file a motion requesting substitution of Doe #7 with the true name of the defendant EDCJ

8  dentist.

9      5.  If plaintiff chooses to submit a proposed SAC, it must comply with the requirements

10  set forth herein, bear the docket number assigned this case, and be labeled "Second Amended

11  Complaint."  The SAC will be screened pursuant to the standards set forth in 28 U.S.C. § 1915A.

12      6.  Failure of plaintiff to timely comply with this order will result in a recommendation

13  that this action be dismissed without prejudice.

14      7.  The Clerk of Court is directed to:  (a) substitute defendant El Dorado County for

15  defendant El Dorado County Sheriff's Department on the docket of this case; (b) send plaintiff,

16  together with a copy of this order, a blank form used by prisoners in this district for filing a civil

17  rights complaint pursuant to 42 U.S.C. § 1983; and (c) randomly assign a district judge to this

18  action.

19      Further, IT IS HEREBY RECOMMENDED that plaintiff's Claims One, Two and Five, as

20  set forth in the FAC, ECF No. 16, and plaintiff's claims for injunctive relief against El Dorado

21  County, be dismissed without leave to amend.

22      These findings and recommendations are submitted to the United States District Judge

23  assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

24  days after being served with these findings and recommendations, plaintiff may file written

25  objections with the court.  Such document should be captioned "Objections to Magistrate Judge's

26  Findings and Recommendations."  Plaintiff is advised that failure to file objections within the

27  ////

28  ////

specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

F.2d 1153 (9th Cir. 1991).

DATED: March 5, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN SPEARS,

                Plaintiff,

     v.

EL DORADO COUNTY SHERIFF'S
DEPARTMENT, et al.,

                Defendants.

No. 2:15-cv-0165 AC P

NOTICE OF ELECTION

In compliance with the court's order filed _____, plaintiff elects to:

_____ **Option 1**: Proceed with the FAC on Claims Seven, Nine and Eleven, as construed by the court, AND request dismissal, without prejudice, of Claims Three, Four, Six, Eight and Ten.

**OR**

_____ **Option 2**: Proceed on a proposed Second Amended Complaint (SAC), submitted herewith.

_____       _____

Date                                   Plaintiff