UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN SPEARS, | No. 2:15-cv-0165 MCE AC P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| BRUCE BENTON, et al., | |
| Defendants. | |

Defendant El Dorado County has moved to dismiss Claims Four and Eleven of the second amended complaint, along with plaintiff's related claim for injunctive relief. ECF No. 54. The motion has been fully briefed. ECF Nos. 67 (plaintiff's opposition), 68 (County's reply). For the reasons stated below, the undersigned will recommend that the motion be granted in part and denied in part.

I. RELEVANT PROCEDURAL HISTORY

The original complaint in this case was dismissed because it combined the distinct claims of three plaintiffs; plaintiff Spears was provided the opportunity to file an amended complaint limited to his own claims. See ECF No. 12. Spears' first amended complaint was screened and found to contain three cognizable claims, five inadequately pled claims as to which plaintiff was granted the opportunity to amend, and three claims as to which dismissal with prejudice was recommended. ECF No. 28. The district judge assigned to the case adopted the recommendation,

1

and Claims One, Two and Five, as well as the claim for injunctive relief against El Dorado County, were dismissed without leave to amend. ECF No. 34.

Plaintiff's second amended complaint ("SAC") omitted the dismissed Claims One, Two and Five, reasserted plaintiff's other claims, and sought reconsideration of the ruling as to injunctive relief. ECF No. 33. On screening, the undersigned recommended that Claims Three, Eight, and Ten be dismissed. See ECF No. 38 at 7. Plaintiff filed objections (ECF No. 43), and on June 16, 2021, the district judge assigned to the case adopted the findings and recommendations (ECF No. 44). On June 28, 2021, the undersigned accordingly ordered service of the following defendants and specified the following claims as requiring response: El Dorado County on Claims Four and Eleven; Sgt. Armstrong on Claim Six; Officers Handy and Garcia on Claim Seven; and dentist Jane Doe (subsequently identified as Dr. Kurk, see ECF No. 42) on Claim Nine. ECF No. 38 at 6-7.

Defendants Garcia, Handy and Kurk answered, ECF Nos. 52, 57, and the County filed the instant motion to dismiss the claims against it, ECF No. 54.[1]

II. OVERVIEW AND FACTUAL ALLEGATIONS

Plaintiff challenges his conditions of confinement at the El Dorado County Jail from April 2012 through February 2015 and from June through August of 2016. ECF No. 33 at 11. The claims that have survived screening involve sleep deprivation pursuant to jail policies and practices (Claim Four); racial discrimination by the individual defendants (Claims Six and Seven); deliberately indifferent dental care and racial discrimination by the jail dentist (Claim Nine); and violations of First and Sixth Amendment rights regarding legal mail (Claim Eleven). ECF No. 38. The allegations against the County are as follows.

Claim Four alleges that plaintiff was deprived of sleep by the jail's policy of keeping the lights on 24 hours a day, merely dimming them between the hours of 11 p.m. and 5 a.m., and regularly interrupting sleep with unnecessarily noisy rounds, mail deliveries, inmate counts, jail-wide announcements, cell inspections, and other disruptions. ECF No. 33 at 14-16. This steady

---

[1] Defendant Armstrong has not been served. See ECF Nos. 58, 60, 71, 72.

2

pattern of interruptions resulted in plaintiff never being able to get more than two to three hours of sleep at a time. Id. Plaintiff alleges that the chronic and deliberate frequency of sleep disruption has caused him headaches and memory loss, accelerated the aging of his brain, and prevented the eight hours of uninterrupted sleep per day that his doctor has specifically recommended for his heart. Id. at 16-17.

Claim Eleven alleges that on several occasions, officers opened plaintiff's legal mail outside his presence before giving it to him. ECF No. 33 at 32-33. In October 2014, for example, plaintiff received mail from the district court a couple of weeks after it had been postmarked; the mail was clearly stamped "legal mail" but had been opened before it was given to plaintiff. Id. When plaintiff asked a jail employee about it, he was told that the jail had a policy of subjecting mail stamped "legal mail" to opening and inspection if it had a handwritten address. Id. at 33. A couple of week later, another item of mail from the district court was opened before being given to plaintiff. The documents in this mailing related to plaintiff's criminal trial, and he later discovered that a copy had been given to the district attorney. Id. In January 2015, plaintiff overheard an officer who was training a new employee. The officer, in explaining how to check legal material for contraband, said that if the new employee "wanted to be a little more zealous," he might "spot some information that could be useful for the DA." Id.

### III. GOVERNING LEGAL PRINCIPLES

#### A. Standard for Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the allegations to support relief. In order to survive dismissal, a complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

3

(quoting Twombly, 550 U.S. at 570). The plausibility standard asks for more than a possibility that a defendant has acted unlawfully. Id. at 678 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

When considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976). It must also construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010) (citing Hospital Bldg. Co.). The court will " 'presume that general allegations embrace those specific facts that are necessary to support the claim.' " National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

B. Legal Standards Governing Rights of Pretrial Detainees

The rights of pretrial detainees are grounded in the Due Process Clause. Bell v. Wolfish, 441 U.S. 520, 545 (1979); Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008). Detainees have a substantive due process right against restrictions that amount to punishment. Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002) (citing United States v. Salerno, 481 U.S. 739, 746 (1987)). "For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." Demery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir. 2004) (citing Bell, 441 U.S. at 538).

In the first step of this inquiry, "the harm or disability . . . must either significantly exceed, or be independent of, the inherent discomforts of confinement." Id. at 1030 (citing Bell, 441 U.S. at 537). To determine punitive intent in the second step, courts "first examine whether the restriction is based upon an express intent to inflict punishment." Valdez, 302 F.3d at 1045 (citing Salerno, 481 U.S. at 746). Courts "next consider whether punitive intent can be inferred from the nature of the restriction. This determination . . . will generally turn upon 'whether an

4

alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether [the restriction] appears excessive in relation to the alternative purpose assigned [to it].'" Id. (citing Bell, 441 U.S. at 539) (brackets in original). Accordingly, a pretrial detainee may prevail on the intent prong by showing that the challenged governmental action was objectively unreasonable in that it lacks a legitimate nonpunitive governmental purpose or is excessive in relation to that purpose. Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015) (citing Bell, 441 U.S. at 561). Subjective intent to punish is not required. Id.

### C. Municipal Liability

"[M]unicipalities and other local government units . . . [are] among those persons to whom § 1983 applies." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). However, "a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" City of Canton v. Harris, 489 U.S. 378, 389 (1989) (alteration in original) (quoting Monell, 436 U.S. at 694; Polk County v. Dodson, 454 U.S. 312, 326 (1981)). There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Id. at 385. "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691.

## V. CLAIM FOUR: SLEEP DEPRIVATION

The County argues that Claim Four should be dismissed because defendants had a legitimate security reason for keeping the lights on twenty-four hours a day. ECF No. 54 at 4. Defendant relies on Walker v. Woodford, 454 F. Supp. 2d 1007 (S.D. Cal. 2006), which the County characterizes as finding that continuous low-wattage lighting is constitutionally permissible when based on the legitimate security need to perform cell counts. Id. Defendant mischaracterizes Walker, however, which *denied* a motion to dismiss a prison lighting claim under Rule12(b)(6) standards. The Walker court recognized that low-wattage illumination at night can be constitutionally permissible under some circumstances and impermissible under others, and ruled that the plaintiffs' allegations of chronic sleep disruption supported a claim at the pleading stage. Walker, 454 F. Supp. 2d at 1027.

5

Like the plaintiffs in Walker, plaintiff Spears has "alleged in [his] complaint that the night-time lighting inhibits [his] ability to sleep for more than a few hours at a time, causing [him] to suffer serious effects of long-term sleep deprivation." Id. Accordingly, as in Walker, plaintiff has provided factual allegations that raise his right to relief above a speculative level. See Twombly, 550 U.S. at 555. The claim in Walker was governed by Eighth Amendment standards, and the court noted that constant illumination can amount to cruel and unusual punishment under well-established law. Id. (citing Keenan v. Hall, 83 F.3d 1083, 1090-91 (9th Cir. 1996); Zatko v. Rowland, 835 F. Supp. 1174, 1181 (ND. Cal. 1993)).[2] Because he challenges conditions as a pretrial detainee, Spears does not need to demonstrate punishment that rises to the level of "cruel and unusual," he needs only to allege conditions that rise to the level of punishment. See Valdez, 302 F.3d at 1045. Liberally construing the complaint, it sufficiently alleges such conditions.

Whether or not the County can adequately justify the challenged practices on penological grounds is question for another day that will necessarily require the consideration of evidence. At the pleading stage, Claim Four is adequate to proceed.[3]

VI.  CLAIM ELEVEN: LEGAL MAIL

The County argues that Claim Eleven should be dismissed because, as a matter of law, mail from the courts is not legal mail for First Amendment or Sixth Amendment purposes. Defendant is correct.

Prison inmates have a First Amendment right to send and receive mail. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989). The Ninth Circuit has held that prison officials may open and

---

[2] See also Grenning v. Miller Stout, 73 F.3d 1235, 1238-39 (9th Cir. 2014) ("There is no penological justification for requiring inmates to suffer physical and psychological harm by living in constant illumination. This practice is unconstitutional."); Rico v. Ducart, 980 F.3d 1292, 1298-99 (9th Cir. 2020) (inmates have general rights against excess noise and prison conditions that deprive them of identifiable human needs such as sleep).

[3] The County does not challenge Claim Four in Monell grounds. The alleged official policy of 24-hour illumination appears to be conceded by defendant's argument that such a lighting policy is justified. Plaintiff's allegations regarding the jail's schedule of sleep-disrupting activities appear adequate at the pleading stage to identify a policy or custom within the meaning of Monell.

inspect, but not read, a prisoner's legal mail. Nordstrom v. Ryan, 762 F.3d 901, 906 (9th Cir. 2014) (prison officials reading inmates' correspondence with counsel violates Sixth Amendment). The First Amendment requires that properly marked legal mail—meaning mail to an inmate from his lawyer, including a civil lawyer—may be opened only in the inmate's presence. Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1211 (9th Cir. 2017). However, there is no constitutional violation when mail from public agencies is opened outside an inmate's presence. See generally Mann v. Adams, 846 F.2d 589, 590-91 (9th Cir. 1988) (per curiam).

The SAC's allegations regarding interference with plaintiff's mail involve mail sent to plaintiff from the court. It is well established that such mail does not constitute legal mail for First Amendment purposes. Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996) ("Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail."). Accordingly, the First Amendment does not prohibit the opening of such mail outside the recipient's presence. Hayes, 849 F.3d at 1211. And because such mail is not between attorney and client in the context of representation in a criminal case, the Sixth Amendment is not implicated even if the mail has been read and its content relates to a criminal case. Cf. Nordstrom, 762 F.3d at 903, 911. Accordingly, the alleged interference with plaintiff's mail from the court cannot state a claim for relief on constitutional grounds.

Plaintiff has alleged in the SAC, and argues in opposition to the motion to dismiss, that the opening of his mail from the court violated applicable California regulations that define legal mail more broadly. See ECF No. 33 at 33 (alleging that defendants violated Section 3144 of Title 15, California Code of Regulations, which governs the inspection of confidential mail); ECF No. 67 at 2-3 (same). The violation of state regulations does not support liability under § 1983, which provides remedies for violations of federal law only. See Cousins v. Lockyer, 568 F.3d 1063, 1070-71 (9th Cir. 2009) ("[S]tate departmental regulations do not establish a federal constitutional violation."); Gardner v. Howard, 109 F.3d 425, 430 (8th Cir. 1997) ("[T]here is no [Section] 1983 liability for violating prison policy. [Plaintiff] must prove that [the official] violated his constitutional right to receive mail or to access the courts.").

////

Finally, plaintiff's allegations regarding a general policy or practice of opening legal mail, or of searching for things to pass on to the District Attorney, cannot state a claim for relief unless his own rights were violated by that policy or practice. Plaintiff does not have standing to pursue a claim about any policy to the extent it affects other inmates but has not concretely harmed him. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61(1992) (describing injury-in-fact requirement for Article III standing). Since the only alleged interference with plaintiff's own mail did not, as a matter of law, affect his constitutional rights, he cannot state a claim for relief.

The County's motion to dismiss should be granted as to Claim Eleven. Further leave to amend should not be provided, as the identified defects cannot be cured by amendment. See Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013).

VII. INJUNCTIVE RELIEF

The SAC includes a section, not identified as a discrete claim or prayer for relief, that asks the court to reconsider its 2019 ruling on his request for injunctive relief. ECF No. 33 at 36-37. Plaintiff alleges that he has reason to think he may return to the El Dorado County Jail in the future, and that he dreads this possibility because of the poor treatment he received there. Id. The County argues that this "claim" is moot because it was previously dismissed without leave to amend. ECF No. 54 at 5.

The County is quite correct that plaintiff's claim(s) for injunctive relief were previously dismissed with prejudice. See ECF Nos. 28 (Findings and Recommendations), 34 (order adopting Findings and Recommendations). To the extent that the SAC seeks reconsideration of the previous order, it is ineffective. Applications for reconsideration are governed by Local Rule 230(j) and require a noticed motion. The language in the SAC does not constitute a motion or comply with the rule's procedural or substantive requirements.

To the extent that the SAC is liberally construed to include a reasserted claim or prayer for injunctive relief, the motion to dismiss must be granted. Any reassertion of plaintiff's claim or prayer for injunctive relief is unauthorized. Plaintiff has provided no grounds for departing from the law of the case. See United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997) (the law of the case doctrine provides that a court is generally precluded from reconsidering an issue it

previously decided in the same case).  Injunctive relief was dismissed as moot because plaintiff is not currently housed in the facility he is suing, and thus lacks standing to seek an injunction.  See Pride v. Correa, 719 F.3d 1130, 1138 (9th Cir. 2013).  Plaintiff was denied leave to amend, because this is not a curable defect.  To the extent that the SAC reasserts a claim for injunctive relief, the motion to dismiss it should be granted with prejudice.

## CONCLUSION

For the reasons explained above, IT IS HEREBY RECOMMENDED that El Dorado County's motion to dismiss (ECF No. 54) be GRANTED IN PART and DENIED IN PART as follows:

1. DENIED as to Claim Four;
2. GRANTED as to Claim Eleven; and
3. GRANTED as to injunctive relief.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 11, 2022

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE