1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRIAN SPEARS,                              No.  2:15-cv-0165 DC AC P

12              Plaintiff,

13        v.                                    FINDINGS & RECOMMENDATIONS

14   EL DORADO COUNTY, et al.,

15              Defendants.

16

17        Plaintiff is a former county and current state prisoner proceeding pro se.  Currently before

18   the court is defendants El Dorado County, Handy, and Garcia's motion for summary judgment.

19   ECF No. 114.

20        I.      Procedural History

21        This action proceeds on the second amended complaint.  ECF No. 33.  On screening, the

22   court found that Claims Four and Eleven stated cognizable claims against El Dorado County,

23   Claim Six stated a cognizable claim against defendant Armstrong, Claim Seven stated a claim for

24   relief against defendants Garcia and Handy, and Claim Nine stated a claim for relief against

25   defendant Kurk.[1]  ECF No. 38.  All other claims and defendants were dismissed.  ECF No. 44.

26   ////

27   _____

28   [1]  Defendant Kurk was identified in the complaint as Doe #2 and was later substituted in.  ECF
     No. 42.

                                                 1

1    Garcia, Handy, and Kurk answered the complaint (ECF Nos. 52, 57), while El Dorado

2    County filed a motion to dismiss (ECF No. 54).  The motion to dismiss was granted as to Claim

3    Eleven and plaintiff's claim for injunctive relief but denied as to Claim Four (ECF No. 92), and

4    El Dorado County subsequently filed an answer to the complaint (ECF No. 95).

5    After the close of discovery, El Dorado County, Garcia, and Handy moved for summary

6    judgment (ECF No. 114), which plaintiff has opposed (ECF No. 121).  In his opposition to the

7    motion for summary judgment, plaintiff argued that the motion was premature in light of his

8    pending motions to compel.  ECF No. 121 at 10-12, 14-16.  Defendant Kurk, who is represented

9    by separate counsel, did not move for summary judgment.[2]

10    Plaintiff's motions to compel were ultimately granted, and in granting the motions the

11    court addressed plaintiff's concerns regarding his ability to respond to the motion for summary

12    judgment.  ECF No. 125.  The court held as followed:

13    
14    
15    
16    
17    
18    
19    

> Because plaintiff's motions to compel against Handy and Garcia are being granted and these defendants are being ordered to provide supplemental responses that may provide evidence material to adjudicating the motion for summary judgment, a decision on the motion for summary judgment will be deferred pending resolution of the discovery issues.  Upon completion of discovery plaintiff shall be permitted to submit a supplemental response to the motion for summary judgment.  However, plaintiff's request to re-open discovery as to defendant El Dorado County on the issue of exhaustion will be denied, as plaintiff has not offered any explanation as to why he was unable to pursue such discovery during the time already provided.

20    Id. at 18.  Plaintiff then proceeded to file motions for sanctions against defendants Handy, Garcia,

21    and Kurk in relation to the supplemental discovery responses they were ordered to provide.  ECF

22    Nos. 128-130.  The motions were denied, and plaintiff was given an opportunity to file a

23    supplemental response to defendants' motion for summary judgment that was limited to

24    arguments based on the supplemental discovery responses.  ECF No. 142.  Plaintiff filed a

25    supplemental response[3] (ECF Nos. 143, 144), and defendants replied (ECF No. 145).

26    
27    
28    

---

[2]  Kurk has since filed a notice of bankruptcy by her employer, Wellpath, LLC and requests these proceedings be stayed.  ECF No. 149.
[3]  After defendants filed their reply, the court received another supplemental opposition from
(continued)

2

1    II.    Plaintiff's Allegations

2        Relevant to the pending motion, the second amended complaint alleges that since mid-

3    2014, routine practices within the jail prevent inmates from getting any more than two to three

4    hours of uninterrupted sleep.  ECF No. 33 at 14-17.  These practices include keeping the lights on

5    twenty-four hours a day, only dimming them from 11:00 p.m. to 5 a.m., and conducting various

6    activities such as inspections, mail delivery, pill call, and count, which occur throughout the night

7    and early morning, causing significant amounts of noise that make sleep impossible.  Id.  Plaintiff

8    has suffered headaches, memory loss, memory lapses, possible exacerbation of a heart condition,

9    and sleep apnea as a result of the sleep deprivation.  Id. at 16-17.

10        Plaintiff alleges that Handy and Garcia subjected him to cell searches that were more

11    frequent and severe than other inmates in the pod and that the frequency and severity was due to

12    being African American.  Id. at 20-21.  On one occasion, Handy completely destroyed plaintiff's

13    cell, leaving legal work, mail, photographs, and canteen items all over the floor and his blankets

14    and sheets under the toilet, while all the other cells that had been searched looked relatively

15    untouched.  Id.  During a separate period of time, Garcia routinely searched plaintiff's cell every

16    Sunday while he was at church, and while the searches were supposed to be random, plaintiff's

17    cell was usually the only one searched.  Id. at 21.

18    III.    Defendants' Arguments

19        Defendants move for summary judgment on the grounds that plaintiff did not exhaust his

20    claim against defendant El Dorado County and that he does not have evidence to support his

21    claims against defendants Garcia and Handy.  ECF No. 114.

22    IV.    Plaintiff's Response

23        "Pro se litigants must follow the same rules of procedure that govern other litigants."

24    King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

25    Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

26    _____

27    plaintiff that was accompanied by a letter stating that a copy of his opposition had been returned
     to him by the postal service, so he was sending another copy as a precaution.  ECF No. 146.

28    Except for a few pages being in a different order, the second supplemental opposition appears to
     be identical to the originally filed supplement.

1    established that district courts are to "construe liberally motion papers and pleadings filed by *pro*

2    *se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611

3    F.3d 1144, 1150 (9th Cir. 2010). The unrepresented prisoner's choice to proceed without counsel

4    "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes

5    upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

6    Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

7    internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of

8    "strict literalness" with respect to the requirements of the summary judgment rule. Id. (citation

9    omitted).

10        Accordingly, though plaintiff has largely complied with the rules of procedure, the court

11    will consider the record before it in its entirety. However, only those assertions in the opposition

12    which have evidentiary support in the record will be considered. Plaintiff argues that failure to

13    exhaust his administrative remedies does not bar his claim against El Dorado County because

14    administrative remedies were effectively unavailable. ECF No. 121 at 2-3, 6-10.

15        With respect to the claims against Garcia and Handy, plaintiff initially argued that

16    defendants' motion for summary judgment was premature because he had a pending motion to

17    compel that sought to compel the evidence he needed to support his claim. ECF No. 121 at 10-

18    12. After the court ordered defendants Garcia and Handy to provide supplemental discovery

19    responses (ECF No. 125), plaintiff was permitted to file a supplemental opposition (ECF No.

20    142). In his supplemental opposition, plaintiff argues that there are disputed issues of material

21    fact regarding the way in which defendants conducted the searches of his cell and their motivation

22    in searching his cell. ECF No. 143. He also argues that the supplemental responses provided by

23    defendants were deficient because they failed to produce documents showing the race of the

24    inmates in each cell—even though they were able to do so in a separate lawsuit—and the incident

25    reports were vague and misleading. Id. at 4-8.

26        V.    Legal Standards for Summary Judgment

27        Summary judgment is appropriate when the moving party "shows that there is no genuine

28    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

4

1   Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

2   of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

3   F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

4   moving party may accomplish this by "citing to particular parts of materials in the record,

5   including depositions, documents, electronically stored information, affidavits or declarations,

6   stipulations (including those made for purposes of the motion only), admissions, interrogatory

7   answers, or other materials" or by showing that such materials "do not establish the absence or

8   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

9   support the fact."  Fed. R. Civ. P. 56(c)(1).

10          "Where the non-moving party bears the burden of proof at trial, the moving party need

11  only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

12  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

13  Indeed, summary judgment should be entered, "after adequate time for discovery and upon

14  motion, against a party who fails to make a showing sufficient to establish the existence of an

15  element essential to that party's case, and on which that party will bear the burden of proof at

16  trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

17  of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such

18  a circumstance, summary judgment should "be granted so long as whatever is before the district

19  court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

20  56(c), is satisfied."  Id.

21          If the moving party meets its initial responsibility, the burden then shifts to the opposing

22  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

23  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

24  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

25  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

26  admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

27  Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

28  fact "that might affect the outcome of the suit under the governing law," and that the dispute is

1  genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

2  party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

3      In the endeavor to establish the existence of a factual dispute, the opposing party need not

4  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

5  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

6  trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

7  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the

8  "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

9  whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal

10  quotation marks omitted).

11      "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

12  court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

13  v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the

14  opposing party's obligation to produce a factual predicate from which the inference may be

15  drawn.  See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

16  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

17  some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations

18  omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

19  non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391

20  U.S. at 289).

21      Defendants simultaneously served plaintiff with notice of the requirements for opposing a

22  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for

23  summary judgment.  ECF No. 114-4; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir.

24  1988) (pro se prisoners must be provided with notice of the requirements for summary judgment);

25  Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

26  VI.    Undisputed Material Facts

27      A.    The Parties

28      Plaintiff was confined at the El Dorado County Jail from April 2012 through February

1  2015 and from June through August 2016.  Defendants' Statement of Undisputed Facts (DSUF)

2  (ECF No. 114-1) ¶ 1; Response to DSUF (ECF No. 121-2) ¶ 1.  In February 2015, plaintiff was

3  transferred into the custody of the California Department of Corrections and Rehabilitation

4  (CDCR), where he has remained except for his brief return to the jail from June through August

5  2016.  DSUF ¶ 2; Response to DSUF ¶ 2.  Defendants Handy and Garcia were officers employed

6  at the El Dorado County Jail.  ECF No. 33 at 20-21.

7          B.    Exhaustion

8          From April 2012 through the present, the El Dorado County Sheriff's Office had an

9  administrative grievance process to address issues related to the conditions of confinement that

10  was comprised of four formal levels of review.  DSUF ¶ 5.  Plaintiff agrees that there was a

11  grievance process but asserts that inmates were not informed of the particulars of the process,

12  including that it had four levels.  PL's Decl. (ECF No. 121-1) ¶ 2.[4]  To initiate the grievance

13  process, an inmate needed to complete a provided form and return it to staff.  DSUF ¶ 6;

14  Response to DSUF ¶ 6.  The first level of review was assigned to the staff member who was in

15  charge of the department or area that was the subject of the grievance.  DSUF ¶ 7; Response to

16  DSUF ¶ 7.  The second level of review was handled by the shift sergeant and the third level was

17  handled by the jail commander.[5]  DSUF ¶ 8.  The final level of review, which completed the

18  inmate grievance process, was conducted by the division commander.  DSUF ¶ 9.

19          From April 2012 through May 3, 2019, when plaintiff filed the operative second amended

20  complaint, the jail received twenty grievances from plaintiff.  DSUF ¶ 10; Response to DSUF

21  ¶ 10.  Of those twenty grievances, none of them concerned the adverse effects of the jail's

22  lighting or the sleep-disrupting activities alleged in the second amended complaint.  DSUF ¶ 11;

23  Response to DSUF ¶ 11.

24          C.    Discriminatory Cell Searches

25          On August 24, 2022, plaintiff responded to defendants Handy and Garcia's

26
27  [4]  Where plaintiff disputes a statement of fact by incorporating his declaration, the court will cite
    directly to the declaration.
    [5]  Plaintiff denies DSUF ¶¶ 8-9, but his denials are based on lack of knowledge.  PL's Decl. ¶¶ 3-
28  4.  This is insufficient to create a dispute of fact and DSUF ¶¶ 8-9 are deemed undisputed.

7

interrogatories.  DSUF ¶ 12; Response to DSUF ¶ 12.  Interrogatory No. 1 asked plaintiff for all facts supporting his claim that he was subjected to more frequent cell searches compared to other inmates in his pod.  DSUF ¶ 13; Response to DSUF ¶ 13.  Plaintiff responded as follows:

> Responding Party objects to this request as it is overly broad in its request for "all facts."  Responding Party further objects as the request is vague and ambiguous.  In addition, the Responding Party objects as the requested information is available to the propounding party from their own records or from records which are equally or more accessible to propounding party or is premature.  Notwithstanding these objections and without waiving, Responding Party responds as follows:
>
> Responding Party's complaint states direct facts regarding this matter.  Due to the vagueness and ambiguity of the request, along with it being overly broad, the Responding Party cannot expand on any additional information or facts related to this request.[6]

ECF No. 114-2 at 8.  Interrogatory No. 4 requested that plaintiff provide all facts indicating that he sustained more severe cell searches compared to other inmates in his pod and plaintiff responded, "see response to Request No. 1."  DSUF ¶¶ 15-16; Response to DSUF ¶¶ 15-16.

Interrogatory No. 3 asked plaintiff to identify all documents that supported his claim of being subjected to more frequent cell searches compared to other inmates in his pod.  DSUF ¶ 17; Response to DSUF ¶ 17.  Plaintiff responded as follows:

> Responding party objects to this request as it is overly broad in its request for "all DOCUMENTS," and is vague and ambiguous as to the term "identify."  Responding Party further objects as the requested information is available to the propounding party from their own records or from records which are equally or more accessible to propounding party, is premature, or is work product privileged.  Notwithstanding these objections and without waiving, Responding Party responds as follows:
>
> Due to objections Responding Party will not respond to this request.

ECF No. 114-2 at 10.

Interrogatory No. 14 asked plaintiff to identify the races of the two other inmates referenced in his claim.  DSUF ¶ 19; Response to DSUF ¶ 19.  Plaintiff responded as follows:

> Responding Party objects to this request as the requested information is available to the propounding party from their own records or from

---

[6]  Minor typographical and grammatical error have been corrected without notation.

records which are equally or more accessible to propounding party. Notwithstanding this objection and without waiving, Responding Party responds as follows:

Responding Party believes both Suddeth and Nissinsohn are caucasian.

ECF No. 114-2 at 12.

VII.    Discussion

A.    Exhaustion

i.    Legal Standard

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences").  "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."  Ross v. Blake, 578 U.S. 632, 638 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Jones v. Bock, 549 U.S. 199, 204, 216 (2007).  "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).  "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'"  Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original).  Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand."  Albino, 747 F.3d at 1171 (citation and internal quotations marks omitted).  "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special

9

1   circumstances.'" <u>Ross</u>, 578 U.S. at 639.  "[M]andatory exhaustion statutes like the PLRA

2   establish mandatory exhaustion regimes, foreclosing judicial discretion."  <u>Id.</u> (citation omitted).

3          As long as some potential remedy remains available through the administrative appeals

4   process, even if it is not the remedy he seeks, a plaintiff is required to exhaust his remedies.

5   <u>Booth v. Churner</u>, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an

6   inmate must exhaust irrespective of the forms of relief sought and offered through administrative

7   avenues.").  The Supreme Court has identified "three kinds of circumstances in which an

8   administrative remedy, although officially on the books, is not capable of use to obtain relief."

9   <u>Ross</u>, 578 U.S. at 643.  "First, . . . an administrative procedure is unavailable when (despite what

10  regulations or guidance materials may promise) it operates as a simple dead end—with officers

11  unable or consistently unwilling to provide any relief to aggrieved inmates."  <u>Id.</u> (citing <u>Booth</u>,

12  532 U.S. at 736).  "Next, an administrative scheme might be so opaque that it becomes,

13  practically speaking, incapable of use."  <u>Id.</u>  Finally, administrative remedies are unavailable

14  "when prison administrators thwart inmates from taking advantage of a grievance process through

15  machination, misrepresentation, or intimidation."  <u>Id.</u> at 644.

16                              ii.      <u>Analysis</u>

17         The parties are in agreement that a grievance process existed, that plaintiff submitted

18  twenty grievances while at the jail, and that he did not submit any grievances related to his claim

19  against the County.  DSUF ¶¶ 5-6, 10-11; Response to DSUF ¶¶ 6, 10-11; PL's Decl. ¶ 2.

20  Instead, they dispute whether the administrative remedy process was available to plaintiff.

21         Plaintiff argues that the grievance process was effectively unavailable because inmates

22  were not instructed on the particulars of the administrative remedies process—including how

23  many levels it was comprised of and how to exhaust the process—and attempting to exhaust

24  administrative remedies was often futile because grievances either went unanswered or got stuck

25  in an endless loop.  ECF No. 121 at 2-3, 6-10.  He further argues that there was not sufficient time

26  to exhaust any grievances because at the time the original complaint was filed, he was in the

27  process of being transferred to CDCR custody.  <u>Id.</u> at 3.

28  ////

Even if the court assumes, as plaintiff asserts, that there was no clear guidance on how to complete the administrative remedies process to its end, that does not automatically render the entire process unavailable. The undisputed facts and the grievances plaintiff filed while at the jail show that plaintiff knew how to file an initial grievance and appeal to at least the second level. See Response to DSUF ¶¶ 6-7, 10 (admitting to the process for an initial grievance and that plaintiff filed grievances); PL's Decl. ¶¶ 2, 13 (admitting that there was a grievance process and that plaintiff filed grievances); ECF No. 114-3 at 5-55 (plaintiff's grievances and responses from the jail, including multiple grievances filed specifically as appeals (p. 19, 21, 25, 32, 35, 37, 39)). The grievance forms themselves further instruct on how to appeal an unresolved grievance. See, e.g., ECF No. 114-3 at 6 (stating that unresolved grievances should be appealed on a separate form and include the grievance number and why the first response was not acceptable). It is therefore clear that administrative remedies were available, at a minimum, at the first and second levels of the grievance process. Whether plaintiff could have pursued a grievance past the second level is immaterial in this instance,[7] as he admittedly did not even attempt to grieve his claims against the County.

Plaintiff's argument regarding the futility of attempting to exhaust the grievance process is similarly unavailing because it assumes that the sole purpose of a grievance process is exhausting the process. ECF No. 121 at 6-10. However, the requirement that plaintiffs exhaust available administrative remedies is more than just a procedural formality. The courts have recognized that administrative remedies serve to "allow[] a prison to address complaints about the program it administers before being subjected to suit, reduc[e] litigation to the extent complaints are satisfactorily resolved, and improv[e] litigation that does occur by leading to the preparation of a useful record." Jones, 549 U.S. at 219 (citations omitted). Plaintiff does not offer evidence or allege that remedies were only available at the upper, allegedly unreachable levels of the process, such that filing a grievance would be futile because no relief was available at the levels that were

---

[7] Plaintiff's opposition appears to concede that it was possible to exhaust the grievance process, even if he asserts that doing so was difficult. ECF No. 121 at 8 ("Although some inmates have been able to exhaust their administrative remedies, it is not always possible." (quoting original complaint)).

1    accessible.  In fact, the complaint indicates that remedies were available at the lower levels, as

2    plaintiff alleged that after he filed a grievance about his cell being searched every Sunday the

3    searches stopped.  ECF No. 33 at 21.  So long as some remedy was potentially available through

4    the process, plaintiff was obligated to pursue those remedies.  Cf. Brown, 422 F.3d at 965

5    (holding prisoner does not have to appeal grievance further once "all 'available' remedies at an

6    intermediate level of review" have been achieved, recognizing potential for relief and exhaustion

7    at lower levels of review without completing the entire process).

8         Finally, the court finds plaintiff's argument that his transfer to CDCR custody made

9    administrative remedies unavailable to be unpersuasive.  Plaintiff asserts that the grievance

10   process was unavailable to him because at the time the original complaint was being filed he was

11   in the process of being transferred to CDCR custody, leaving him without sufficient time to

12   utilize the grievance process.  ECF No. 121 at 3.  "There is general agreement among the courts

13   that a prisoner's transfer to another institution does not, by itself, render the grievance procedure

14   unavailable to excuse exhaustion."  Lamar v. Sonn, No. 1:23-cv-0462 HBK, 2023 WL 4534869,

15   at *2, 2023 U.S. Dist. LEXIS 120716, *5 (E.D. Cal. July 13, 2023) (collecting cases).  However,

16   administrative remedies may be unavailable where a prisoner is transferred before he has a

17   meaningful or adequate opportunity to exhaust.  See Pauls v. Green, 816 F. Supp. 2d 961, 968 (D.

18   Idaho 2011) (transfer from county jail to state prison within seven days of first sexual assault and

19   two days of last assault did not leave an adequate opportunity to exhaust).  In this case, even if the

20   court assumes that plaintiff no longer had access to the jail's grievance process after his transfer

21   to CDCR custody,[8] the complaint alleges that the conduct at issue began in mid-2014, ECF No.

22   33 at 14, and plaintiff was not transferred to CDCR custody until February 2015, DSUF ¶ 2;

23   Response to DSUF ¶ 2.  He was later temporarily returned to the jail from June to August 2016.

24   Id.  This is not a case where plaintiff was transferred so quickly after the alleged violation that he

25

26   _____

27   [8]  Defendants argue that plaintiff has not demonstrated that his transfer rendered administrative
     remedies unavailable.  ECF No. 123 at 4.  However, they have not produced evidence showing
28   that the process remained available after plaintiff was transferred, though they imply he could
     have mailed his grievance to the jail.  Id.

1  did not have time to initiate the grievance process,[9] and he offers no explanation for his failure to

2  even attempt to do so.  Plaintiff has therefore failed to demonstrate that his transfer rendered his

3  administrative remedies unavailable.  See Eckard v. Deshev, No. 19-cv-0580 RSM, 2019 WL

4  2430675, at *2, 2019 U.S. Dist. LEXIS 97996, at *4-5 (W.D. Wash. June 10, 2019)

5  (administrative remedies were not rendered unavailable by transfer where conduct complained of

6  occurred at least five months prior to transfer).

7               iii.    Conclusion

8        For the reasons set forth above, the undersigned finds that administrative remedies were

9  available to plaintiff and that he did not exhaust them with respect to his claim against defendant

10 El Dorado County.  The summary judgment motion should therefore be granted as to defendant

11 El Dorado County.

12        B.    Discriminatory Cell Searches

13               i.    Legal Standard

14       The Fourteenth Amendment's Equal Protection Clause requires the State to treat all

15 similarly situated people equally, City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439

16 (1985) (citation omitted), and "[p]risoners are protected under the Equal Protection Clause of the

17 Fourteenth Amendment from invidious discrimination based on race."  Wolff v. McDonnell, 418

18 U.S. 539, 556 (1974) (citation omitted).  "[S]howing that different persons are treated differently

19 is not enough, without more, to show a denial of equal protection."  Griffin v. Cnty. Sch. Bd. Of

20 Prince Edward Cnty., 377 U.S. 218, 230 (1964) (citation omitted).  "Proof of racially

21 discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."

22 Village Of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977).  "Beyond

23 this requirement of showing intentional discrimination, however, there is no specific test that an

24 equal protection plaintiff is required to meet, and in order to survive a motion for summary

25 judgment by the defendant, a plaintiff must only produce evidence sufficient to establish a

26 genuine issue of fact as to the defendant's motivations."  FDIC v. Henderson, 940 F.2d 465, 471

27

28
_____
[9]  Defendants' exhibits show that plaintiff was able to file a grievance even during his brief return
to the jail from June to August 2016.  ECF No. 114-3 at 35-36.

1  (9th Cir. 1991) (footnote omitted); see also Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir.

2  2003) ("To avoid summary judgment, [a plaintiff] 'must produce evidence sufficient to permit a

3  reasonable trier of fact to find by a preponderance of the evidence that the decision was racially

4  motivated.'" (quoting Bingham v. City of Manhattan Beach, 329 F.3d 723, 732 (9th Cir. 2003))).

5                          ii.    Analysis

6         Defendants argue that plaintiff's equal protection claim fails because the underlying

7  conduct—the search of plaintiff's cell—did not constitute an independent constitutional violation

8  and that "whether the search . . . was illicitly motivated lacks constitutional significance."  ECF

9  No. 114 at 7.  Defendants are correct that plaintiff does not have a claim for unreasonable search

10  and seizure because prisoners do not have a reasonable expectation of privacy in their cell.

11  Mitchell v. Dupnik, 75 F.3d 517, 522 (9th Cir. 1996) ("An inmate ordinarily has no reasonable

12  expectation of privacy as to his jail cell or his possessions within it.").  However, there is no

13  requirement that the conduct underlying an equal protection claim must itself violate plaintiff's

14  constitutional rights,[10] and a search that does not violate the Fourth Amendment can still violate

15  plaintiff's right to equal protection.  See Wren v. United States, 517 U.S. 806, 813 (1996) (right

16  to equal protection may be violated even if traffic stop does not violate Fourth Amendment

17  because "the constitutional basis for objecting to intentionally discriminatory application of laws

18  is the Equal Protection Clause, not the Fourth Amendment"); Bradley v. United States, 299 F.3d

19  197, 205 (3d Cir. 2002) ("The fact that there was no Fourth Amendment violation does not mean

20  that one was not discriminatorily selected for a search."); cf. Walker v. Gomez, 370 F.3d 969, 973

21  (9th Cir. 2004) (Fourteenth Amendment prohibits racial discrimination in assignment of prison

22  jobs even though there is no right to prison employment).

23         Defendants also argue that plaintiff cannot prevail on his equal protection claim because

24  his discovery responses demonstrate that his only evidence of discrimination is "[t]hat, on one

25  occasion, two whites fared better than one black," which is not sufficient statistical evidence to

26  ─────────────────────────
   [10]  Defendants do not explicitly withdraw this argument; however, they do retreat from it in their
27  reply to plaintiff's supplemental opposition.  See ECF No. 145 at 3 ("Spears has no constitutional
   right to privacy in his cell, and it may be searched for any reason—right, wrong, or imprudent—
28  as long as the reason is not discriminatory.").

                                        14

1    support his claim of racially disparate treatment.  ECF No. 114 at 7.  In response, plaintiff asserts

2    that if defendants felt his responses to discovery were insufficient, they should have filed a

3    motion to compel.  ECF No. 121 at 3-4.  He further argues that he has a sufficiently large sample

4    size to be statistically significant and that there are questions of fact regarding whether

5    defendants' conduct was racially motivated.[11]  Id. at 10-14.  In his supplemental opposition, filed

6    after defendants were required to provide supplemental discovery responses, plaintiff asserts that

7    defendants' supplemental responses were inadequate, there is a dispute regarding the manner in

8    which Handy searched his cell, the incident reports they produced are inaccurate and misleading,

9    Garcia harassed plaintiff's wife and made derogatory statements about plaintiff to her, and Garcia

10   admitted to searching plaintiff's cell twice in eight days.  ECF No. 143 at 3-9, 11.  Plaintiff also

11   asserts that he has numerous witnesses who will testify on his behalf.  Id. at 10-11.

12        Contrary to plaintiff's assertion, defendants' argument is not about the sufficiency of his

13   discovery responses.  Defendants are not arguing that plaintiff should have provided more

14   thorough responses, rather, they assert that plaintiff's responses demonstrate that he has no

15   evidence to show that defendants' conduct was purposely discriminatory or had a discriminatory

16   effect.  After reviewing the record, the undersigned agrees.

17        The complaint alleges that while at the El Dorado County Jail, plaintiff was subjected to

18   more frequent and severe searches than other inmates in his pod.  ECF No. 33 at 20.  One search,

19   on an unspecified date, was conducted by defendant Handy, who plaintiff states left his cell

20   "totally destroyed" with his personal belongings and bedding scattered on the floor and under the

21   toilet, while other inmates' cells looked untouched.  Id.  Handy later apologized for the condition

22   of plaintiff's cell and stated that while he tried to leave it in as close to the same condition as

23   when the search started, it was difficult because plaintiff had so much stuff.  Id.  Plaintiff did not

24   believe the apology was sincere because the cells of two other inmates who had more stuff than

25   _____

26   [11]  Plaintiff also argued that the motion was premature because of his then pending motions to
     compel, which sought the documentary evidence he needed to support his claims.  ECF No. 121
27   at 10-12, 14-16.  However, this issue was resolved when plaintiff was permitted to file a
     supplemental opposition after receiving defendants' supplemental discovery responses.  ECF No.
28   142 at 5.

1    plaintiff looked virtually untouched.  Id. at 20-21.  During another, unspecified time period,

2    plaintiff alleges that defendant Garcia searched his cell every Sunday while he was at church and

3    that while the searches were supposed to be random, his was usually the only one searched.  Id. at

4    21.  Plaintiff filed a grievance stating that he believed the searches were racially motivated and

5    though he "received a not so nice response," the searches of his cell stopped.  Id.  He also alleged

6    that a racial slur was used repeatedly around the jail and that "some staff members explained that

7    he was being treated that way simply because plaintiff was black."  Id. at 34.  However, these

8    allegations are not made with specific reference to defendants or their conduct in searching his

9    cell, and instead appear to relate to the treatment plaintiff received at the jail overall.  Id.

10         In response to defendants' interrogatory requests, plaintiff stated that he believed the two

11   inmates referenced in his complaint were Caucasian.  ECF No. 114-2 at 12.  When asked for all

12   facts supporting his contention that he was subject to more frequent and severe cell searches,

13   plaintiff stated that because the request was vague, ambiguous, and overly broad, he could not

14   "expand on any additional information or facts related to this request."  Id. at 8, 10.  When asked

15   to identify documents supporting his claim, plaintiff objected on various grounds and did not

16   identify any documents.  Id. at 10.

17         Defendants' interrogatories were not vague, ambiguous, or overbroad.  Thus, plaintiff's

18   response that he was unable to provide additional information or facts is reasonably interpreted to

19   mean that he has no additional facts or information to provide beyond what is alleged in the

20   complaint.  The record presented is essentially comprised of plaintiff's speculation as to

21   defendants' motivations based on general allegations of racist comments by unspecified

22   individuals, which does not prove defendants had discriminatory intent at any particular time, let

23   alone when they searched his cell.  While plaintiff's general allegations of discriminatory

24   treatment and the use of racially charged language at the jail was sufficient to allow his claim to

25   survive screening, those allegations, without more, cannot defeat summary judgment.  See

26   Hammler v. Hernandez, No. 1:19-cv-0616 SKO, 2024 WL 4133910, at *7, 2024 U.S. Dist.

27   LEXIS 162693, at *20 (E.D. Cal. Sept. 10, 2024) ("At screening, the Court tests the plausibility

28   of the asserted claim and assumes the allegations to be true.  On summary judgment, the Court is

tasked with determining whether a plaintiff can prove his claim." (collecting cases)).  Plaintiff's

sparse discovery responses offer nothing of substance to change this outcome.[12]  Defendants have

met their burden as the moving party by showing "that there is an absence of evidence to support

the nonmoving party's case."  Celotex, 477 U.S. at 325.  Specifically, that plaintiff is unable to

prove discriminatory intent, which is an essential element of his case.  The burden now shifts to

plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."

Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 324).

        To the extent plaintiff argues that summary judgment should be denied because

defendants' supplemental discovery responses were inadequate (ECF No. 143 at 4-5), the court

previously determined the responses were sufficient when it denied his motion for sanctions (ECF

No. 142).  To the extent plaintiff elaborates on his previous claim that defendants could have

produced documents showing the race of each inmate whose cell was searched using their

database because they provided similar documents in another case, he fails to provide evidence to

support his claim.  Review of plaintiff's other case and the documents submitted by plaintiff

shows that the defendants had to manually create the documents by going through individual

files, not with a database, see Spears v. Bianchi, No. 2:16-cv-2177 DAD JDP (E.D. Cal.), ECF

No. 77 at 2 (defendants' motion for an extension of time to provide supplemental response

because the existing records did not show each inmates race, which had to be manually added

after accessing each individual's records to find the information), and that the documents

produced do not contain information substantially similar to that sought in this case, ECF No. 144

at 106-65 (logs showing the name, age, and race of inmates who received an extra mattress or

blanket and what appears to be the date the extra mattresses and blankets were received).

Defendants in this case were not required to specially create documents to respond to plaintiff's

requests.  See ECF No. 125 at 8-10 (addressing motion to compel against Handy and Garcia).

---

[12]  The court has reviewed plaintiff's responses to discovery that were not cited by defendants and finds that they similarly offer no additional facts or evidence that would prove plaintiff's claims.  See ECF No. 114-2 at 8-14 (responses to interrogatories), 17-18 (response to request for production); Fed. R. Civ. P. 56 (c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

Plaintiff also challenges defendants' claim that his comparator and statistical evidence is insufficient. ECF No. 121 at 11. He asserts that the pod he was housed in housed twenty-eight inmates at any given time, over a hundred inmates were rotated in and out during his time at the jail, the entire jail population was less than three hundred, and he communicated with inmates outside of his pod regarding racial discrimination at the jail. Id. He argues that this is a sufficiently large sample size to establish his claim. Id. Plaintiff further asserts the average number of black inmates at the jail was no more than nine at any given time, that those nine inmates were split between twelve different units, and that he only recalled two other black inmates coming into his pod, both for short stays. ECF No. 143 at 6. However, plaintiff fails to provide any foundational information to demonstrate he has personal knowledge regarding the population size and composition of the overall jail, and even if the court assumes his numbers are correct, demographic information and vague claims of racial discrimination throughout the jail do not establish discriminatory motive on the part of Handy and Garcia.

To show discriminatory intent, absent an explicit statement of such intent, plaintiff would need to provide additional evidence regarding the conduct of Handy and Garcia specifically, and that information would need to demonstrate a pattern of singling out black inmates or, as the only black inmate in his pod, plaintiff. However, plaintiff does not provide any such evidence. While he asserts that Handy left his cell in complete disarray, while every other inmate's cell looked virtually untouched, this occurred on a single occasion and he states that Handy apologized and indicated that the resultant mess was due to the amount of property plaintiff had in his cell. ECF No. 33 at 21. Plaintiff's only evidence of discriminatory intent is that he did not believe Handy's apology was sincere and that the cells of two white inmates with more property than him "were left nearly unaffected." ECF No. 33 at 21; ECF No. 114-3 at 2. These allegations are not sufficient to demonstrate that Handy's conduct was motivated by plaintiff's race, as opposed to any other possible motivation.

Plaintiff also argues that he has numerous witnesses who will testify on his behalf, including another inmate who will testify that he "was part of a racist group of individuals . . . which included Handy and Garcia" and plaintiff's wife, who will testify Garcia used a racial slur

1    when speaking to her.  ECF No. 143 at 10.  Plaintiff's statements are, as defendants point out,

2    inadmissible hearsay.  Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988)

3    ("only admissible evidence may be considered by the trial court in ruling on a motion for

4    summary judgment" (citations omitted)); Anheuser-Busch v. Natural Beverage Distrib., 69 F.3d

5    337, 345 n.4 (9th Cir. 1995) ("In general, inadmissible hearsay evidence may not be considered

6    on a motion for summary judgment." (citation omitted)).  However, "[a]t the summary judgment

7    stage, [the court does] not focus on the admissibility of the evidence's form.  [It] instead focus[es]

8    on the admissibility of its contents."  Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003)

9    (citations omitted).  In other words, the court can consider the evidence if its contents could be

10   presented in an admissible form at trial.  Id. at 1037.  In this case, though plaintiff states that the

11   individuals listed in his discovery response will testify on his behalf, he has not demonstrated that

12   the evidence could be made admissible.  Plaintiff offers no statements from any of the listed

13   witnesses, sworn or otherwise, and except for the two witnesses addressed above, does not

14   identify the testimony each witness is expected to provide.  His conclusory assertion that his

15   witnesses have personal knowledge and will corroborate his claims, and the general descriptions

16   of expected testimony he does provide, are insufficient to demonstrate the necessary foundation,

17   personal knowledge, and relevance to make the witnesses' testimony admissible.[13]

18        Plaintiff's assertion that there is a dispute of fact because the list of incident reports he

19   received in discovery is false or misleading also fails to create any triable issues of fact.  ECF No.

20   143 at 6-8.  In moving for summary judgment, defendants do not rely on the incident report list

21   because they do not attempt to prove their searches were justified.  Instead, they simply maintain

22   that plaintiff cannot prevail at trial because he has no evidence they had discriminatory intent.

23

24   ────────────────────

     [13]  To the extent plaintiff asserts his wife's testimony would be based on a conversation she had
25   with Garcia and that she filed a complaint that verifies these statements, ECF No. 143 at 9-10, he
     has not demonstrated the necessary relevance.  Although the court has located a habeas petition
26   filed by plaintiff's wife in which she alleges an unidentified officer made similar statements as
     plaintiff alleges, see Spears v. El Dorado County Jail, No. 2:21-cv-1769 TLN JDP (E.D. Cal.),
27   ECF No. 1 at 3, 5; both the petition and plaintiff's opposition indicate that the statements were
     made in 2020 or 2021.  Garcia's alleged use of a racial slur in 2020 or 2021 is not relevant to his
28   state of mind when he searched plaintiff's cell in 2014.

1    Nothing in the incident report list indicates either defendant intended to discriminate against

2    plaintiff.  See ECF No. 144 at 172-73 (Garcia was involved in shake down of C-Pod on June 30

3    and September 23, 2012, and reported property issues on February 22 and March 2, 2014; Handy

4    reported property issues on February 23, May 25, and August 4, 2013, and obtained visual body

5    cavity search authorization on May 1, 2014).  The officer log notes provided by plaintiff similarly

6    fail to demonstrate that he was singled out by defendants or that defendants had discriminatory

7    intent.  The logs show that cell inspections were conducted on a daily basis, and while they do

8    show which pods and dorms were inspected and by whom, they do not indicate specific cells

9    searched or provide any other information that could support plaintiff's claim of discrimination.

10    See ECF No. 144 at 175-247.

11         Finally, plaintiff asserts that there are disputes of fact as to the manner in which Handy

12    searched his cell and how often Garcia searched his cell.  ECF No. 143 at 4, 9.  Even assuming

13    plaintiff's that Handy left his cell in disarray is true, this dispute is ultimately immaterial because,

14    as addressed above, plaintiff has offered no evidence of discriminatory intent.  With respect to the

15    allegations against Garcia, while plaintiff alleges that his cell was the only cell searched every

16    Sunday, and sometimes the only cell searched at all, he provides no other specifics.  There are no

17    facts regarding how many times Garcia searched plaintiff's cell, how many times only plaintiff's

18    cell was searched, or how he knew no one else's cell was searched when he was not present for

19    the searches.  The only specific information regarding the searches is found in Garcia's response

20    to plaintiff's request for admissions, which states that the incident report list shows he searched

21    plaintiff's cell on June 30 and September 23, 2012, and February 22, and March 2, 2014.  ECF

22    No. 144 at 98.  This limited information, coupled with plaintiff's general, non-specific allegations

23    that his cell was searched more than any other inmate's cell are insufficient to establish that

24    plaintiff was disproportionately targeted for searches or that Garcia had discriminatory intent in

25    conducting the searches.

26         Ultimately, even if defendants' conduct lacked a valid penological purpose, their conduct

27    did not violate plaintiff's right to equal protection unless it was done to discriminate against him

28    based on his race, and plaintiff offers no evidence of such motive.

1          iii.    Conclusion

2          For the reasons set forth above, plaintiff has failed to come forth with evidence from

3   which a reasonable jury could find that defendants Handy and Garcia's alleged conduct was

4   motivated by plaintiff's race.  Because plaintiff cannot establish discriminatory intent, which is an

5   essential element of an equal protection claim, defendants' motion for summary judgment should

6   be granted.

7   VIII.   Conclusion

8          For the reasons set forth above, the motion for summary judgment should be granted.  The

9   claim against defendant El Dorado County should be dismissed without prejudice for failure to

10  exhaust and the claims against defendants Garcia and Handy should be dismissed with prejudice

11  because plaintiff is unable to prove an essential element of his claim.  This case should proceed

12  solely on the claim for discrimination against defendant Kurk.

13  IX.    Plain Language Summary of this Order for a Pro Se Litigant

14         It is being recommended that defendants El Dorado County, Garcia, and Handy's motion

15  for summary judgment be granted.  You admitted that you did not try to file a grievance related to

16  your claims against the County and you did not show that the grievance process was unavailable

17  to you.  You also have not provided any evidence that shows defendants Handy and Garcia's

18  allegedly improper conduct in searching your cell was motivated by your race.

19         Accordingly, IT IS HEREBY RECOMMENDED that:

20         1.   Defendants El Dorado County, Garcia, and Handy's motion for summary judgment

21  (ECF No. 114) be GRANTED;

22         2.   The claim against defendant El Dorado County be DISMISSED without prejudice;

23         3.   The claims against defendants Garcia, and Handy be DISMISSED with prejudice; and

24         4.   This action proceed on the sole remaining claim against defendant Kurk.

25         These findings and recommendations are submitted to the United States District Judge

26  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

27  after being served with these findings and recommendations, any party may file written

28  objections with the court and serve a copy on all parties.  Such a document should be captioned

1    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

2    objections shall be served and filed within fourteen days after service of the objections.  The

3    parties are advised that failure to file objections within the specified time may waive the right to

4    appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5    DATED: May 12, 2025

6

7    ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28